# 21-2098-CR

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤ ◄◄

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

JORDAN TAYLOR,

*Defendant,*

*and*

LORENZO MCCOY,

*Defendant-Appellant.*

————————

*On Appeal from the United States District Court*
*for the Southern District of New York*

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANT-APPELLANT PURSUANT TO *ANDERS V. CALIFORNIA*, 386 U.S. 738 (1967)

PETER J. TOMAO, ESQ.
*Attorney for Defendant-Appellant*
600 Old Country Road, Suite 328
Garden City, New York 11530
516-877-7015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES   v

PRELIMINARY STATEMENT   1

JURISDICTIONAL STATEMENT   2

STATEMENT OF ISSUES PRESENTED FOR REVIEW   2

STATEMENT PURSUANT TO *ANDERS v. CALIFORNIA*   3

STATEMENT OF THE CASE   3

The Offense   3

Procedural History   6

    Competency Evaluation   7

    The Plea Proceeding   12

        Competency Determination   12

        Allocution   14

    The Presentence Investigative Report   21

    Sentencing   23

SUMMARY OF ARGUMENT   27

ARGUMENT   28

POINT I    THERE WERE NO ERRORS IN THE PLEA PROCEEDING AFFECTING MR. McCOY'S SUBSTANTIVE RIGHTS   28

A.    THIS COURT APPLIES PLAIN ERROR ANALYSIS FOR APPEALS BASED ON VIOLATIONS OF RULE 11 WHERE, AS HERE, THE DEFENDANT DID NOT MAKE ANY CONTEMPORANEOUS OBJECTIONS OR SEEK TO WITHDRAW HIS PLEA   28

B. THE LOWER COURT PROPERLY FOUND THAT MR. McCOY WAS COMPETENT AT THE TIME OF HIS GUILTY PLEA 29

C. THERE IS NO BASIS TO ARGUE THAT THE DISTRICT COURT FAILED TO COMPLY WITH THE REQUIREMENTS OF RULE 11 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE 31

D. THE FACTUAL BASIS FOR MR. McCOY'S PLEA WAS LEGALLY SUFFICIENT 35

 1. Legal Principles 35

 2. There was an Adequate Factual Basis to Find Mr. McCoy Guilty of the Substantive Carjacking Count 36

 3. There was an Adequate Factual Basis to Find Mr. McCoy Guilty of the Carjacking Conspiracy Count 39

POINT II THE SENTENCE IMPOSED ON MR. McCOY WAS PROCEDURALLY AND SUBSTANTIVELY REASONABLE 41

A. AN *ANDERS* BRIEF MUST DISCUSS THE SUBSTANTIVE AND PROCEDURAL REASONABLENESS OF THE SENTENCE 41

B. THE SENTENCE IMPOSED WAS PROCEDURALLY REASONABLE 43

 1. The Standard of Review – Plain Error 43

 2. The Probation Department Prepared a Timely PreSentence Report 44

3.    The Lower Court Complied with the Requirements of        45
      Rule 32(i)(1) of the Federal Rules of Criminal
      Procedure at Sentencing

4.    Without Objection the Lower Court Properly Adopted       46
      the Sentencing Guideline Calculation in the PSR which
      Was Consistent with the Guidelines Calculation in the
      Pimentel Letter

5.    The Lower Court Properly Treated the Guidelines as       47
      Advisory

6.    The District Judge Properly Considered the Sentencing    47
      Factors

7.    The District Court Did Not Err by Not Granting A         48
      Departure Based On Mr. McCoy's Mental And
      Emotional Condition

            i.    Plain Error Analysis Applies                  49

            ii.   A District Judge Does Not Err by Failing to   49
                  Grant a Downwardly Departure

            iii.  There is No Basis to Argue that Judge          50
                  Briccetti Erred by Not Downwardly
                  Departing Based on Mr. McCoy's Mental and
                  Emotional Condition

8.    The Lower Court Judge Properly Advised Mr. McCoy        51
      Regarding His Appellate Rights

9.    The Written Judgment Accurately Reflects the Sentence   51
      Pronounced in Open Court

C.    THE SENTENCE IMPOSED WAS SUBSTANTIVELY               53
      REASONABLE

1.    Standard of Review – Abuse of Discretion    53

2.    The Sentence Imposed Was Within the Range of Sentencings for Similar Offenses    53

POINT III  THERE IS NO BASIS IN THE RECORD TO ARGUE ON DIRECT APPEAL THAT MR. McCOY'S DISTRICT COURT COUNSEL WAS INEFFECTIVE    55

CONCLUSION    58

# TABLE OF AUTHORITIES

**CASES**                                                            **PAGE**

*Anders v. California,*                                              3, 41
    386 U.S. 738 (1967)

*Gall v. United States*,                                            28
    397 U.S. 742 (1970)

*Gall v. United States*,                                            42
    552 U.S. 38 (2007)

*Godinez v. Moran,*                                                 30
    509 U.S. 389 (1993)

*Holloway v. United States*,                                        37
    526 U.S. 1 (1999)

*Irizarry v. United States*,                                        35, 47
    508 F.2d 960 (2d Cir. 1975)

*Jones v. United States*,                                           36
    526 U.S. 227 (1999)

*Kimbrough v. United States*,                                       42
    558 U.S. 85 (2007)

*Premachandra v. United States*,                                    51, 56
    101 F.3d 68, 70 (8th Cir. 1996)

*Saddler v. United States*,                                         30
    531 F.2d 83 (2d Cir. 1976)

*Strickland v. Washington*,                                         55, 57
    466 U.S. 668 (1984)

*United States v. Arnold*,                          37
   126 F.3d 82 (2d Cir. 1997)

*United States v. Bleau*,                           44
   930 F.3d 35 (2d Cir. 2019)

*United States v. Booker*,                          41
   543 U.S. 220 (2005)

*United States v. Calderon*,                        35
   243 F.3d 587 (2d Cir. 2001)

*United States v. Cassesse,*                        28
   685 F.3d 186 (2d Cir. 2012)

*United States v. Cavera*,                          42, 53
   550 F.3d 180 (2d Cir. 2008)

*United States v. Chan*,                            29
   677 F. App'x 730 (2d Cir. 2017)

*United States v. Crosby*,                          41
   397 F.3d 103 (2d Cir. 2005)

*United States v. Espinal*,                         28
   634 F.3d 655 (2d Cir. 2011)

*United States v. Haynes*,                          49
   985 F.2d 65 (2d Cir. 1993)

*United States v. Jaramillo*,                       53
   754 F. App'x 61 (2d Cir. 2019)

*United States v. Jones*,                           42
   531 F.3d 163 (2d Cir. 2008)

*United States v. Livorsi*,                         30
   108 F.3d 76 (2d Cir. 1999)

*United States v. Lloyd*,                                              57
    901 F.3d 111 (2d Cir. 2018)

*United States v. Marcus*,                                         29, 50
    560 U.S. 258 (2010)

*United States v. Martinez-Perez*,                                 28, 43
    767 F. App'x 170 (2d Cir. 2019)

*United States v. Messina*,                                            42
    806 F.3d 55 (2d Cir. 2015)

*United States v. Oladimeji*,                                          57
    463 F.3d 152 (2d Cir. 2006)

*United States v. Pimentel*,                                           10
    932 F.2d 1029 (2d Cir. 1991)

*United States v. Regalado*,                                           53
    518 F.3d 143 (2d Cir. 2008)

*United States v. Rigas*,                                              53
    490 F.3d 208 (2d Cir. 2007)

*United States v. Rossillo*,                                           30
    853 F.2d 1062 (2d Cir. 1988)

*United States v. Russell*,                                            51
    917 F.2d 512 (11th Cir. 1990)

*United States v. Vasquez*,                                            42
    672 F. App'x 56 (2d Cir. 2016)

*United States v. Vaval*,                                              28
    404 F.3d 144 (2d Cir. 2005)

*United States v. Verkhoglyad*,                                    29, 42, 43
    516 F.3d 122 (2d Cir. 2008)

*United States v. Villafuerte,*                  29, 43
     502 F.3d 204 (2d Cir. 2007)

*United States v. Whitley,*                  41
     503 F.3d 74 (2d Cir. 2007)


## UNITED STATES CONSTITUTION

Six Amendment               41

## STATUTES

18 U.S.C. § 2               36

18 U.S.C. § 371             1, 39

18 U.S.C. § 2119           1, 22, 36

18 U.S.C. § 3143            21

18 U.S.C. § 3231             2

18 U.S.C. § 3553(a)        24, 25, 32, 34, 41, 44, 49

18 U.S.C. § 3553(a)(1)-(7)     47

18 U.S.C. § 3553(a)(2)       25

18 U.S.C. § 3553(a)(6)       48

18 U.S.C. § 3742(a)          2

18 U.S.C. § 4241(a)(b)       7, 9

28 U.S.C. § 1291              2

28 U.S.C. § 2255                                    55, 57

## FEDERAL RULES OF CRIMINAL PROCEDURE

| | |
|---|---|
| Rule 11 | 12, 27, 28, 31,43 |
| Rule 11(b)(1) | 31, 32 |
| Rule 11(b)(1)(A) | 31, 33 |
| Rule 11(b)(1)(B) | 31, 33 |
| Rule 11(b)(1)(C) | 31, 33 |
| Rule 11(b)(1)(D) | 31, 33 |
| Rule 11(b)(1)(E) | 31, 33 |
| Rule 11(b)(1)(F) | 31, 33 |
| Rule 11(b)(1)(G) | 32, 34 |
| Rule 11(b)(1)(H) | 32, 34 |
| Rule 11(b)(1)(I) | 32, 34 |
| Rule 11(b)(1)(J) | 32, 34 |
| Rule 11(b)(1)(K) | 32, 34 |
| Rule 11(b)(1)(L) | 32, 34 |
| Rule 11(b)(1)(M) | 32, 34 |
| Rule 11(b)(1)(N) | 32 |
| Rule 11(b)(1)(O) | 32, 34 |
| Rule 11(b)(2) | 31, 34 |
| Rule 11(b)(3) | 28, 35 |

Rule 11(h)                                    44

Rule 32(d)(3)                                 45

Rule 32(e)(2)                                 45

Rule 32(i)(1)                                 45

## U.S. SENTENCING GUIDELINES

U.S.S.G. § 1B1.11                             21

U.S.S.G. § 2B3.1                              11

U.S.S.G. § 2B3.1(a)                           11, 22

U.S.S.G. § 2B3.1(b)(2)(E)                     11, 22

U.S.S.G. § 2B3.1(b)(3)(A)                     11

U.S.S.G. § 2B3.1(b)(3)(B)                     22

U.S.S.G. § 2B3.1(b)(5)                        11, 22

U.S.S.G. § 3E1.1(a)                           11, 22

U.S.S.G. § 3E1.1(b)                           11, 22

U.S.S.G. § 5H1.3                              25, 48, 50, 56

U.S.S.G. § 5K2                                50

U.S.S.G. § 5K2.13                             50, 56

# <u>OTHER AUTHORITIES</u>

United States Sentencing Commission, Annual Reports and    54
      Sourcebooks (2020)

## PRELIMINARY STATEMENT

Lorenzo McCoy appeals from judgment dated August 21, 2021, entered by United States District Judge Vincent L. Briccetti for the United States District Court for the Southern District of New York (A324).[1]

Pursuant to his guilty plea to one count of carjacking in violation of 18 U.S.C. § 2119 and one count of conspiracy to commit carjacking in violation of 18 U.S.C. § 371, the district judge imposed a non-guidelines sentence of 6 months imprisonment on each count, to run concurrently, a supervised release term of three years, restitution of $2,300 and $200 special assessment (A325, 326, 329). The lower court did not impose a fine (A329).

Mr. McCoy is currently incarcerated on that sentence.

---

[1]  "A" followed by numbers refers to pages in the Appendix "SA" followed by numbers refers to pages in the Sealed Appendix. We filed both the Appendix and the Sealed Appendix with this brief. "ECF" followed by a number refers to documents filed in this case which were not included in the Appendix or the Sealed Appendix. "PSR" followed by paragraph (¶) numbers or page numbers refers to the Pre-Sentence Investigative Report dated May 26, 2021, as revised June 23, 2021, which is being filed under seal.

1

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231 which grants district courts original jurisdiction over all alleged offenses against the United States committed in that district. This case was initiated in the Southern District of New York with the filing of the complaint on April 11, 2019 (A4, 23).

Mr. McCoy pled guilty on March 25, 2021, to Counts One and Two of the superseding indictment without a plea agreement (A18). The court below imposed sentence on August 19, 2021 (A19) and entered the written judgment on August 21, 2021 (A19-20). Mr. McCoy filed a timely notice of appeal on August 26, 2021 (A20).

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

This Appeal presents the following issues:

Whether there are any meritorious or non-frivolous grounds for appeal related to Mr. McCoy's guilty plea or sentencing?

Did the lower court err by not departing downward from the sentencing guidelines, *sua sponte*, based on Mr. McCoy's mental and emotional condition?

Whether the record is sufficient to determine whether Mr. McCoy was denied effective assistance of counsel?

The answer is each of these questions is no.

## STATEMENT PURSUANT TO *ANDERS v. CALIFORNIA*

After a thorough review of the record and diligent legal research, counsel has found no meritorious or non-frivolous issues to raise on appeal. Accordingly, a motion to relieve counsel accompanies this brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).

## STATEMENT OF THE CASE

### The Offense

This offense involved the theft of a 2007 red Ford Fusion[2] (the "car") by Mr. McCoy and his co-defendant Jordan Taylor ("Taylor") from a person, described in the record as the "Victim," in Peekskill, New York on April 10, 2019 (PSR ¶¶15-18).

---

[2] The Victim's 2007 red Ford Fusion had been manufactured in Hermosillo, Mexico, and then shipped to Peoria, Arizona, and ultimately to New York, where it was purchased (PSR ¶ 19).

At approximately 8:30 pm on April 10, 2019, Taylor sent a text message to the Victim asking for a ride to a local shopping mall in order to sell a cell phone. When the Victim agreed, Taylor texted the Victim an address in Peekskill, New York, to meet him.

The Victim drove his car to the address. When he arrived, Taylor directed the Victim to accompany him down a set of concrete stairs towards a basement. The Victim complied (PSR ¶ 16). When he arrived at the bottom of the stairs, Mr. McCoy was there. Mr. McCoy directed the Victim to "get down." After the Victim complied, Taylor and McCoy punched and kicked the Victim in his head and upper body multiple times. During the attack, Mr. McCoy pointed a knife at the Victim's chest causing him to fear for his life (PSR ¶ 17).

After the assault, Taylor and Mr. McCoy went through the Victim's pockets and removed his car keys, iPhone, and wallet containing his debit card. Taylor and Mr. McCoy then ran up the concrete stairs. Both men then entered the Victim's car and drove off (PSR ¶ 18).

The Victim was treated at Hudson Valley Hospital located in Cortlandt Manor, New York, for three lacerations to the back of

his head as a result of the assault by Taylor and Mr. McCoy. Medical personnel at the hospital used a total of three staples to close the lacerations in the Victim's scalp before discharging him from the hospital the same night (PSR ¶ 18).

McCoy and Taylor were separately arrested the next day, April 11, 2019 (PSR ¶ 22). Taylor admitted that he lured the Victim to the address, and that he and Mr McCoy then struck the Victim repeatedly and stole the Victim's car (PSR ¶ 23).

The Victim incurred approximately $1,500.00 in medical bills related to treatment for injuries sustained during the assault. In addition, the victim's iPhone XR, valued at $800.00, was never recovered. The police recovered the Victim's car, and he did not seek any damages for it. (PSR ¶¶27-28)[3].

McCoy admitted during his allocution that he committed both the crimes of carjacking and conspiracy to commit carjacking. Specifically, he said that he agreed with another person [Taylor] to steal a car and that he used "force and violence to take the car from its owner, and … knowingly caused serious bodily injuries to the victim." (PTr, 36-39.) He

---

[3] Restitution in the amount of $2,300.00 is owed to the victim for lost property and medical treatment.

conceded that "the car that was taken from the victim has been shipped in interstate commerce because it was manufactured outside of the United States" (A 259, 261).

### Procedural History

The initial indictment against Mr. McCoy and Jordan was returned and unsealed on August 5, 2019 (A 6). Before Mr. McCoy was formally arraigned on that indictment, a Superseding Indictment was returned on which Mr. McCoy and Jordan were arraigned on October 31, 2019, and entered Not Guilty pleas (A 6-8).

Although the district court initially set a trial date, the trial date was adjourned to allow the parties to complete discovery and engage in plea discussions. Covid 19 restrictions also resulted in delays. (A 6-10.)

Jordan, who had been incarcerated from the time of his arrest, entered a guilty plea on September 10, 2020 (A 12). Judge Briccetti sentenced Jordan on December 14, 2020, to time served followed by three years supervised release and directed him to pay $2300 in restitution to the Victim (A 15).

Meanwhile Mr. McCoy, who remained free on bail, continued to prepare for trial.

### Competency Evaluation

As the case proceeded to trial, Mr. McCoy's district court counsel advised the Court that he was researching whether Mr. McCoy was competent to stand trial. At the same time, his counsel presented information regarding Mr. McCoy's mental health to the government in an unsuccessful attempt to convince the government to defer prosecution, or, alternatively to refer the case to the state for prosecution.

Finally, on February 15, 2021, Mr. McCoy's district court counsel asked the district judge to order that Mr. McCoy undergo a psychological evaluation pursuant to 18 U.S.C. § 4241(a), (b), and to schedule a hearing to determine whether Mr. McCoy was competent (A16). In his application, Mr. McCoy's district court counsel did not assert that Mr. McCoy was not competent but that he could not confirm that he was. With his February 15, 2021, letter Mr. McCoy's district court counsel submitted two reports: one authored by Michelle Casarella, Psy.D. and dated August 3, 2020 (the "Casarella Report") (SA1-11), and the other by Nurse Practitioner Jacques M. Lucien dated November 18, 2020 (the "Lucien Report") (SA12-21). The government opposed the application.

In response to the February 15, 2021, letter, Judge Briccetti
conducted a conference with the parties on February 24, 2021. At the
conference, Judge Briccetti accurately noted that neither the Casarella
Report, nor the Lucien Report, opined on Mr. McCoy's competency, both
raised serious questions about his mental state. Judge Briccetti noted
that Dr. Casarella found that Mr. McCoy has "pervasive lifelong
traumatic experiences of an interpersonal nature" and was "further
debilitated by both biological and genetic components" (A 180). The
district judge also noted that Dr. Casarella said that Mr. McCoy was
"functioning at a much younger level than his chronological age" which
at the time the judge noted was "21" (A 180). The judge noted that Dr.
Casarella also said that "In many ways [Mr. McCoy] exhibits abilities
consistent with a child during adolescence or younger" (A 181). Judge
Briccetti said that when he read this in the Casarella Report, "I think to
myself, well, that sounds like maybe he's not really competent to
understand what's happening here today and maybe we should have
someone really look at this more carefully so that I am satisfied that he's
competent" (A 182). Judge Briccetti noted that the Lucien Report also

discussed Mr. McCoy experiencing "delusions and hallucinations" (A 182).

Although the government opposed the application it anticipated correctly that Judge Briccetti might order an evaluation and agreed with Mr. McCoy's district court counsel on a particular evaluator (A 185), namely Dr. Barry Rosenfeld (A 185).

After hearing the parties, Judge Briccetti ordered a competency evaluation because he stated, "I'm not confident at this point that I have enough information to conclude that, in fact, Mr. McCoy is competent to stand trial" (A 192-193). The district court continued the trial date of April 12, 2021 (A 199).

Following the conference, on February 26, 2021, the district court ordered that Mr. McCoy undergo a psychological evaluation pursuant to 18 U.S.C. § 4241(a), (b), by March 15, 2021, and scheduled a hearing for March 25, 2021 (A 213).

On March 3, 2021, before the district court received the report of the psychological evaluation, Mr. McCoy through his counsel asked the district court to schedule a change of plea proceeding (A 17).

Dr. Rosenfeld submitted his report dated March 8, 2021, in which

he concluded that:

> Despite the possibility that Mr. McCoy does suffer from a
> major mental disorder that is currently in remission he
> demonstrated a relatively simple, but accurate
> understanding of the proceedings against him and appears
> capable of participating meaningfully in his own defense. Mr.
> McCoy appears capable of making decisions regarding his
> case, provided these decisions are explained at a level
> commensurate with his borderline intellectual functioning
> (i.e., simple explanations with attention to explaining any
> aspects that he may not already understand). He appears
> capable of provide [sic] relevant testimony if necessary, and
> able to conform his behavior to the demands of a courtroom.
> In sum, there is no evidence that Mr. McCoy currently suffers
> from a mental disorder that impairs his ability to understand
> the proceedings against him or to consult with his attorney
> with a reasonable degree of [sic] rational degree of
> understanding.

(SA 26).

The lower court scheduled a hearing for March 25, 2021, to

determine whether Mr. McCoy was competent and, if the district court

determined him to be competent, to consider his guilty plea (A 17).

On March 23, 2021, the government provided Mr. McCoy with a

letter pursuant to *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d

Cir. 1991), setting forth the government's position regarding the

application of the United States Sentencing Guidelines ("U.S.S.G." or

"Guidelines") to Mr. McCoy (the "Pimental letter"). The Guidelines calculation contained in the Pimental letter grouped the substantive carjacking offense charged in Count One and the carjacking conspiracy charged in Count Two into a single Group which was subject to U.S.S.G. § 2B3.1. The letter calculated the base offense level as 20 pursuant to U.S.S.G. § 2B3.1(a), which was increased by three pursuant to U.S.S.G. §2B3.1(b)(2)(E), because a dangerous weapon was brandished or possessed, an additional two levels pursuant to U.S.S.G. §2B3.1(b)(3)(A), because bodily injury occurred and another two levels pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved a carjacking, resulting in Total Offense level of 27. The government agreed that assuming Mr. McCoy demonstrates acceptance of responsibility to its satisfaction, the district court could reduce this offense level by two levels pursuant to U.S.S.G. § 3E1.1(a), on the government's motion by an additional one-level pursuant to U.S.S.G. § 3E1.1(b). On these calculations, the government stated in the Pimental letter that the applicable offense level would be 24. The government further calculated that Mr. McCoy's Criminal History Category is I resulting in a

Guidelines sentencing range is 51 to 63 months' imprisonment. (A214-217.)

### The Plea Proceeding

The lower court conducted the plea proceeding on March 25, 2021 (A 18). Mr. McCoy had the assistance of his district court counsel throughout the proceeding. As discussed below, the district judge satisfied the requirements of Rule 11 of the Federal Rules of Criminal Procedure.

### Competency Determination

At the outset, Judge Briccetti noted that in response to the February 26, 2021, order directing that Mr. McCoy undergo a psychological evaluation, he had received the report dated March 8, 2021, from Dr. Barry Rosenfeld. The district judge summarized Dr. Rosenfeld's finding that "in accordance with the standard that applies for competency evaluation, Dr. Rosenfeld finds the defendant competent"( A 226). According to Judge Briccetti, Dr. Rosenfeld's report stated that although Mr. McCoy suffered from a number of mental issues, including "a major mental disorder that is currently in remission," Dr. Rosenfeld found that Mr. McCoy

demonstrated a relatively simple but accurate understanding of the proceedings against him and appears capable of participating meaningfully in his own defense. Mr. McCoy appears capable of making decisions regarding his case, provided these decisions are explained at a level commensurate with his borderline intellectual functioning. That is, simple explanations with attention to explaining any aspects that he may not already understand... He appears capable of providing relevant testimony, if necessary, and able to conform his behavior to the demands of the courtroom. In sum, there is no evidence Mr. McCoy currently suffers from mental disorder that impairs his ability to understand the proceedings against him or to consult with his attorney with a reasonable degree of rational -- with a reasonable degree of rational degree of understanding.

(A 226).

In response to the district court's inquiry, the prosecutor and defense attorney agreed with Dr. Rosenfeld's assessment. Mr. McCoy's district court counsel stated:

… [W]e accept Dr. Rosenfeld's finding, we ask the Court to find that the defendant is competent to assist in his own defense and understand and appreciate what's going on here, and most importantly, that he is capable of entering a guilty plea.

As the Court knows, I never took the position that he was incompetent. I took the position that I was unable to pass judgment on his competency, and that's when I asked the Court to order this evaluation. But I ask the Court, at this point in time, [find] that the client is competent and ready to proceed.

(A 227). The lower court then ruled:

Given what Dr. Rosenfeld says, given what the government says, given what [defense counsel] says, I do find that the defendant is competent to stand trial.

I've already read the conclusion into the record. There's no dispute about the conclusion. So the Court accepts those findings as the findings of the Court.

What I read into the record, which is the summary paragraph of the March 8 report, I adopt as the findings of the Court and conclude that … the defendant is competent. All right. That resolves that issue.

(A 228-229).

### Allocution

Mr. McCoy's attorney then advised the district court that Mr. McCoy wanted to waive indictment and enter a plea of guilty to the Second Superseding Information with a plea agreement (A 230).

The lower court placed Mr. McCoy under oath and advised him that the government could use any statement that he made against him in a prosecution for perjury or false statement (A 231).

The district court then questioned Mr. McCoy regarding his current and prior mental health history, the district judge found that he was competent to enter a plea. (A 235-236). During the colloquy, Mr. McCoy told Judge Briccetti that although he had taken the prescription drug Depakote, for the schizophrenia, his mind was clear and he

understood what was happening in court (A 236). Mr. McCoy confirmed

that he had discussed his case with his counsel, including any possible

defenses which he might have and the consequences of pleading guilty

(A 236). He then told the district judge that he was satisfied with his

counsel (A 236-237).

Both Mr. McCoy's counsel and the prosecutor assured Judge

Briccetti that they did not have "any doubt" as to Mr. McCoy's

competence to plead guilty. (A 237).

The district court then ruled:

> based on the defendant's responses to my questions and my
> observations of his demeanor, as well as, frankly, the report I
> received from Dr. Rosenfeld, I find that he is fully competent
> to waive indictment and enter an informed guilty plea at this
> time.

(A 237).

Next, the district court accepted Mr. McCoy's waiver of indictment.

Before doing so, the lower court jury advised Mr. McCoy that he had the

constitutional right to require the government to present evidence to a

Grand Jury to see whether the Grand Jury would vote to charge you

with those crimes; that a Grand Jury is a group of at least 16 but not

more than 23 citizens, at least 12 of whom had to agree that there was

probable cause to believe that a crime was committed and that had

committed it before they could issue an indictment (A 237-238). Mr.

McCoy assured the district judge that he understood and that he wanted

to waive the right to prosecution by indictment and proceed by means of

the Second Superseding Information. He then acknowledged his

signature on the waiver of indictment form and assured the district

judge that he had signed it voluntarily (A 239). Judge Briccetti then

found that "the defendant has knowingly and voluntarily waived his

right to be indicted by a Grand Jury" and accepted the information for

filing (A 239-240).

The district judge next explained to Mr. McCoy the trial rights

which he would surrender by pleading guilty including his rights to

persist in his plea of not guilty, to a trial by a jury at which the burden

would be on the government to prove each and every element of the

crime charged beyond a reasonable doubt and that he would not have to

prove that he was innocent (A 240), to be represented by counsel at trial

and at every stage of the proceeding and if necessary to have an attorney

appointed for him (A 241), to confront witnesses against him and to have

his attorney cross-examine those witnesses, and to subpoena witnesses

(A 241-242). The district judge further advised Mr. McCoy that he would have the right to testify in his own defense, if he chose to testify and the right to remain silent if he chose to do so, but, if he chose not to testify no inference of guilt from his decision not to do so (A 242). Mr. McCoy told the lower court that he understood these rights (A 242).

Judge Briccetti further advised Mr. McCoy that in the event that he was convicted at trial, he would have the right to appeal the verdict to a higher court (A 242).

The lower court ensured that Mr. McCoy was aware that by pleading guilty he was waiving the rights which he had explained to him, other than the right to an attorney (A 243).

Judge Briccetti then reviewed with Mr. McCoy again the charges in the superseding information and had the prosecutor outline the elements of each offense (A 244-245).

Next Judge Briccetti advised Mr. McCoy of the maximum sentences to which he would be subject by pleading guilty on each count including imprisonment, supervised release, fines, restitution and the mandatory special assessment (A 247-248). Mr. McCoy ensured the district judge that he understood the possible maximum penalties which

he faced (A 248). Mr. McCoy also confirmed that he had discussed these penalties with his attorney as well as possible collateral consequences to entering a plea such as loss of the right to bear firearms or receive certain benefits from the government (A 251).

The district judge advised Mr. McCoy that he would have to consider the sentencing guidelines in determining the sentence. In response, Mr. McCoy assured the district judge that he had discussed the sentencing guidelines with his attorney (A 251).

Mr. McCoy acknowledged that he had received the government's Pimental letter dated March 23, 2021, that he had reviewed the agreement with the assistance of his attorney and that he fully understood its terms (A 252-254). The district judge noted that the letter was just the government's position on the sentencing guideline calculations and was not binding on either the sentencing court or Mr. McCoy (A 254).

Mr. McCoy acknowledged that he understood that the sentencing court was not bound by the sentencing guideline calculations in the Pimental letter (A 254).

The lower court also confirmed that Mr. McCoy had not been threatened or coerced or promised or offered anything in order to get him to plead guilty (A 254-255).

In response to Judge Briccetti's questions, Mr. McCoy stated that having been advised of the charges against him, the possible penalties that he faces, and the rights that he would surrender, he wanted to plead guilty to Counts One and Two of the Information because he was, in fact, guilty (A 255-256).

At the district court's request, the prosecutor then summarized the evidence which the government would present if the case had proceeded to trial. This included:

> First, testimony from the victim stating, among other things, that Mr. McCoy along with the co-conspirator had lured him into a basement of a house in Peekskill, New York, threatened him with a knife, beat him in the body and head until he was nearly unconscious, robbed him, and stole his vehicle;
> Second, law enforcement testimony regarding the observed injuries on the victim, including that the victim was bleeding from the head when speaking with law enforcement;
> Third, medical records showing that the victim sustained multiple lacerations to the head requiring multiple staples to close the wound;
> Fourth, vehicle records showing that the victim's car was manufactured out of state, specifically, in Mexico;
> Fifth, cellphone records from Mr. McCoy's phone, including text message communications between him and

the co-defendant regarding the commission and planning of
the offense; and

Finally, surveillance footage and photographs, all of
which the prosecutor stated would prove that Mr. McCoy had
committed the charged offense (A 257-258).

In response to the lower court's questions, Mr. McCoy conceded

that what the prosecutor had said was "substantially correct" (A 258).

Mr. McCoy continued by admitting that he and Taylor had "used

force and violence to take the car from its owner, and … knowingly

caused serious bodily injuries to the victim" (A 259). He continued that

he "freely and voluntarily joined an agreement with another individual

to commit the crime of carjacking which [he had] described (A 260).

After a further colloquy, the district judge found

Based on the defendant's responses to my questions and my
observations of his demeanor, I find that he understands his
rights and is waiving them knowingly and voluntarily with
an understanding of the consequences of his guilty plea,
including the potential sentences that may be imposed.
I further find that the guilty plea is voluntary and did not
result from force, threats, or promises. That the defendant
has admitted he is guilty as charged in Counts One and Two
of the information, and the plea is supported by an
independent and factual basis for each and every element of
the crimes charged.

(A 262-263).

The district judge then ordered a presentence report and set a date for sentencing (A 263-265).

At the conclusion of the plea proceedings, the prosecutor asked the lower court to remand Mr. McCoy. The prosecutor argued that under the circumstances of this case, the carjacking was a crime of violence, which under 18 U.S.C. § 3143, required considered mandatory remand absent exceptional reasons (A 265-266). After hearing from the defense, Judge Briccetti denied the government's application to remand Mr. McCoy. The district judge found that there was clear and convincing evidence that Mr. McCoy was unlikely to flee or pose a threat to the community, which taken together with the fact that he is receiving mental health treatment, the on-going pandemic and other factors constituted "exceptional circumstances" warranting continuing his bail (A 269).

### The Presentence Investigative Report

The Presentence Investigative Report was released on May 26, 2021 and revised on June 23, 2021 (PSR page 1). The PSR used the 2018 Guidelines Manual to determine Mr. McCoy's offense level. U.S.S.G. § 1B1.11 (PSR ¶31).

The PSR determined that the base level was 20 for a violation of 18 U.S.C. § 2119 (PSR ¶33, U.S.S.G. § 2B3.1(a)). The PSR found that the base level was increased by three levels because a knife was possessed and brandished (PSR ¶34, U.S.S.G. § 2B3.1(b)(2)(E)); two levels because the victim was punched and kicked resulting in an injury which required "three staples in his head" to treat (PSR ¶35, U.S.S.G. § 2B3.1(b)(3)(B)); and two levels because the offense involved a carjacking (PSR ¶36, U.S.S.G. § 2B3.1(b)(5)). This resulted in an Adjusted Offense Level of 27 (PSR ¶40).

The PSR further found that Mr. McCoy qualified for reductions for acceptance of responsibility of two levels pursuant to U.S.S.G. § 3E1.1(a) (PSR ¶42) and one level pursuant to U.S.S.G. § 3E1.1(b)(PSR ¶43), resulting a Total Offense Level of 24  (PSR ¶44).

The PSR further calculated his CHC as I based on a criminal history score of one (PSR ¶47). These calculations are consistent with the Pimental letter (A 215).

The PSR computed the guideline imprisonment range total offense level 24 and the CHC I to resulting in a Guidelines imprisonment range of 51-63 months (PSR ¶91). The PSR also found that the Guidelines fine

range was $20,000 to $200,000 (PSR ¶101), but that Mr. McCoy did not

appear able to pay a fine (PSR ¶88). These calculations matched those in

the Pimental Letter (A 216).

The initial release of the PSR was made on May 26, 2021, which

was more than 35 days before Mr. McCoy was sentenced on August 19,

2021. Neither party made any objections. The Probation Department

made some corrections and additions which did not affect the guideline

calculation (PSR page 20). The Probation Department recommended

that the district court grant a variance and sentence of six months

incarceration, three years supervised release and restitution to the

victim of $2300. The Probation Department did not recommend a fine

(PSR Page 21).

### Sentencing

Prior to sentencing, the parties made sentencing submissions to

the district court (A 19). In his submission, defense counsel asked the

sentencing court to impose a non-incarceratory sentence which "would

fall just short of imprisonment." The defense recommended that the

sentencing judge impose conditions including "home confinement,

location monitoring, community service, mental health treatment,

employment counseling and any of a host of other punitive measures". The defense argued that such a sentence would be sufficient, but no more than necessary to satisfy the directives of 18 U.S.C. § 3553(a) (ECF #106).

In its submission, the government asked Judge Briccetti to impose a Guidelines sentence of 51 to 63 months' imprisonment as set forth in the Pimentel letter (ECF #107).

On August 19, 2021, Judge Briccetti sentenced Mr. McCoy. At the outset of the proceeding, the district judge confirmed that Mr. McCoy and his counsel had read and discussed the PSR and had no objections to it (A 275). After allowing the parties to comment on the PSR, Judge Briccetti adopted the sentencing guidelines calculations in the PSR and determined that the guidelines sentencing range was 51 to 63 months (A 277).

The lower court then allowed Mr. McCoy's attorney to speak on his client's behalf (A 285-300). Following counsel's arguments, Judge Briccetti afforded Mr. McCoy the opportunity to speak and engaged in a colloquy with him (A 301-302).

Judge Briccetti then advised Mr. McCoy that he intended to impose a sentence of six months followed by three years of supervised release and $2,300 in restitution to the victim (A 302). This was constituent with the Probation Department's recommendation (PSR page 21).

The sentencing judge then explained his reasoning for that sentence (A 303-308). The sentencing judge considered factors set forth in 18 U.S.C. § 3553(a)(2) including, *inter alia*, the sentencing guidelines and the need to avoid unwarranted sentencing disparities, as well as the arguments and the information provided by the parties and imposed a sentence below the sentencing guidelines.

Judge Briccetti noted that Mr. McCoy's counsel had not asked for a departure based on Mr. McCoy's "mental and emotional condition" under U.S.S.G. § 5H1.3 (A 304). However, the sentencing judge said that "I don't think it matters" because he had amble basis under 3553(a) to grant a downward variance because "Mr. McCoy has a number of mental and emotional conditions that are present to an unusual degree" as set forth in the PSR and his sentencing submission (A 305).

25

However, the sentencing judge explained that he also had to take into account that the crime itself was so serious and the impact on the victim was so great that the relatively short jail sentence of six months was necessary to serve the sentencing objectives of just punishment and promoting respect for the law (A 308), and provide adequate deterrence to criminal conduct (A 309).

The district judge advised Mr. McCoy that he had the right to appeal (A 315).

On the government's motion, the lower court dismissed the open counts in the underlying indictments (A 315).

Judge Briccetti signed the written judgment issued on the same day and it was filed the following day (A 324-330). The lower court also entered a separate order of restitution (A 321-323) Both the written judgment and restitution order conformed with the oral sentence.

On September 26, 2021, Mr. McCoy filed a timely notice of appeal (A 331). In a written order, the lower court denied Mr. McCoy's application for bail pending appeal (A 335-336).

This appeal follows.

## SUMMARY OF ARGUMENT

Based on my review of the record and legal research, I find no basis to argue that the lower court erred in accepting the guilty plea or sentencing.

Where, as here, the defendant never sought to withdraw the plea and did not make any contemporaneous objections, this Court reviews violations of Fed. R. Crim. P. 11 for plain error. Even under a lesser standard, the record showed that the district court properly advised Mr. McCoy of his rights in the plea proceeding and properly found that there was a sufficient basis to accept his guilty plea based on his own allocution and the government's proffer. (Point I.)

The record also showed that the lower court did not err in sentencing Mr. McCoy. The sentence imposed was procedurally and substantively reasonable. (Point II.)

There is not an adequate basis on which to assert on direct appeal that Mr. McCoy was denied effective assistance of counsel (Point III).

## ARGUMENT

## POINT I

## THERE WERE NO ERRORS IN THE PLEA PROCEEDING AFFECTING MR. McCOY'S SUBSTANTIVE RIGHTS

Counsel is unable to argue that Mr. McCoy's guilty plea was not knowing and voluntary in violation of Fed. R. Crim. P. 11(b)(2), see, *Gall v. United States*, 397 U.S. 742 (1970) or that his allocutions were insufficient in violation of Fed. R. Crim. P. 11(b)(3).

**A. THIS COURT APPLIES PLAIN ERROR ANALYSIS FOR APPEALS BASED ON VIOLATIONS OF RULE 11 WHERE, AS HERE, THE DEFENDANT DID NOT MAKE ANY CONTEMPORANEOUS OBJECTIONS OR SEEK TO WITHDRAW HIS PLEA**

This Court reviews a plea for possible violations of Fed. R. Crim. P. 11, under the plain error standard where, as here, the defendant did not make any contemporaneous objections and never sought to withdraw the plea. *United States v. Espinal*, 634 F.3d 655, 658 (2d Cir. 2011); *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005). See, *United States v. Martinez-Perez*, 767 F. App'x 170, 171-72 (2d Cir. 2019); *United States v. Cassesse*, 685 F.3d 186, 188 (2d Cir. 2012); *United States v.*

28

*Verkhoglyad*, 516 F.3d 516 F.3d 122, 128 (2d Cir. 2008); *United States v. Villafuerte*, 502 F.3d 204, 207 (2d Cir. 2007).

To establish plain error, a defendant must demonstrate that:

(1)     there is an error;

(2)     the error is clear or obvious, rather than subject to reasonable dispute;

(3)     the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and

(4)     the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 560 U.S. 258, 262 (2010); *United States v. Chan*, 677 F. App'x 730, 732 (2d Cir. 2017).

Under this standard, there is no basis to argue that the lower court committed any error, much less plain error in this case.

## B.     THE LOWER COURT PROPERLY FOUND THAT MR. McCOY WAS COMPETENT AT THE TIME OF HIS GUILTY PLEA

Counsel found no basis on which to argue that the lower court erred in determining that Mr. McCoy was competent to plead guilty.

This Court has long held that before a district court can accept a guilty plea, the district judge must determine "that the defendant is

29

offering the plea voluntarily and that he is competent to understand the nature of the charge, his constitutional rights, and the scope of the penalty provided by law." *Saddler v. United States*, 531 F.2d 83, 85 (2d Cir. 1976) (per curiam) (citations omitted); See also, *Godinez v. Moran*, 509 U.S. 389, 400 (1993); *United States v. Rossillo*, 853 F.2d 1062, 1066-67 (2d Cir. 1988); *United States v. Livorsi*, 180 F.3d 76, 82 (2d Cir. 1999).

Prior to accepting the plea, the district court ordered and received Dr. Rosenfeld's psychological evaluation of Mr. McCoy which found him competent (SA26).

During the plea allocution, the district judge conducted a colloquy directly with Mr. McCoy (A 229) and on that basis, determined that Mr. McCoy was "fully competent to waive indictment and enter an informed guilty plea" (A 237). Judge Briccetti said that he based this finding "on the defendant's responses to my questions and my observations of his demeanor, as well as, frankly, the report I received from Dr. Rosenfeld" (A 237). Notably, neither the prosecutor nor defense counsel expressed any doubt as to Mr. McCoy's competence to waive indictment and to plead guilty (A 237).

## C. THERE IS NO BASIS TO ARGUE THAT THE DISTRICT COURT FAILED TO COMPLY WITH THE REQUIREMENTS OF RULE 11 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Nor has counsel found any basis to argue that during the plea allocation the lower court failed to respect Mr. McCoy's rights or to satisfy the requirements of Fed. R. Crim. P. 11(b)(1), (b)(2) and (c).

Fed. R. Crim. P. 11(b)(1) provides:

Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

31

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)[4]; and

(O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

The lower court judge satisfied the other requirements of Fed. R. Crim. P. 11(b)(1).

The district judge advised Mr. McCoy that any false answers which he made to the court's questions could later be used against him in a

---

[4] Since Mr. McCoy did not waive the right to appeal or to collaterally attack the sentence, Fed. R. Crim. P. 11(b)(1)(N) which requires the lower court to discuss that waiver is not relevant.

prosecution for perjury or making a false statement (PTr. 10), satisfying Fed. R. Crim. P. 11(b)(1)(A).

Judge Briccetti also ensured that Mr. McCoy was aware that by pleading guilty he was surrendering his rights including his rights to persist in his plea of not guilty (A 240, 242) (Fed. R. Crim. P. 11(b)(1)(B)), to a trial by a jury at which the burden would be on the government to prove each and every element of the crime charged beyond a reasonable doubt (A 240) (Fed. R. Crim. P. 11(b)(1)(C)), to be represented by counsel at trial and at every stage of the proceeding and if necessary to have an attorney appointed for him (A 241) (Fed. R. Crim. P. 11(b)(1)(D)), to confront witnesses against him and to subpoena witnesses, as well as to testify on his behalf and to remain silent if he chose to do so (A 241-242) (Fed. R. Crim. P. 11(b)(1)(E)), and to be presumed to be innocent until and unless proven guilty beyond a reasonable doubt (A 240).

The district judge also ensured that Mr. McCoy understood that by pleading guilty, he waived these trial rights (A 242) as required by Fed. R. Crim. P. 11(b)(1)(F).

The district judge further determined that Mr. McCoy understood the nature of the charge (A 243-244) and the maximum and minimum sentences to which he would be subject by pleading guilty including imprisonment, supervised release, fines and the mandatory special assessment (A 246-247). This inquiry satisfied the requirements of Fed. R. Crim. P. 11(b)(1)(G), (H), (I), (J), (K) and (L).

Since Mr. McCoy is a citizen of the United States (PSR page 3), there were no potential immigration consequences which the lower court was required to discuss with him by Fed. R. Crim. P. 11(b)(1)(O).

As required by Fed. R. Crim. P. 11(b)(2), the district court determined that plea had not been obtained by threats or by any undisclosed promises between him and the government. Mr. McCoy told the district court judge that there were no other agreements and that he was entering his plea freely (A 256, 263), thereby satisfying this requirement.

The district court judge also discussed with Mr. McCoy the lower court's obligation to accurately compute the Sentencing Guidelines range and consider that range among the other factors required by 18 U.S.C. §3553(a) as required by Fed. R. Crim. P. 11(b)(1)(M) (A 251).

34

Based on counsel's analysis set forth above, counsel determined that there are no meritorious issues relating to the plea proceeding to raise on appeal.

## D. THE FACTUAL BASIS FOR MR. McCOY'S PLEA WAS LEGALLY SUFFICIENT

### 1. Legal Principles

Under Fed. R. Crim. P. 11(b)(3), the district court must determine that there is a factual basis before accepting a plea. This Court has held that the district court may satisfy that requirement by matching the facts to the legal elements of the crime. *United States v. Calderon*, 243 F.3d 587, 589-90 (2d Cir. 2001). In making that determination, the district court may rely not only on the defendant's allocution but may consider any other facts "at its disposal" including the government's offer of proof. *Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir. 1974).

Based on the record, detailed below Judge Briccetti found that "Mr. McCoy admitted he is guilty as charged in Counts One and Two of the information, and the plea is supported by an independent and factual basis for each and every element of the crimes charged." (A 263).

## 2. There was an Adequate Factual Basis to Find Mr. McCoy Guilty of the Substantive Carjacking Count

Count One of the Superseding Information charged Mr. McCoy with the substantive crime of carjacking with the intent to cause death and serious bodily harm in violation of Title 18, United States Code, Sections 2119 and 2. Section 2119 provides:

> Whoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so …
>
> (2) if serious bodily injury … results, be fined under this title or imprisoned not more than 25 years, or both,

The Supreme Court held that higher statutory penalties found within the federal carjacking statute, 18 U.S.C. § 2119, set forth additional elements of an offense which must be alleged in an indictment and proven beyond a reasonable doubt. *Jones v. United States*, 526 U.S. 227, 232-39 (1999).

The elements of the offense of carjacking with serious bodily injury are:

First, that the defendant took a motor vehicle from another person;

36

Second, that the defendant did so by means of force, violence, or intimidation;

Third, that the defendant intended to cause death or serious bodily harm; and

Fourth, that the vehicle had been transported, shipped, or received in interstate or foreign commerce.

18 U.S.C. § 2119, <u>see</u>, *Holloway v. United States*, 526 U.S. 1, 12 (1999); *United States v. Arnold*, 126 F.3d 82, 85 (2d Cir. 1997).

The prosecutor summarized the government's evidence as follows:

> First, testimony from the victim stating, among other things, that the co-conspirator and another individual later identified as the defendant, lured him into a basement of a house in Peekskill, New York, threatened him with a knife, beat him in the body and head until he was nearly unconscious, robbed him, and stole his vehicle;

> Second, law enforcement testimony regarding the observed injuries on the victim, including that the victim was bleeding from the head when speaking with law enforcement;

> Third, medical records showing that the victim sustained multiple lacerations to the head requiring multiple staples to close the wound;

> Fourth, vehicle records showing that the victim's car was manufactured out of state, specifically, in Mexico;

37

Fifth, cellphone records from the defendant's phone, including text message communications between the defendant and the co-defendant regarding the commission and planning of the offense; and

Then finally, … surveillance footage and photographs,

(A 257).

In response to the district court's request, the prosecutor clarified that the records from Mr. McCoy's cellphone included text message communications between him and the co-defendant, Mr. Taylor, regarding the planning and commission of the offense (A 258).

Following the prosecutor's allocution, the district court questioned Mr. McCoy as follows:

THE COURT: … Mr. McCoy, did you hear what the prosecutor just said?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is what he said substantially correct?

THE DEFENDANT: Yes, your Honor.

(A 258).

In his own allocution, Mr. McCoy stated that:

while aiding and abetting another individual, took a car from its owner. I knowingly used force and violence to take the car from its owner, and I knowingly caused serious bodily injuries to the victim.

(A 259.)

Regarding the interstate commerce element, Mr. McCoy admitted "the car that was taken from the victim has been shipped in interstate commerce because it was manufactured outside of the United States" (A 259) and his counsel stated that "We concede that the vehicle that was taken was manufactured in Mexico and therefore it must have traveled in interstate commerce" (A 261).

Based on the foregoing, there is no basis on which counsel can argue that the lower court erred in determining that there was a factual basis for the plea to Count One.

### 3. There was an Adequate Factual Basis to Find Mr. McCoy Guilty of the Carjacking Conspiracy Count

Count Two of the Superseding Information, to which Mr. McCoy pled guilty, charged him with a conspiracy to commit carjacking in violation of 18 U.S.C. § 371.

The essential elements of this offense are:

First, that two or more people agreed to commit a crime, in this instance, carjacking;

Second, that the defendant knowingly and intentional joined the conspiracy; and

Third, that the defendant committed an overt act in furtherance of that conspiracy.

In his allocution, Mr. McCoy specifically admitted that he "joined an agreement with another individual to commit the crime of carjacking" (A 260).

Based on the foregoing, there is no basis on which counsel can argue that the lower court erred in determining that there was a factual basis for the plea to Count Two.

## POINT II

## THE SENTENCE IMPOSED ON MR. McCOY WAS PROCEDURALLY AND SUBSTANTIVELY REASONABLE

Counsel cannot argue based on the record of this case that imposition of the sentence in this case violated Mr. McCoy's rights.

### A.   AN *ANDERS* BRIEF MUST DISCUSS THE SUBSTANTIVE AND PROCEDURAL REASONABLENESS OF THE SENTENCE

In *United States v. Whitley*, 503 F.3d 74, 77 (2d Cir. 2007), this Court determined that an *Anders* brief should include a discussion of the substantive and procedural reasonableness of a defendant's sentence.

In *United States v. Booker*, 543 U.S. 220, 261-262 (2005), the Supreme Court set the standard for appellate review of the "reasonableness" of a sentence. Following *Booker*, this Court has held that

> A sentence will satisfy the requirements of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and the Sixth Amendment if a sentencing judge: 1) calculates the relevant Guidelines range, including any applicable departure under the Guidelines system; 2) considers the calculated Guidelines range, along with the other § 3553(a) factors; and 3) imposes a reasonable sentence.

*United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005).

This Court reviews the "reasonableness" of sentences by applying

> a deferential standard limited to identifying abuse of discretion regardless of whether a challenged sentence is "inside, just outside, or significantly outside the Guidelines range."

*United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008) <u>citing</u> *Gall v. United States*, 552 U.S. 38, 41 (2007); *Kimbrough v. United States*, 558 U.S. 85, 111 (2007); *United States v. Verkhoglyad*, 516 F.3d at 127.

To determine reasonableness, the Court first looks at the procedures which the sentencing court followed to ensure that there were no significant procedural defects. If the sentencing was "procedurally sound," this Court will then "consider the substantive reasonableness of the sentence" taking into account the totality of the circumstances." *United States v. Jones*, 531 F.3d at 170.

This Court has held that a below-Guidelines sentence, like the one imposed in this case, is "strong evidence that a sentence is not substantively unreasonable," <u>see</u>, *United States v. Messina*, 806 F.3d 55, 66 (2d Cir. 2015), absent a colorable argument that the sentence imposed was outside the broad range of discretion afforded sentencing judges, <u>see</u>, *United States v. Cavera*, 550 F.3d 180, 188-89 (2d Cir. 2008) (en banc); *United States v. Jones*, 531 F.3d at 174. <u>See</u>, *United States v. Vasquez*, 672 F. App'x 56, 62 (2d Cir. 2016).

B.   THE SENTENCE IMPOSED WAS PROCEDURALLY
     REASONABLE

1.   Standard of Review – Plain Error

Where, as here, a defendant did not object to the reasonableness of

his sentence before the district court, this Court reviews the lower

court's decision for plain error. *United States v. Martinez-Perez*, 767 F.

App'x at 171-72; *United States v. Verkhoglyad*, 516 F.3d at 128; *United*

*States v. Villafuerte*, 502 F.3d at 207.

As noted above, to establish plain error, a defendant must

demonstrate that:

(1)   there is an error;

(2)   the error is clear or obvious, rather than subject to
      reasonable dispute;

(3)   the error affected the appellant's substantial rights,
      which in the ordinary case means it affected the
      outcome of the district court proceedings; and

(4)   the error seriously affects the fairness, integrity or
      public reputation of judicial proceedings.

Even if the plain error standard does not apply, any variance from

the requirements of Fed. R. Crim. P. 11 is subject to harmless error

analysis under which a judgment will not be overturned unless the error

43

affected the defendant's substantial rights. Fed. R. Crim. P. 11(h) (defining "harmless error").

Based on this record, there is no basis to argue that the lower court committed any error, much less plain error, in this case. Moreover, any error would be harmless.

The standard for procedural reasonableness is satisfied where, as here, the district court properly (a) identified the Guidelines range supported by the facts found by the court, (b) treated the Guidelines as advisory, and (c) considered the Guidelines together with the other factors outlined in 18 U.S.C. § 3553(a). *United States v. Bleau*, 930 F.3d 35, 38-39 (2d Cir. 2019).

In the instant case, the district judge explicitly determined the applicable sentencing guidelines level, consistent with both the PSR and the plea agreement, and then applied the sentencing factors in 18 U.S.C. § 3553(a) and imposed a below guideline sentence of six months.

## 2. The Probation Department Prepared a Timely PreSentence Report

At the direction of the district court, the Probation Department prepared the PreSentence Report which it disclosed to the parties on

May 26, 2021 and revised on June 23, 2021 (PSR page 1). Since the

sentencing occurred on August 19, 2021, the Probation Department

complied with the requirement in Fed. R. Crim. P. 32(e)(2) that the

report be provided to the parties at least 35 days prior to sentencing.

Neither party filed objections to the PSR with the district court prior to

sentencing and did not make any objections at sentencing (A 276).

3. **The Lower Court Complied with the Requirements of Rule 32(i)(1) of the Federal Rules of Criminal Procedure at Sentencing**

Fed. R. Crim. P. 32(i)(1) provides that at sentencing, the court:

(A) must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report;

(B) must give to the defendant and an attorney for the government a written summary of—or summarize in camera—any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information;

(C) must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence; and

(D) may, for good cause, allow a party to make a new objection at any time before sentence is imposed.

In the instant case, the district court complied with these requirements. The district court verified that Mr. Mr. McCoy and his counsel read and discussed the PSR (A 275). The district judge asked the defense whether it wanted to make a new objection at sentencing to which Mr. McCoy's district court counsel answered negatively (STr.4). The lower court also permitted Mr. McCoy and his counsel to discuss the probation officer's findings (A 276, 277).

> **4.** **Without Objection the Lower Court Properly Adopted the Sentencing Guideline Calculation in the PSR which Was Consistent with the Guidelines Calculation in the Pimentel Letter**

The lower court calculated the sentencing guidelines on the record. Without objection from either party, the district court adopted the guidelines as calculated in the PSR (A 277) which was consistent with the Sentencing Guidelines calculation in the Pimental letter (A 215-216). The lower court noted that guideline imprisonment range as 51 to 63 months (A 277).

### 5.    The Lower Court Properly Treated the Guidelines as Advisory

In imposing sentence, the lower court properly treated the guidelines as advisory (A 302). Notably, the lower court granted Mr. McCoy a variance from the guideline range which evinced that the sentencing judge understood that the guidelines were not mandatory. <u>See</u>, *Irizarry v. United States*, 553 U.S. at 712 (recognizing that a variance is not a guidelines sentence).

### 6.    The District Judge Properly Considered the Sentencing Factors

After determining the sentencing guideline range and acknowledging that the guidelines were advisory, the district judge considered the sentencing factors under 18 U.S.C. § 3553(a)(1)-(7) (A 302). Counsel noted that the sentencing specifically discussed several of the defendant's characteristics including mental and emotional conditions, which Judge Briccetti noted were present "to an unusual degree" as set forth in the PSR and his sentencing submission (A 305), his age (A 295) and criminal history (A 310). Judge Briccetti also noted the violent details of the crime and the impact which it had on the victim as well as the sentencing objectives of just punishment and promoting

47

respect for the law (A 308) and provide adequate deterrence to criminal

conduct (A 309). Judge Briccetti also summarized the basis for the

sentence in the Statement of Reasons ("SOR") at page 4.

The sentencing judge also specifically addressed "the need to avoid

unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct" as required by 18

U.S.C. § 3553(a)(6)(A 283-284, 290, A 292-293).

Judge Briccetti stated that after considering all of the sentencing

factors, the sentence which he imposed was "sufficient but not greater

than necessary" to serve the purposes of sentencing (A 309).

Based on the record in this case, counsel cannot argue that the

district court judge abused his discretion in imposing sentence.

### 7. The District Court Did Not Err by Not Granting A Departure Based On Mr. McCoy's Mental And Emotional Condition

This Court should not reverse the judgment because the

sentencing judge did not downwardly depart from the sentencing

guidelines based on Mr. McCoy's "mental and emotional condition."

Judge Briccetti indicated that he could consider such departure under

U.S.S.G. § 5H1.3 but that Mr. McCoy's counsel had not asked for such a

departure (A 304-305). However, the sentencing judge said that "I don't think it matters" because he had amble basis under 3553(a) to grant a downward variance because "Mr. McCoy has a number of mental and emotional conditions that are present to an unusual degree" as set forth in the PSR and his sentencing submission (A 305).

### i.   Plain Error Analysis Applies

Since Mr. McCoy did not object to Judge Briccetti's decision not to downwardly depart, this Court will apply the plain error standard. Under the plain error standard, the defendant must demonstrate that:

(1)   there is an error;

(2)   the error is clear or obvious, rather than subject to reasonable dispute;

(3)   the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and

(4)   the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

### ii.   A District Judge Does Not Err by Failing to Grant a Downwardly Departure

Judge Briccetti's failure to exercise his discretion to downwardly depart is not reversible error. In *United States v. Haynes*, 985 F.2d 65,

68 (2d Cir. 1993), this Court held that district court's refusal to downwardly depart is appealable only when the court (i) misapplied the Guidelines; (ii) misapprehended its authority to depart; or (iii) imposed an illegal sentence. None of these preconditions apply in the instant case.

### iii. There is No Basis to Argue that Judge Briccetti Erred by Not Downwardly Departing Based on Mr. McCoy's Mental and Emotional Condition

To show clear error, the proponent must show, *inter alia*, that the alleged error was "clear or obvious, rather than subject to reasonable dispute" *United States v. Marcus*, 560 U.S. at 262. This test cannot be met on the record of this case.

In the instant cases, courts have held that a sentencing court may NOT downwardly depart from the sentencing guidelines based on the defendant's mental and emotional condition under U.S.S.G. § 5H1.3 in cases involving violent crimes. U.S.S.G. § 5H1.3 is policy statement that cross references U.S.S.G. § 5K2.

The Eleventh Circuit explained that when sections § 5K2.13 and §5H1.3 are read together, guidelines show mental and emotional conditions are irrelevant except in extraordinary circumstances and only

if the defendant has committed a nonviolent crime, and since the

defendant committed the violent crime of robbery, no departure was

warranted. *United States v. Russell*, 917 F.2d 512, 517 (11th Cir. 1990).

See, *Premachandra v. United States*, 101 F.3d 68, 70 (8th Cir. 1996).

Under these circumstances, counsel has no basis to argue that the

lower court erred, much less that there was a clear error.

### 8. The Lower Court Judge Properly Advised Mr. McCoy Regarding His Appellate Rights

The lower court judge properly advised Mr. McCoy that he had 14

days to appeal this sentence. (A 314-315). A timely notice of appeal was

filed on August 26, 2021 (A 331).

### 9. The Written Judgment Accurately Reflects the Sentence Pronounced in Open Court

The written judgment accurately reflects the sentence which was

pronounced in open court. Judge Briccetti pronounced the sentence as

follows:

> It is the judgment of this Court that you be committed to the
> custody of the United States Bureau of Prisons for a total
> term of six months, to be followed by three years of
> supervised release, and this sentence is imposed on each
> count to run concurrently.

(A 310).

The written judgment corresponds with the oral sentence, by providing that "The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: 6 Months" and terms of three years supervised release on each count to run concurrently. (A 325-236).

Similarly, the written judgment corresponds with the monetary penalties. In open court Judge Briccetti stated that

> I'm also imposing the mandatory special assessment of $100 per count… So that's a total of $200 and that amount is due immediately. I am not imposing a fine, that's a separate thing, because the Defendant is unable to pay a fine. I am imposing restitution in the amount of $2,300 … [R]estitution is joint and several … Mr. Taylor's case.

(A 312-313).

The conditions of supervised release in the written judgment mirrored what was stated in open court (A 326-328).

The written judgment accurately reflects the monetary penalties, namely the special assessment of $200, $2,300 restitution, which is joint and several with Mr. Taylor, and no fine. (A 329-330). The separate Order of Restitution also accurately corresponds with the oral sentence (A 321-323).

C.    **THE SENTENCE IMPOSED WAS SUBSTANTIVELY REASONABLE**

    1.    **Standard of Review – Abuse of Discretion**

Where, as here, there is no procedural error requiring a remand, this Court reviews the substantive reasonableness of the sentence for abuse of discretion. *United States v. Regalado*, 518 F.3d 143, 147 (2d Cir. 2008) (per curiam); *United States v. Jaramillo*, 754 F. App'x 61, 61 (2d Cir. 2019). Under that standard, this Court has held that it will set aside a district court's substantive determination of a reasonable sentence "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.' " *United States v. Cavera*, 550 F.3d at 189, quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007).

    2.    **The Sentence Imposed Was Within the Range of Sentencings for Similar Offenses**

In the instant case, counsel cannot argue that the sentence of six months was not "within the range of permissible decisions." The statutory range for the instant offense was 0 to 20 years, 15 years on Count One and five years on Count Two (PSR ¶¶ 89-90).

Mr. McCoy's sentence was below sentences imposed for robbery in the United States. According to the United States Sentencing Commission, the national mean sentence for robbery in fiscal year 2020 was 107 months and the median sentence was 87 months (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/Table15.pdf (visited February 11, 2022)).

These statistics do not reveal the details of the offense. Since the instance offense was carjacking in which a weapon was brandished and the victim was injured, it is unlikely that relevant sentences would be less than the reported sentences for all robberies.

Mr. McCoy also received substantial benefits from his plea agreement. Namely, the guideline adjustments for acceptance of responsibility.

As a result, counsel cannot argue that the sentence imposed was outside the range of sentences for similar offenses.

## POINT III

## THERE IS NO BASIS IN THE RECORD TO ARGUE ON DIRECT APPEAL THAT MR. McCOY'S DISTRICT COURT COUNSEL WAS INEFFECTIVE

Finally, counsel considered but did not find any basis on the instant record to argue that Mr. McCoy was denied the effective assistance of counsel in the district court under *Strickland v. Washington*, 466 U.S. 668 (1984). The record does not provide any basis to argue that his counsel's performance was deficient or that any deficiency prejudiced the outcome of the proceeding against him as required by *Strickland*. Accordingly, the Court should reserve decision on this issue pending a future petition pursuant to 28 U.S.C. § 2255. *Pimin*.

The record showed that Mr. McCoy received counsel appointed under the Criminal Justice Act at his initial appearance (A 29). On April 11, 2019, the district court approved CJA counsel for Mr. McCoy (A 37-38). Subsequently, on October 31, 2019, the district court relieved Mr. McCoy's district court counsel and appointed substitute CJA counsel, Bruce Koffsky (A 62), Mr. Koffsky represented Mr. McCoy through sentencing until relieved by the district court, after sentencing (A 21).

After relieving Mr. Koffsky, the district court appointed new CJA counsel to represent Mr. McCoy in connection with his unsuccessful application for bail pending appeal (A 21). The lower court's order denying Mr. McCoy's bail application found that Mr. McCoy's counsel at the time of his plea and sentencing "did an extraordinarily capable job on behalf of his client, and that any claim of ineffective assistance of counsel is simply frivolous" (A 336). Counsel's review of the record failed to reveal any basis in the record to argue that the lower court's finding was erroneous.

Counsel specifically considered whether the instant record showed that Mr. McCoy was denied effective assistance of counsel because his attorney at sentencing did not ask the sentencing court to downwardly depart pursuant to U.S.S.G. § 5H1.3 based on Mr. McCoy's "mental and emotional condition". Courts have held that in cases in which § 5K2.13 barred a downward departure because the offense involved actual violence or a serious threat of violence, counsel's assistance at sentencing was not ineffective because he failed to advocate for a departure under U.S.S.G. § 5H1.3. See, *Premachandra v. United States*, 101 F.3d at 70.

Moreover, since district court counsel successfully argued for a variance and the sentencing judge indicated that "it didn't matter" (A 305), counsel has no basis on the record to argue that counsel's actions violated the *Strickland* standard.

Where, as here, the facts necessary for resolution of the claim do not appear in the district court record, this Court's "usual practice is not to consider the claim on the direct appeal, but to leave it to the defendant to raise the claims on a petition for habeas corpus under 28 U.S.C. § 2255." *United States v. Lloyd*, 901 F.3d at 125 <u>citing</u> *United States v. Oladimeji*, 463 F.3d at 154.

Based on a review of the record, counsel failed to find any facts which would support a claim of ineffective assistance of counsel and determined that such additional information, if any exists, would have to be added to the record through a petition pursuant to 28 U.S.C. § 2255 to allow the courts to properly adjudicate these issues.

## <u>CONCLUSION</u>

For the foregoing reasons, counsel's accompanying Motion to Be

Relieved should be granted.

Dated:      Garden City, New York
            March 8, 2022


                          Respectfully submitted,

                          s/ *Peter J. Tomao*
                          _____
                          PETER J. TOMAO, ESQ. (PT6409)
                          Attorney for Defendant-Appellant
                          Lorenzo McCoy
                          600 Old Country Road Suite 328
                          Garden City, New York 11530
                          (516) 877-7015

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney certifies that the foregoing brief complies with the requirements of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. The typeface used was 14 Point Century. According to the word processing system used to prepare this brief, the number of words in the brief is 10,773.

Dated:    Garden City, New York
            March 8, 2022

Respectfully submitted,

s/ *Peter J. Tomao*

_____
PETER J. TOMAO, ESQ. (PT6409)
Attorney for Defendant-Appellant
Lorenzo McCoy
600 Old Country Road Suite 328
Garden City, New York 11530
(516) 877-7015

SPECIAL APPENDIX

## **Table of Contents**

**Page**

Judgment of the United States District Court, Southern District
    of New York, entered August 20, 2021, Appealed From  ..............   SPA1

Order of the Honorable Vincent L. Briccetti,
    dated October 5, 2021  ...................................................................   SPA8

AO 245B (Rev. 09/19)   Judgment in a Criminal Case   (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT
## Southern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| LORENZO McCOY | ) | Case Number:  S2 19 CR 549-2 (VB) |
| | ) | USM Number:  86811-054 |
| | ) | |
| | ) | Bruce D. Koffsky, Esq. |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1, 2

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:2119 | Carjacking | 4/10/2019 | 1 |
| 18:371 | Conspiracy to Commit Carjacking | 4/10/2019 | 2 |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)    The Underlying Indictment        ☑ is    ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

8/19/2021
_____
Date of Imposition of Judgment

_____
Signature of Judge

Vincent L. Briccetti, U.S.D.J.
_____
Name and Title of Judge

8/19/2021
_____
Date

AO 245B (Rev. 09/19)  Judgment in Criminal Case
        Sheet 2 — Imprisonment

| | | |
|---|---|---|
| | Judgment — Page | 2 of 7 |

DEFENDANT:  LORENZO McCOY
CASE NUMBER:   S2 19 CR 549-2 (VB)

# IMPRISONMENT

       The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

6 Months.
This sentence is imposed on each of Counts One and Two, to run concurrently.

☑  The court makes the following recommendations to the Bureau of Prisons:

      That defendant be designated to FCI Otisville Satellite Camp.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m.  ☐ p.m.  on _____ .

    ☐  as notified by the United States Marshal.

☑  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☑  before 2 p.m. on    10/4/2021_____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

    Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

                                 _____
                                         UNITED STATES MARSHAL

                    By _____
                                    DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3 — Supervised Release

| | Judgment—Page | 3 | of | 7 |

DEFENDANT:  LORENZO McCOY
CASE NUMBER:  S2 19 CR 549-2 (VB)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 Years.
This sentence is imposed on each of Counts One and Two, to run concurrently.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
        ☐ The above drug testing condition is suspended, based on the court's determination that you
          pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
        restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as
        directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
        reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT: LORENZO McCOY
CASE NUMBER: S2 19 CR 549-2 (VB)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page __5__ of __7__

DEFENDANT: LORENZO McCOY
CASE NUMBER: S2 19 CR 549-2 (VB)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant must not have contact with the victim in this case. This includes any physical, visual, written, or telephonic contact with such person. Additionally, the defendant must not directly cause or encourage anyone else to have such contact with the victim.

2. The defendant must participate in an outpatient mental health treatment program approved by the United States Probation Office. The defendant must continue to take any prescribed medications unless otherwise instructed by the health care provider. The defendant must contribute to the cost of services rendered based on his ability to pay and the availability of third party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider.

3. The defendant must provide the probation officer with access to any requested financial information.

4. The defendant must not incur any new credit charges or open additional lines of credit without the approval of the probation officer unless he is in compliance with the installment payment schedule.

5. The defendant must submit his person, and any property, residence, vehicle, papers, effects, computer, other electronic communication or data storage devices, cloud storage or media, to a search by any United States Probation Officer, with the assistance of any law enforcement if needed. The search is to be conducted upon reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the defendant. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner.

6. The defendant shall be supervised by his district of residence.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

|  |  |  |
|---|---|---|
|  | Judgment — Page | 6 of 7 |

DEFENDANT: LORENZO McCOY
CASE NUMBER: S2 19 CR 549-2 (VB)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 200.00 | $ 2,300.00 | $ 0.00 | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Clerk, U.S. District Court, SDNY, 500 Pearl Street, New York, NY 10007, to be remitted to victim (see separate order regarding restitution to victim) | $2,300.00 | $2,300.00 | |

| TOTALS | $ 2,300.00 | $ 2,300.00 |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☑ the interest requirement is waived for the ☐ fine ☑ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 6 — Schedule of Payments

|  |  | Judgment — Page | 7 | of | 7 |

DEFENDANT:  LORENZO McCOY
CASE NUMBER:  S2 19 CR 549-2 (VB)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ 200.00 due immediately, balance due

       ☐ not later than _____ , or
       ☑ in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☑ F below; or

**B** ☐ Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
       _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
       _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
       term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
       imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:

       Restitution shall be paid in monthly installments of at least $50 over the period of supervision, to commence 30
       days after release from imprisonment.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☑ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| Jordan Taylor 19cr549-1 (VB) | 2,300.00 | 2,300.00 | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,                    :
                                             :
v.                                           :        **ORDER**
                                             :
LORENZO MCCOY,                               :        S2 19 CR 549-2 (VB)
                            Defendant.        :
-------------------------------------------------------x

      Defendant's motion for bail pending appeal is DENIED.

      Without reviewing the entire procedural history of this case, suffice to say that, at the

time of sentencing on defendant's guilty plea to carjacking and conspiracy to commit carjacking,

which involved the knifepoint beating and robbery of the victim in this case, the Court was

acutely aware of the extent of defendant's mental health and cognitive issues. Indeed, the

principal reason why the Court was so aware of these issues was the highly professional and

diligent manner in which prior defense counsel, Bruce D. Koffsky, Esq., investigated the relevant

facts of his client's mental health history and presented those facts to the Court. Among other

things, Mr. Koffsky obtained a psychological evaluation of his client in 2020. He later moved

for a hearing to determine his client's mental competency, pursuant to 18 U.S.C. § 4241, which

motion the Court granted. Defendant thereafter underwent a thorough forensic psychological

examination. A report of that examination was presented to the Court prior to defendant's guilty

plea, and re-presented to the Court at the time of sentencing. Mr. Koffsky presented voluminous

other relevant mitigating information at sentencing, including several other psychological

evaluations, including the report of the evaluation he obtained in 2020. Mr. Koffsky also made a

sentencing argument in favor of a noncustodial sentence. The Court carefully considered all of

Mr. Koffsky's submissions and arguments, and ultimately imposed a sentence of 6 months'

imprisonment, which represented a substantial downward variance from the applicable

Sentencing Guidelines range of 51-63 months' imprisonment.  For these and other reasons, the

Court finds that Mr. Koffsky did an extraordinarily capable job on behalf of his client, and that

any claim of ineffective assistance of counsel is simply frivolous.

In short, the likelihood of a reversal or remand based on a claim of ineffective assistance

of counsel is zero.  Put another way, defendant's appeal does not raise a "substantial question of

law or fact likely to result in . . . a sentence that does not include a term of imprisonment."  18

U.S.C. § 3143(b)(1)(B)(3).

Defendant shall surrender for the service of his sentence on October 18, 2021, at the

institution designated by the Bureau of Prisons.

Dated:  October 5, 2021
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

2