# 21-2098-CR

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



UNITED STATES OF AMERICA,

*Appellee,*

*v.*

JORDAN TAYLOR,

*Defendant,*

*and*

LORENZO MCCOY,

*Defendant-Appellant.*

———————————

*On Appeal from the United States District Court
for the Southern District of New York*

## APPENDIX
## VOLUME I OF II
## Pages A1 to A154

PETER J. TOMAO, ESQ.
*Attorney for Defendant-Appellant*
600 Old Country Road, Suite 328
Garden City, New York 11530
516-877-7015

# **Table of Contents**

**Page**

### **Volume I**

District Court Docket Entries ................................................................. A1

Complaint, sworn to April 11, 2019 ...................................................... A23

Transcript of Conference held before the
    Honorable Paul E. Davison on April 11, 2019 .............................. A28

Transcript of Conference held before the
    Honorable Paul E. Davison on August 28, 2019 .......................... A50

Transcript of Conference held before the
    Honorable Paul E. Davison on October 31, 2019 ......................... A59

Transcript of Conference held before the
    Honorable Vincent L. Briccetti on December 9, 2019 .................. A68

Transcript of Conference held before the
    Honorable Vincent L. Briccetti on January 22, 2020 ................... A76

Transcript of Conference held before the
    Honorable Vincent L. Briccetti on April 24, 2020 ....................... A84

Transcript of Conference held before the
    Honorable Vincent L. Briccetti on September 10, 2020 ............... A102

Transcript of Conference held before the
    Honorable Vincent L. Briccetti on October 23, 2020 ................... A113

Transcript of Conference held before the
    Honorable Vincent L. Briccetti on November 13, 2020 ............... A126

### **Volume II**

Transcript of Conference held before the
    Honorable Vincent L. Briccetti on February 24, 2021 ................. A155

## Table of Contents
### (Continued)

**Page**

Order of the Honorable Vincent L. Briccetti,
dated February 25, 2021 .................................................................. A213

Letter from Nicholas S. Bradley to Bruce Koffsky,
dated March 23, 2021 .................................................................. A214

Superseding Information, filed March 25, 2021 .................................. A218

Transcript of Plea held before the
Honorable Vincent L. Briccetti on March 25, 2021 ...................... A223

Transcript of Proceedings held before the
Honorable Vincent L. Briccetti on August 19, 2021 .................... A273

Order of Restitution of the Honorable Vincent L. Briccetti,
dated August 19, 2021 .................................................................. A321

Judgment of the United States District Court, Southern District
of New York, entered August 20, 2021, Appealed From .............. A324

Notice of Appeal, filed August 26, 2021,
with Cover Letter and Envelope .................................................. A331

Order of the Honorable Vincent L. Briccetti,
dated October 5, 2021 .................................................................. A335

SDNY CM/ECF NextGen Version 1.6

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

CLOSED,APPEAL,ECF,PRIOR

# U.S. District Court
## Southern District of New York (White Plains)
## CRIMINAL DOCKET FOR CASE #: 7:19-cr-00549-VB All Defendants

| | |
|---|---|
| Case title: USA v. Taylor | Date Filed: 07/30/2019 |
| Magistrate judge case numbers: 7:19-mj-03606-UA<br>7:19-mj-03606-UA | Date Terminated: 08/20/2021 |

Assigned to: Judge Vincent L. Briccetti

**Defendant (1)**

**Jordan Taylor**
*TERMINATED: 12/14/2020*

represented by **Jason Immanuel Ser**
Federal Defenders of New York Inc. (NYC)
52 Duane Street
10th Floor
New York, NY 10007
417-8700
Fax: (212)-571-0392
Email: jason_ser@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:2119.F MOTOR VEHICLE THEFT - CARJACKING<br>(1s) | IMPRISONMENT: Time served.<br>SUPERVISED RELEASE: Three years. |
| 18:371.F CONSPIRACY TO DEFRAUD THE UNITED STATES<br>(2s) | IMPRISONMENT: Time served.<br>SUPERVISED RELEASE: Three years. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:2119.F MOTOR VEHICLE THEFT - CARJACKING<br>(1) | Dismissed |
| 18:371.F CONSPIRACY TO DEFRAUD THE UNITED STATES<br>(2) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                        **Disposition**

18:371.F

---

Assigned to: Judge Vincent L. Briccetti

**Defendant (2)**

**Lorenzo McCoy**                      represented by  **Bruce D. Koffsky**
*TERMINATED: 08/20/2021*                            Koffsky & Felsen, LLC
                                                    1150 Bedford Street
                                                    Stamford, CT 06905
                                                    (203) 327-1500
                                                    Fax: (203) 327-7660
                                                    Email: bkoffsky@snet.net
                                                    *TERMINATED: 09/20/2021*
                                                    *LEAD ATTORNEY*
                                                    *Designation: CJA Appointment*

                                                    **Kerry Andrew Lawrence**
                                                    Law Office of Kerry A. Lawrence, PLLC
                                                    140 Grand Street
                                                    Suite 705
                                                    White Plains, NY 10601
                                                    914-946-5900
                                                    Email: kerry@kerrylawrencelaw.com
                                                    *TERMINATED: 10/31/2019*
                                                    *LEAD ATTORNEY*
                                                    *Designation: CJA Appointment*

                                                    **Michael Kennedy Burke**
                                                    Hodges Walsh & Burke LLP
                                                    55 Church Street, Suite 211
                                                    White Plains, NY 10601
                                                    (914) 385-6000
                                                    Fax: (914) 385-6060
                                                    Email: mburke@hwb-lawfirm.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Designation: CJA Appointment*

                                                    **Rebecca Rader Brown**
                                                    Calhoun & Lawrence, LLP
                                                    Suite 504
                                                    81 Main Street
                                                    Suite 504
                                                    White Plains, NY 10601
                                                    914-946-5900
                                                    Fax: 914-946-5906

**A3**

Email: rbrown@calhounlawrence.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:2119.F MOTOR VEHICLE THEFT - CARJACKING (1s) | Imprisonment for a total term of 6 Months. This sentence is imposed on each of Counts One and Two, to run concurrently. Supervised release for a term of 3 Years. This sentence is imposed on each of Counts One and Two, to run concurrently. |
| 18:371.F CONSPIRACY TO DEFRAUD THE UNITED STATES (2s) | Imprisonment for a total term of 6 Months. This sentence is imposed on each of Counts One and Two, to run concurrently. Supervised release for a term of 3 Years. This sentence is imposed on each of Counts One and Two, to run concurrently. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:2119.F MOTOR VEHICLE THEFT - CARJACKING (1) | Dismissed |
| 18:371.F CONSPIRACY TO DEFRAUD THE UNITED STATES (2) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| 18:371.F | |

---

**Plaintiff**

| **USA** | represented by | **Mathew Andrews** |
| --- | --- | --- |
| | | DOJ-USAO |
| | | 300 Quarropas Street |
| | | White Plains, NY 10601 |
| | | 914-993-1920 |
| | | Email: mathew.andrews@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Nicholas Sutherland Bradley** |

DOJ-USAO
One Saint Andrews Plaza
New York, NY 10007
212-637-1581
Email: nicholas.bradley2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lindsey Keenan**
DOJ-USAO
1 St. Andrew's Plaza
New York, NY 10007
212-637-2634
Email: lindsey.keenan@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/11/2019 | 1 | COMPLAINT as to Jordan Taylor (1), Lorenzo McCoy (2). (Signed by Magistrate Judge Paul E. Davison) (ap) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | | Arrest of Jordan Taylor. (ap) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | 2 | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Initial Appearance as to Jordan Taylor held on 4/11/2019. Appearances entered by AUSA Mathew Andrews for the Government, Attorney Jason Ser on behalf of the defendant. BAIL DISPOSITION: Agreed conditions of release; $25K PRB; 1 FRP; Travel restricted to SDNY/EDNY; Pretrial supervision as directed by pretrial services; Drug testing/treatmt as directed by PTS; Mental health eval/treatmt as directed by PTS; Curfew; Electronic monitoring; Def. to continue or seek employment or Def. to continue to start education program. Defendant shall reside with father. Father to sign bond. Curfew 8pm to 6am. No contact w/victims. Preliminary hearing 5/8/19 on defendant's consent. (Court Reporter Courtflow) (ap) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | 4 | CJA 23 Financial Affidavit by Jordan Taylor. (Signed by Magistrate Judge Paul E. Davison) (ap) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | 6 | Personal Recognizance Bond Entered as to Jordan Taylor in amount of $25,000.00. Additional Conditions: The defendant shall enroll in vocation training/school/employment. Curfew with location monitoring from 8:00pm-6:00am The defendant's father is to cosign bond. The defendant is to reside with father at 17-01 Crompound RD Peekskill, NY. The def is not to possess a weapon or destructive device. The defendant has 1 week to satisfy conditions. The defendant is to have no contact with victim. The defendant can be released on signature. (ap) (See BOND set forth) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | 1 | COMPLAINT as to Jordan Taylor (1), Lorenzo McCoy (2). (Signed by Magistrate Judge Paul E. Davison) (ap) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | | Arrest of Lorenzo McCoy. (ap) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | 3 | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Initial Appearance as to Lorenzo McCoy held on 4/11/2019. Appearances entered by AUSA Mathew Andrews for the Government, Attorney Kerry Lawrence on behalf of the defendant. BAIL DISPOSITION: Agreed conditions of release; $25K PRB; 1 FRP; Travel restricted to SDNY/EDNY; Pretrial supervision as directed by Pretrial Services; |

| | | |
|---|---|---|
| | | Drug testing/treatmt as directed by PTS; Mental health eval/treatmt as directed by PTS; Curfew; Electronic monitoring; Def. to continue or seek employment or Def. to continue or start education program; Def. not to possess firearm/destructive device/other weapon; Remaining conditions to be met by: 1 week. Curfew 8pm to 6am. No contact w/victims. Pretrial hearing 5/8/19 on Defendant's consent. (Court Reporter Courtflow) (ap) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | 5 | CJA 23 Financial Affidavit by Lorenzo McCoy. (Signed by Magistrate Judge Paul E. Davison) (ap) [7:19-mj-03606-UA] (Entered: 04/15/2019) |
| 04/11/2019 | 7 | Personal Recognizance Bond Entered as to Lorenzo McCoy in amount of $25,000.00. The defendant shall enroll in vocation training/school/employment. Curfew with location monitoring from 8:00pm-6:00am. No weapons possession. The defendant's father to cosign the bond. The defendant is to have no contact with the victim. The defendant can be released on his signature. All other conditions to be satisfied by 4/18/2019 (ap) (See BOND set forth)[7:19-mj-03606-UA] Modified on 11/5/2019 (ap). (Entered: 04/15/2019) |
| 04/18/2019 | 8 | ENDORSED LETTER as to Jordan Taylor addressed to Magistrate Judge Lisa M. Smith from Jason Ser, dated 4/18/2019, re: Defense counsel writes to request that the Court modify the conditions of release imposed in this case at the arraignment hearing on April 11, 2019 for the reasons set forth in this letter. ENDORSEMENT: SO ORDERED. (Signed by Magistrate Judge Lisa Margaret Smith on 4/18/2019) (lnl) [7:19-mj-03606-UA] (Entered: 04/18/2019) |
| 05/08/2019 | 9 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Jordan Taylor. Time excluded from 5/8/2019 until 6/5/2019. (Signed by Magistrate Judge Lisa Margaret Smith on 5/8/2019) (lnl) [7:19-mj-03606-UA] (Entered: 05/09/2019) |
| 05/08/2019 | 10 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Lorenzo McCoy. Time excluded from 5/8/2019 until 6/5/2019. (Signed by Magistrate Judge Lisa Margaret Smith on 5/8/2019) (lnl) [7:19-mj-03606-UA] (Entered: 05/09/2019) |
| 06/04/2019 | 13 | 2ND ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Jordan Taylor. Time excluded from 6/4/2019 until 7/3/2019. (Signed by Magistrate Judge Paul E. Davison on 6/4/2019) (ap) [7:19-mj-03606-UA] (Entered: 06/04/2019) |
| 06/04/2019 | 14 | AFFIRMATION of Mathew Andrews in Support by USA as to Jordan Taylor re: 13 Order to Continue - Interest of Justice. (ap) [7:19-mj-03606-UA] (Entered: 06/04/2019) |
| 06/04/2019 | 11 | 2ND ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Lorenzo McCoy. Time excluded from 6/4/2019 until 7/3/2019. (Signed by Magistrate Judge Paul E. Davison on 6/4/2019) (ap) [7:19-mj-03606-UA] (Entered: 06/04/2019) |
| 06/04/2019 | 12 | AFFIRMATION of Mathew Andrews in Support by USA as to Lorenzo McCoy re: 11 Order to Continue - Interest of Justice. (ap) [7:19-mj-03606-UA] (Entered: 06/04/2019) |
| 06/26/2019 | 15 | ENDORSED LETTER as to Lorenzo McCoy addressed to Magistrate Judge Paul E. Davison from Kerry A. Lawrence dated 6/24/2019 re: Defense counsel writes to request that the Court appoint Rebecca Brown as associate counsel nun pro tunc from 6/3/2019. ENDORSEMENT: SO ORDERED. Added attorney Rebecca Rader Brown for Lorenzo McCoy. (Signed by Magistrate Judge Paul E. Davison on 6/26/2019) (ap) [7:19-mj-03606-UA] (Entered: 06/26/2019) |
| 07/03/2019 | 18 | 3rd ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Jordan Taylor. Time excluded from 7/3/2019 until 7/31/2019. (Signed by Magistrate Judge Lisa Margaret Smith on 7/3/2019) (lnl) [7:19-mj-03606-UA] (Entered: 07/03/2019) |
| 07/03/2019 | 19 | AFFIRMATION of Mathew Andrews in Support by USA as to Jordan Taylor re: 18 3rd Order to Continue - Interest of Justice. (lnl) [7:19-mj-03606-UA] (Entered: 07/03/2019) |

**A6**

| 07/03/2019 | 16 | 3rd ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Lorenzo McCoy. Time excluded from 7/3/2019 until 7/31/2019. (Signed by Magistrate Judge Lisa Margaret Smith on 7/3/2019) (lnl) [7:19-mj-03606-UA] (Entered: 07/03/2019) |
| 07/03/2019 | 17 | AFFIRMATION of Mathew Andrews in Support by USA as to Lorenzo McCoy re: 16 3rd Order to Continue - Interest of Justice. (lnl) [7:19-mj-03606-UA] (Entered: 07/03/2019) |
| 07/15/2019 | 20 | LETTER MOTION addressed to Magistrate Judge Paul E. Davison from Kerry A. Lawrence dated July 15, 2019 re: extension of curfew . Document filed by Lorenzo McCoy. (Lawrence, Kerry) [7:19-mj-03606-UA] (Entered: 07/15/2019) |
| 07/22/2019 | 21 | MEMO ENDORSEMENT granting 20 LETTER MOTION Requesting that Mr. McCoy's curfew be extended until 2am on August 3, 2019...ENDORSEMENT...Application Granted. SO ORDERED. (Signed by Magistrate Judge Paul E. Davison on 7/22/19) (jw) [7:19-mj-03606-UA] (Entered: 07/22/2019) |
| 07/30/2019 | 1 | SEALED DOCUMENT placed in vault. (ap) (Entered: 07/31/2019) |
| 07/30/2019 | 20 | INDICTMENT FILED as to Jordan Taylor (1) count(s) 1,2. (ap) (Previously filed under seal on 7/30/2019) Modified on 8/6/2019 (ap). (Entered: 08/06/2019) |
| 07/31/2019 | 22 | 4TH ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Lorenzo McCoy. Time excluded from 7/31/2019 until 8/28/2019. (Signed by Magistrate Judge Judith C. McCarthy on 7/31/2019) (lnl) [7:19-mj-03606-UA] (Entered: 07/31/2019) |
| 07/31/2019 | 23 | AFFIRMATION of Mathew Andrews in Support by USA as to Lorenzo McCoy re: 22 4th Order to Continue - Interest of Justice. (lnl) [7:19-mj-03606-UA] (Entered: 07/31/2019) |
| 08/05/2019 | 21 | Order to Unseal Case as to Jordan Taylor. (Signed by Magistrate Judge Paul E. Davison on 8/5/2019) (ap) (Entered: 08/06/2019) |
| 08/05/2019 | | INDICTMENT UNSEALED as to Jordan Taylor. (ap) (Entered: 08/06/2019) |
| 08/05/2019 | | Case Designated ECF as to Jordan Taylor. (ap) (Entered: 08/06/2019) |
| 08/05/2019 | 0 | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Arraignment as to Jordan Taylor (1) Count 1,2 held on 8/5/2019. The defendant was arraigned on the indictment, waives public reading, and enters a not guilty plea. The matter has been assigned to Judge Briccetti. Time is excluded to 8/19/2019. VOSR: The defendant's bail is revoked as per the 7/3/2019 memorandum by Pretrial Services. (Court Reporter Courtflow) (ap) Modified on 8/6/2019 (ap). Modified on 8/6/2019 (ap). Modified on 8/6/2019 (ap). Modified on 8/6/2019 (ap). (Entered: 08/06/2019) |
| 08/05/2019 | | Case as to Jordan Taylor REASSIGNED to Judge Vincent L. Briccetti. Judge Unassigned no longer assigned to the case. (ap) (Entered: 08/06/2019) |
| 08/05/2019 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Pretrial Conference as to Jordan Taylor held on 8/5/2019. Dft & Attorney Jason Ser pres. AUSA Mathew Andrews pres Ptc held. A further conference is scheduled for 10-3-19 at 10:30 a.m. For the reasons stated on the record, the Court excludes time under the Speedy Trial Act from today through 10-3-19. Dft is remanded. (Pretrial Conference set for 10/3/2019 at 10:30 AM before Judge Vincent L. Briccetti) (Court Reporter Angeie Shaw-Crockett) (ap) (Entered: 08/06/2019) |
| 08/20/2019 | 24 | ORDER as to Lorenzo McCoy: Please inform all parties concerned that Judge Paul E. Davison will conduct a Bail Review Hearing on 8/28/2019 at 2:00 PM. (Bail Hearing set for 8/28/2019 at 02:00 PM before Magistrate Judge Paul E. Davison) (Signed by |

|  |  | Magistrate Judge Lisa Margaret Smith on 8/20/2019) (ap) [7:19-mj-03606-UA] (Entered: 08/20/2019) |
|---|---|---|
| 08/28/2019 | 27 | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Bail Hearing as to Lorenzo McCoy held on 8/28/2019. Appearances entered by AUSA Mathew Andrews. Defense Counsel Kerry Lawrence present with the Defendant. Defendant released on conditions previously set on consent of all parties. (Court Reporter Courtflow) (lnl) (lnl). [7:19-mj-03606-UA] (Entered: 08/28/2019) |
| 08/28/2019 | 25 | 5TH ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Lorenzo McCoy. Time excluded from 8/28/2019 until 9/25/2019. (Signed by Magistrate Judge Paul E. Davison on 8/28/2019) (ap) [7:19-mj-03606-UA] (Entered: 08/28/2019) |
| 08/28/2019 | 26 | AFFIRMATION of Mathew Andrews in Support by USA as to Lorenzo McCoy re: 25 Order to Continue - Interest of Justice. (ap) [7:19-mj-03606-UA] (Entered: 08/28/2019) |
| 09/25/2019 | 28 | 6TH ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Lorenzo McCoy. Time excluded from 9/25/2019 until 10/23/2019. (Signed by Magistrate Judge Paul E. Davison on 9/25/2019) (lnl) [7:19-mj-03606-UA] (Entered: 09/25/2019) |
| 09/25/2019 | 29 | AFFIRMATION of Mathew Andrews in Support by USA as to Lorenzo McCoy re: 28 6th Order to Continue - Interest of Justice. (lnl) [7:19-mj-03606-UA] (Entered: 09/25/2019) |
| 10/02/2019 | 22 | SEALED DOCUMENT placed in vault. (ap) (Entered: 10/03/2019) |
| 10/23/2019 |  | Minute Entry for proceedings held before Judge Fern M. Smith: Status Conference as to Lorenzo McCoy held on 10/23/2019. AUSA Mathew Andrews appearing by telephone for the Government. Kerry A. Lawrence (CJA) appearing by telephone for Defendant Lorenzo McCoy. Defendant was not present for this hearing. Court reporter: Courtflow. Due to technical difficulties, and a time constraint presented by Mr. Lawrence's travel plans, this hearing began before Courtflow was able to record. The Courtflow recording begins approximately 30 seconds into the proceeding. Due to Mr. Lawrence's reasonable expectation that Defendant planned to sign the 7th Order of Continuance based on assurances from Defendant, the change of Defendant's position to not sign the 7th Order of Continuance, and Mr. Lawrence's absence from the District, there exists sufficient extraordinary circumstances to allow postponement of the date by which an indictment must be filed or a preliminary hearing must occur. This matter is postponed until Tuesday, October 29, 2019, at 2:00 PM, for a status conference before Judge Lisa Margaret Smith. (jbo) [7:19-mj-03606-UA] (Entered: 10/28/2019) |
| 10/23/2019 |  | Set/Reset Hearings as to Lorenzo McCoy: Status Conference set for 10/29/2019 at 02:00 PM before Judge Unassigned. (jbo) [7:19-mj-03606-UA] (Entered: 10/28/2019) |
| 10/29/2019 | 30 | (1) SUPERSEDING INDICTMENT FILED as to Jordan Taylor (1) count(s) 1s,2s, Lorenzo McCoy (2) count(s) 1,2. (ap) (Entered: 10/30/2019) |
| 10/30/2019 | 32 | LETTER by Lorenzo McCoy addressed to Magistrate Judge Paul E. Davison from Lorenzo McCoy, dated 10/30/2019, re: appointment of new counsel. (lnl) (Entered: 10/31/2019) |
| 10/30/2019 | 33 | APPLICATION FOR THE COURT TO REQUEST PRO BONO COUNSEL. Document filed by Lorenzo McCoy. (lnl) (Entered: 10/31/2019) |
| 10/31/2019 | 31 | NOTICE OF ATTORNEY APPEARANCE Mathew Andrews appearing for USA. (Andrews, Mathew) (Entered: 10/31/2019) |
| 10/31/2019 |  | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Arraignment as to Jordan Taylor (1) Count 1s,2s and Lorenzo McCoy (2) Count 1,2 held |

| | | |
|---|---|---|
| | | on 10/31/2019. Defendant Jordan Taylor present with Attorney: Jason Ser. AUSA: Mat Andrews. The defendant was arraigned on the superseding indictment, waives public reading, and enters a not guilty plea. The matter is previously assigned to Judge Briccetti. The defendant is remanded. Defendant Lorenzo McCoy present with Attorney: Kerry Lawrence. AUSA: Mat Andrews. The Government relieves Kerry Lawrence as counsel, and appoints Bruce Koffsky to represent Lorenzo McCoy. The defendant was arraigned on the superseding indictment, waives public reading, and enters a not guilty plea. The matter is previously assigned to Judge Briccetti. The defendant's bail is continued. Bail hearing scheduled on 11/5/2019 at 12:00pm before Judge Davison. (Court Reporter Courtflow) (ap) (Entered: 10/31/2019) |
| 10/31/2019 | | Set/Reset Hearings as to Lorenzo McCoy:Bail Hearing set for 11/5/2019 at 12:00 PM before Judge Vincent L. Briccetti. (ap) (Entered: 10/31/2019) |
| 10/31/2019 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: **Plea entered by Jordan Taylor (1) Count 1s,2s Not Guilty.** (Court Reporter Courtflow) (ap) (Entered: 10/31/2019) |
| 10/31/2019 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: **Plea entered by Lorenzo McCoy (2) Count 1,2 Not Guilty.** (ap) (Entered: 10/31/2019) |
| 10/31/2019 | 34 | ORDER as to Jordan Taylor, Lorenzo McCoy. Upon the application of the United States of America, by and through Geoffrey S. Berman, United States Attorney, Mathew Andrews, of counsel, and with the consent of the defendants, by and through their respective counsel, it is hereby ORDERED that the time between the date of this order and 12/9/19, is excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h) (7) (A), in the interests of justice. The court finds that the ends of justice served by granting the exclusion outweigh the best interests of the public and the defendant in a speedy trial, because it will permit the parties to continue ongoing discussions about an alternative disposition and to determine which, if any, pretrial motions to make. (Signed by Judge Vincent L. Briccetti on 10/31/19)(jbo) (Entered: 10/31/2019) |
| 11/05/2019 | 35 | MODIFICATION OF BAIL (DEFENDANT'S APPEARANCE BOND) Entered as to Lorenzo McCoy. (ap) (Entered: 11/05/2019) |
| 12/08/2019 | 36 | LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D. Koffsky dated December 7, 2019 re: Request to Excuse Counsel's Appearance at Scheduled Status Conference and to Permit Stand-in Counsel to Appear on behalf of the Defendant. Document filed by Lorenzo McCoy. (Koffsky, Bruce) Modified on 12/9/2019 (ka). (Entered: 12/08/2019) |
| 12/09/2019 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Pretrial Conference as to Jordan Taylor, Lorenzo McCoy held on 12/9/2019. Dft Taylor & Atty Jason Ser pres. Dft McCoy & Atty Jason Ser covering for Bruce Koffsky. AUSA Mathew Andrews pres. PTC held. A further conference is scheduled for 1-22-20 at 11:00 a.m. Court excludes time under the Speedy Trial Act from today through 1-22-20. Bail continued as previously set. (Pretrial Conference set for 1/22/2020 at 11:00 AM before Judge Vincent L. Briccetti) (Court Reporter Christina Arends_Dieck) (lnl) (Entered: 12/09/2019) |
| 12/09/2019 | 37 | MEMO ENDORSEMENT as to Lorenzo McCoy (2) granting 36 LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D. Koffsky dated December 7, 2019 re: Request to Excuse Counsel's Appearance at Scheduled Status Conference and to Permit Stand-in Counsel to Appear on behalf of the Defendant. ENDORSEMENT: APPLICATION GRANTED. (Signed by Judge Vincent L. Briccetti on 12/9/2019) (ap) (Entered: 12/09/2019) |
| 01/22/2020 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Pretrial Conference |

| | | |
|---|---|---|
| | | as to Jordan Taylor, Lorenzo McCoy held on 1/22/2020. Dft Taylor & Atty Jason Ser pres. Dft McCoy & Atty Bruce Koffsky pres. AUSA Mathew Andrews pres. PTC held. A further conference is scheduled for 4-24-20 at 2:30 p.m. For the reasons stated on the record, the Court excludes time under the Speedy Trial Act from today through 4-24-20. Bail continued as previously set. (Pretrial Conference set for 4/24/2020 at 02:30 PM before Judge Vincent L. Briccetti) (lnl) (Entered: 01/22/2020) |
| 04/16/2020 | | ORDER: The Court will conduct by telephone the 4/24/2020 pretrial conference. At the time of the scheduled conference, counsel shall use the following information to connect by telephone: **Dial-In Number: (888) 363-4749 (toll free) or (215) 446-3662; Access Code: 1703567**. (vjm) (Entered: 04/16/2020) |
| 04/23/2020 | 38 | CALENDAR NOTICE as to Lorenzo McCoy. PLEASE TAKE NOTICE that the above-captioned case has been scheduled/re-scheduled for: Telephone conference (Bail Hearing) on 4-27-20 at 10:00 a.m. by Calling 1-888-363-4749, Use Access Code 1703567. All requests for adjournments or extensions of time must be in writing and filed on ECF as letter-motions, in accordance with paragraph 1 (F) of the Court's Individual Practices. Absent special circumstances, such requests shall be made at least two business days prior to the scheduled appearance. (Telephonic Bail Hearing set for 4/27/2020 at 10:00 AM before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 4/23/2020) (ap) (Entered: 04/23/2020) |
| 04/24/2020 | 39 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT** - NOTICE of Consent to Proceed by Teleconference as to Jordan Taylor (Ser, Jason) Modified on 4/24/2020 (ka). (Entered: 04/24/2020) |
| 04/24/2020 | 40 | NOTICE of Consent to Proceed by Video or Teleconference as to Lorenzo McCoy (Koffsky, Bruce) (Entered: 04/24/2020) |
| 04/24/2020 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Ser, Jason as to Jordan Taylor: to E-MAIL Dcument Document No. 39 Consent Order. This document is not filed via ECF. (ka)** (Entered: 04/24/2020) |
| 04/24/2020 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti:Telephone Conference as to Jordan Taylor, Lorenzo McCoy held on 4/24/2020. Court Reporter Sue Ghorayeb. Dft Taylor not present Atty Jason Ser present, Dft McCoy & Atty Bruce Koffsky present, AUSA Mathew Andrews present. Pic held. A further conference is scheduled for 7/29/20 at 11:00 am. For the reasons stated on the record the court excludes time from today through and including July 29 bail continued as previously set ( Telephone Conference set for 7/29/2020 at 11:00 AM before Judge Vincent L. Briccetti) (jw) (Entered: 04/24/2020) |
| 04/24/2020 | 41 | CONSENT TO PROCEED BY VIDEO OR TELEPHONE CONFERENCE as to Lorenzo McCoy. ENDORSEMENT: The proceeding was conducted by reliable telephone conferencing technology. (Signed by Judge Vincent L. Briccetti on 4/24/2020) (lnl) (Entered: 04/24/2020) |
| 04/27/2020 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Bail Hearing as to Lorenzo McCoy held on 4/27/2020. Dft McCoy & Atty Bruce Koffsky present, AUSA Mathew Andrews present. Bail Review hearing held. Bail continued as previously set. (Court Reporter Christina Arends-Dieck) (ap) (Entered: 04/27/2020) |
| 04/27/2020 | 42 | CONSENT TO PROCEED BY VIDEO OR TELECONFERENCE as to Lorenzo McCoy. (Signed by Judge Vincent L. Briccetti on 4/27/2020) (lnl) (Entered: 04/27/2020) |
| 07/16/2020 | 43 | LETTER by Jordan Taylor as to Jordan Taylor, Lorenzo McCoy addressed to Judge Vincent L. Briccetti from Jason Ser dated July 16, 2020 re: Two Week Adjournment of |

| | | Status Conference Document filed by Jordan Taylor. (Ser, Jason) (Entered: 07/16/2020) |
|---|---|---|
| 07/17/2020 | 44 | MEMO ENDORSEMENT as to Jordan Taylor, Lorenzo McCoy on re: 43 LETTER by Jordan Taylor as to Jordan Taylor, Lorenzo McCoy addressed to Judge Vincent L. Briccetti from Jason Ser dated July 16, 2020 re: Two Week Adjournment of Status Conference. ENDORSEMENT: APPLICATION GRANTED. Conference adjourned to 8/25/20 at 11:00 a.m. Time excluded in the interest of justice under Speedy Trial Act through 8/25/20 for the reasons set forth in this letter. (Status Conference set for 8/25/2020 at 11:00 AM before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 7/17/2020) (ap) (Entered: 07/17/2020) |
| 07/22/2020 | 45 | ORDER as to Jordan Taylor, Lorenzo McCoy: The Court expects to conduct the status conference scheduled for August 25, 2020, at 11 :00 a.m., in person in the Courthouse. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The questionnaire is located on the Court's website at: https://www.nysd.uscomis.gov/sites/default/files/2020-07 /SDNY%20Screening%20Instructions.pdf. Completing the questionnaire online and ahead of time will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted ent1y. Please contact Chambers if you do not meet the requirements. SO ORDERED. (Status Conference set for 8/25/2020 at 11:00 AM before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 7/22/2020) (lnl) (Entered: 07/22/2020) |
| 08/07/2020 | 46 | ORDER as to Jordan Taylor, Lorenzo McCoy: By Order dated July 22, 2020, the Court stated it expected to conduct in person the status conference scheduled for August 25, 2020, at 11:00 a.m. (Doc. #45). However, the conference will proceed by telephone conference call, provided that defendants, after consultation with counsel, waive their right to be physically present and consent to appear telephone. Accordingly, it is hereby ORDERED: 1. By August 18, 2020, defense counsel shall advise the Court in writing as to whether their clients waive their right to be physically present and consent to appear by telephone. 2. At the time of the scheduled conference, all counsel and defendants shall attend by calling the following number and entering the access code when requested: Dial-In Number: (888) 363-4749 (toll free) or (215) 446-3662, Access Code: 1703567. (Signed by Judge Vincent L. Briccetti on 8/7/2020) (ap) Modified on 8/10/2020 (ap). (Entered: 08/07/2020) |
| 08/10/2020 | 47 | NOTICE of Consent to Proceed by Video or Teleconference as to Lorenzo McCoy (Koffsky, Bruce) (Entered: 08/10/2020) |
| 08/11/2020 | 48 | LETTER by Jordan Taylor addressed to Judge Vincent L. Briccetti from Jason Ser dated August 11, 2020 re: Consent to Telephonic Appearance (Ser, Jason) (Entered: 08/11/2020) |
| 08/21/2020 | 49 | LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D. Koffsky dated August 21, 2020 re: Continuance of Status Conference . Document filed by Lorenzo McCoy. (Koffsky, Bruce) (Entered: 08/21/2020) |
| 08/24/2020 | 50 | AMENDED LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D. Koffsky dated August 24, 2020 re: Continuance of Status Conference . Document filed by Lorenzo McCoy. (Koffsky, Bruce) (Entered: 08/24/2020) |
| 08/24/2020 | 51 | ORDER as to Jordan Taylor, Lorenzo McCoy: The August 25, 2020, status conference in this matter is now rescheduled for September 10, 2020, at 11:00 a.m. Because of the current public health emergency, the Court will conduct the conference by telephone conference call, provided that defendants, after confrontation with counsel, waive their right to be physically present and consent to appear by telephone. Accordingly, it is |

|  |  | hereby ORDERED: 1. By September 4, 2020, defense counsel shall advise the Court in writing as to whether their clients waive their right to be physically present and consent to appear by telephone. 2. At the time of the scheduled conference, all counsel and defendants shall attend by calling the following number and entering the access code when requested Dial-In Number: (888) 363-4749 (toll free) or (215) 446-3662, Access Code: 1703567. (Status Conference set for 9/10/2020 at 11:00 AM before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 8/24/2020) (ap) Modified on 8/25/2020 (ap). (Entered: 08/24/2020) |
|---|---|---|
| 08/24/2020 | 52 | MEMO ENDORSEMENT as to Lorenzo McCoy (2) on 49 LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D. Koffsky dated August 21, 2020 re: Continuance of Status Conference; granting 50 AMENDED LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D. Koffsky dated August 24, 2020 re: Continuance of Status Conference. ENDORSEMENT: By separate order, the conference has been adjourned from 8/25/20 to 9/10/20 at 11:00 a.m., to be conducted by telephone conference. Time is excluded under the Speedy Trial Act until 9/10/20 in the interest of justice because of the unavailability of counsel. (Signed by Judge Vincent L. Briccetti on 8/24/2020) (ap) (Entered: 08/24/2020) |
| 09/02/2020 | 53 | LETTER by Jordan Taylor addressed to Judge Vincent L. Briccetti from Jason Ser dated Sept 2, 2020 re: Consent to Telephonic Appearance (Ser, Jason) (Entered: 09/02/2020) |
| 09/08/2020 | 54 | NOTICE of Consent to Proceed by Video or Teleconference as to Lorenzo McCoy (Koffsky, Bruce) (Entered: 09/08/2020) |
| 09/08/2020 | 55 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 09/09/2020) |
| 09/09/2020 | 56 | LETTER by Jordan Taylor addressed to Judge Vincent L. Briccetti from Jason Ser dated Sept. 9, 2020 re: Letter Seeking CARES Act Finding (Ser, Jason) (Entered: 09/09/2020) |
| 09/09/2020 | 57 | LETTER by Jordan Taylor addressed to Judge Vincent L. Briccetti from Jason Ser dated Sept. 9, 2020 re: Consent to Telephonic Appearance (Ser, Jason) (Entered: 09/09/2020) |
| 09/09/2020 | 58 | MEMO ENDORSEMENT as to Jordan Taylor on re: 56 LETTER by Jordan Taylor addressed to Judge Vincent L. Briccetti from Jason Ser dated Sept. 9, 2020 re: Letter Seeking CARES Act Finding. ENDORSEMENT: The change of plea hearing will proceed by telephone conference on 9/10/2020, at 11:00 a.m., at which time the Court expects to make the required CARES Act findings. So Ordered. (Change of Plea Hearing set for 9/10/2020 at 11:00 AM before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 9/9/2020) (ap) (Entered: 09/09/2020) |
| 09/09/2020 | 59 | ORDER as to Jordan Taylor, Lorenzo McCoy: The 9/10/2020 telephone conference will proceed at 9:00 a.m., not 11:00 a.m. (Signed by Judge Vincent L. Briccetti)(vjm) (Entered: 09/09/2020) |
| 09/10/2020 | 60 | CONSENT TO PROCEED BY VIDEO OR TELE CONFERENCE by Jordan Taylor. This proceeding was conducted by reliable video or telephone conferencing technology. (Signed by Judge Vincent L. Briccetti on 9/10/2020) (bw) (Entered: 09/10/2020) |
| 09/10/2020 | 61 | ORDER as to Jordan Taylor. Sentencing in this case is scheduled for December 14, 2020, at 11:00 a.m. The Court expects to conduct this proceeding in person in the Courthouse. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The questionnaire is located on the Court's website at: https://www.nysd.uscourts.gov/sites/default/files/2020-07/SDNY%20Screening%20Instructions.pdf. Completing the questionnaire online and ahead oftime will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Please contact Chambers if you |

| | | |
|---|---|---|
| | | do not meet the requirements. Defendant's sentencing submission is due December 4, 2020, and the government's submission is due December 9, 2020. SO ORDERED: (Signed by Judge Vincent L. Briccetti on 9/10/2020)(bw) (Entered: 09/10/2020) |
| 09/10/2020 | 62 | MEMO ENDORSEMENT as to Lorenzo McCoy on re: 54 NOTICE of Consent to Proceed by Video or Teleconference filed by Lorenzo McCoy. ENDORSEMENT: SO ORDERED. (Signed by Judge Vincent L. Briccetti on 9/10/2020)(bw) (Entered: 09/10/2020) |
| 09/10/2020 | 63 | ORDER as to Lorenzo McCoy. The Court held a pretrial conference today in the above matter, which defendant, defense counsel, and counsel for the government attended by telephone. As discussed during the conference, it is HEREBY ORDERED: 1. A status conference in this case is scheduled for October 23, 2020, at 2:30 p.m. The Court expects to conduct this conference in person in the Courthouse. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The questionnaire is located on the Court's website at: https://www.nysd.uscourts.gov/sites/default/files/2020-07/SDNY%20Screening% 20Instructions.pdf. Completing the questionnaire online and ahead of time will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Please contact Chambers if you do not meet the requirements. 2. Defendant shall have until November 9, 2020, to file any motions in this case. If defendant files any motions, the government's responses to same shall be due November 30, 2020. Defendant's replies, if any, shall be due December 14, 2020. SO ORDERED: (Signed by Judge Vincent L. Briccetti on 9/10/2020)(bw) (Entered: 09/10/2020) |
| 09/10/2020 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Telephone Conference as to Lorenzo McCoy held on 9/10/2020. Dft & Atty Bruce Koffsky pres.. AUSA Mat Andrews pres Telephone conf held. Motions shall be filed by 11-9-20, Opposition by 11-30-20, Replies if any, 12-14-20. A further conference is scheduled for 10-23-20 at 2:30 p.m. For the reasons stated on the record, the Court excludes time under the Speedy Trial Act from today through 10-23-20. Bail continued as previously set. (Motions due by 11/9/2020. Responses due by 11/30/2020. Replies due by 12/14/2020. Status Conference set for 10/23/2020 at 02:30 PM before Judge Vincent L. Briccetti) (Court Reporter Sue Ghorayeb) (ap) (Entered: 09/10/2020) |
| 09/10/2020 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Change of Plea Hearing as to Jordan Taylor held on 9/10/2020. Dft & Atty Jason Ser pres. AUSA Mat Andrews pres Dft withdraws his previous plea of not guilty and enters a plea of guilty to Counts 1-2, of S1 Indictment. PSI Ordered. Sentencing is scheduled for 12-14-20 at 11am or 12-16-20 at 11am. Dft sentencing memo is due 12-4-20, Gov'ts by 12-9-20. (Sentencing set for 12/14/2020 at 11:00 AM before Judge Vincent L. Briccetti. Sentencing set for 12/16/2020 at 11:00 AM before Judge Vincent L. Briccetti) (Court Reporter Sue Ghorayeb) (ap) (Entered: 09/10/2020) |
| 09/10/2020 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: **Plea entered by Jordan Taylor (1) Guilty as to Count 1s,2s. (ap) (Entered: 09/10/2020)** |
| 09/10/2020 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to Jordan Taylor. (Signed by Judge Vincent L. Briccetti on 9/10/2020) (ap) (Entered: 09/10/2020) |
| 10/23/2020 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti:Status Conference as to Lorenzo McCoy held on 10/23/2020, as to Lorenzo McCoy. Court Reporter Darby Ginsberg present. Dft not present. Atty Bruce Koffsky present. AUSA Kevin Sullivan pres. A further conference is scheduled for 11-13-20 at 11am. For the reasons stated on the record, the Court excludes time under the Speedy Trial Act from today through 11-13- |

| | | 20. Bail continued as previously set ( Status Conference set for 11/13/2020 at 11:00 AM before Judge Vincent L. Briccetti) (jw) (Entered: 10/23/2020) |
|---|---|---|
| 11/05/2020 | 64 | ORDER as to Jordan Taylor, Lorenzo McCoy: This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f), to confirm the disclosure obligation of the prosecutor under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating this Order under applicable law. (Signed by Judge Vincent L. Briccetti on 11/5/2020) (See ORDER as set forth) (lnl) (Entered: 11/05/2020) |
| 11/09/2020 | 65 | MOTION for Disclosure of Rule 16 material and other relief . Document filed by Lorenzo McCoy. (Koffsky, Bruce) (Entered: 11/09/2020) |
| 11/09/2020 | 66 | AFFIDAVIT of Bruce D. Koffsky in Support as to Lorenzo McCoy re 65 MOTION for Disclosure of Rule 16 material and other relief .. (Koffsky, Bruce) (Entered: 11/09/2020) |
| 11/09/2020 | 67 | MEMORANDUM in Support by Lorenzo McCoy re 65 MOTION for Disclosure of Rule 16 material and other relief .. (Koffsky, Bruce) (Entered: 11/09/2020) |
| 11/09/2020 | 68 | ORDER as to Lorenzo McCoy: A status conference in this case is scheduled for November 13, 2020, at 11 :00 a.m. This proceeding will be conducted in person at the Courthouse. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The questionnaire is located on the Court's website at: https://www. nysd.uscourts.gov/sites/ default/files/2020-09/SDNY%20COVID%20ENTRY%20QUEST1ONNAIRE%20GUIDE% 209-2-2020.pdf. Completing the questionnaire online and ahead of time will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Please contact Chambers if you do not meet the requirements. (Signed by Judge Vincent L. Briccetti on 11/9/2020) (ap) (Entered: 11/09/2020) |
| 11/12/2020 | 69 | MEMORANDUM in Opposition by USA as to Lorenzo McCoy re 65 MOTION for Disclosure of Rule 16 material and other relief .. (Andrews, Mathew) (Entered: 11/12/2020) |
| 11/13/2020 | 70 | ORDER as to Lorenzo McCoy: For the reasons stated on the record at the in-person conference held on November 13, 2020, attended by counsel for all parties and by the defendant, the schedule for trial and pretrial submissions is as follows: 1. Rule 404(b) evidence shall be disclosed by no later than March 5, 2021. 2. Motions in limine (including any government motion to admit Rule 404(b) evidence), shall be filed by March 5, 2021. Opposition to any motions in limine shall be filed by March 12, 2021. No replies will be permitted. 3. Proposed voir dire and requests to charge shall be filed by March 29, 2021. The parties are encouraged, to the extent possible, to agree on requests to charge. 4. On the consent of the government, 3500 material and Giglio material shall be produced by March 29, 2021. 5. Marked government case-in-chief exhibits shall be produced by March 29, 2021. 6. A final pre-trial conference is scheduled for April 5, 2021, at 2:30 p.m. This conference will be conducted in person. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The questionnaire is located on the Court's website at: https://www.nysd.uscourts.gov/sites/default/files/2020-09/SDNY%20ENTRY%20QUESTIONNAIRE%20GUIDE%209-2-2020.pdf. Completing the questionnaire online and ahead of time will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Contact Chambers if you do not meet the requirements. 7. Jury selection and trial are tentatively scheduled for April 12, 2021, at 9:30 a.m. 8. Defendant's motion for disclosure is GRANTED IN PART AND DENIED IN PART, for the reasons set forth on the record at today's conference. The Clerk is |

|  |  |  |
|---|---|---|
|  |  | instructed to terminate the motion. (Doc. #65). 9. Time is excluded under the Speedy Trial Act in the interests of justice through April 5, 2021. Time excluded from 11/13/2020 until 4/5/2021. (Motions due by 3/5/2021. Responses due by 3/12/2021. Jury Selection set for 4/12/2021 at 09:30AM before Judge Vincent L. Briccetti. Jury Trial set for 4/12/2021 at 09:30 AM before Judge Vincent L. Briccetti. Pretrial Conference set for 4/5/2021 at 02:30 PM before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 11/13/2020) (ap) (Entered: 11/16/2020) |
| 11/13/2020 |  | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Status Conference as to Lorenzo McCoy held on 11/13/2020. Dft & Atty Bruce Koffsky pres. AUSA Jennifer Ong & Nicholas Bradley pres. PTC held. Tentative JS&Trial scheduled for 4/12/21. Final PTC scheduled for 4/5/21 at 2:30 p.m. For the reasons stated on the record the Court excludes time under the Speedy Trial Act from today through 4/5/21. Bail continued as previously set. (Pretrial Conference set for 4/5/2021 at 02:30 PM before Judge Vincent L. Briccetti) (ap) (Entered: 11/16/2020) |
| 11/16/2020 | 71 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 11/18/2020) |
| 11/30/2020 | 72 | ENDORSED LETTER as to Jordan Taylor addressed to Judge Vincent L. Briccetti, from Jason I Ser dated 11/30/2020 re: Defense counsel writes regarding sentencing. ENDORSEMENT: APPLICATION GRANTED. For the reasons set forth herein, the Court expects to make the necessary CARES Act findings to permit the sentencing to go forward remotely on 12/14/2020 at 11:00 a.m. The Court expects to conduct the sentencing via Skype. Chambers will confirm the details with counsel, and if the scheduling protocols require that the sentencing be rescheduled, the Court will so advise counsel. (Signed by Judge Vincent L. Briccetti on 11/30/2020) (ap) (Entered: 11/30/2020) |
| 12/02/2020 | 73 | ORDER as to Jordan Taylor. Sentencing in this case is scheduled for December 14, 2020, at 11:00 a.m. Because of the current public health emergency, the Court expects to conduct the sentencing by video-conference via Skype for Business (or by telephone conference if videoconferencing is not reasonably available). After consulting with defendant, defense counsel has advised the Court that defendant is willing to waive his right to be physically present at sentencing and consents to proceed by video or teleconference. (See Doc. #72). Accordingly, it is hereby ORDERED:1. The proceeding will be conducted through Skype for Business. In advance of theconference, Chambers will email all counsel with further information on how to access theconference. Those participating by video will click on the link or calendar invite to be provided by Chambers. Only the Court, the defendant, defense counsel, and counsel for the government will appear by video for the proceeding; all others will participate by telephone. Only one counsel per party may participate by video. Co-counsel, members of the press, and the public may access the audio feed of the conference by calling (917) 933-2166 and entering Conference ID 746536484#. (Signed by Judge Vincent L. Briccetti on 12/2/20)(jw) (Entered: 12/02/2020) |
| 12/04/2020 | 75 | Sentencing Letter by Jordan Taylor addressed to The Honorable Vincent L. Briccetti from Jason Ser dated December 4, 2020 re: Sentencing Submission. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T)(Ser, Jason) (Entered: 12/04/2020) |
| 12/09/2020 | 76 | AMENDED SCHEDULING ORDER as to Jordan Taylor. The scheduling order in this case issued December 2, 2020 (Doc. #73 ), is amended to the extent of changing the call-in information for accessing the audio feed of the conference, as follows: Co-counsel, members of the press, and the public may access the audio feed of the conference by calling (917) 933-2166 and entering Conference ID 679160392#. (Signed by Judge |

|            |    | Vincent L. Briccetti on 12/9/2020) (ap) Modified on 12/10/2020 (ap). (Entered: 12/09/2020) |
|------------|----|---|
| 12/09/2020 | 77 | SENTENCING SUBMISSION by USA as to Jordan Taylor. (Andrews, Mathew) (Entered: 12/09/2020) |
| 12/09/2020 | 78 | LETTER by Jordan Taylor addressed to Judge Vincent L. Briccetti from Jason Ser dated December 9, 2020 re: Sentencing Jordan Taylor (Ser, Jason) (Entered: 12/09/2020) |
| 12/14/2020 | 79 | ORDER as to Jordan Taylor: At the sentencing hearing on December 14, 2020, for the reasons stated on the record, the Court imposed a sentence of, among other things, TIME SERVED. Accordingly, defendant Jordan Taylor is hereby ORDERED released from the custody of the United States Marshal, subject to any detainers or detention orders lodged by any immigration or law enforcement authorities. SO ORDERED. (Signed by Judge Vincent L. Briccetti on 12/14/2020) (lnl) (Entered: 12/14/2020) |
| 12/14/2020 |    | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Sentencing held on 12/14/2020 for Jordan Taylor (1) Count 1s,2s. Dft & Atty Jason Ser pres. AUSA Mathew Andrews pres. Dft is sentenced to Time Served followed by 3 years Supervised Release to run concurrently. Standard Conditions 1-12 apply. Special Conditions: 1. The defendant shall not have contact with the victim in this case. This includes any physical, visual, written, or telephonic contact with such person. Additionally, he must not directly cause or encourage anyone else to have such contact with the victim. 2. The defendant shall participate in an outpatient mental health treatment program approved by the U.S. Probation Office. The defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. The defendant shall contribute to the cost of services rendered based on the defendant's ability to pay and the availability of third party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider. 3. The defendant will participate in an outpatient drug treatment program approved by the Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The defendant must contribute to the cost of services rendered based on his ability to pay, and the availability of third party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance abuse treatment provider. 4. The defendant must submit his person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer, and if needed, with the assistance of any law enforcement. The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the person being supervised. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner. 5. You shall participate in an educational, vocational and/or job readiness program as approved by the U.S. Probation Office. 6. You must provide the probation officer with access to any requested financial information. 7. The defendant shall be supervised by his district of residence. Special Assessment of $200.00. Restitution in the amount of $2300.00, to be paid Joint & Several with co-dft Lorenzo McKoy. Restitution shall be paid in monthly installments at a rate of $50.00 per month to be paid over a period of supervised which will commence 30 days from the date of the Judgment. All open counts are dismissed. Dft has the right to appeal. (Court Reporter Angie Shaw-Crockett) (ap) (Entered: 12/14/2020) |
| 12/14/2020 |    | DISMISSAL OF COUNTS on Government Motion as to Jordan Taylor (1) Count 1,2. (lnl) (Entered: 12/14/2020) |

| 12/14/2020 | 80 | JUDGMENT IN A CRIMINAL CASE (S1 19 CR 549-1(VB) as to Jordan Taylor (1). The Defendant pleaded guilty to counts 1,2. The Underlying Indictment is dismissed on the motion of the United States. IMPRISONMENT: Time served. SUPERVISED RELEASE: Three years. ASSESSMENT: $200.00 due immediately. RESTITUTION: $2,300.00. Restitution shall be paid in monthly installments of at least $50 over the period of supervision, to commence 30 days after the entry of judgment. (Signed by Judge Vincent L. Briccetti on 12/14/2020) (lnl) (Entered: 12/14/2020) |
| --- | --- | --- |
| 12/14/2020 | 81 | SEALED DOCUMENT placed in vault. (ap) (Entered: 12/18/2020) |
| 12/18/2020 | 82 | ORDER OF RESTITUTION as to Jordan Taylor. (Signed by Judge Vincent L. Briccetti on 12/18/2020) (See ORDER as set forth) (lnl) (Entered: 12/18/2020) |
| 12/18/2020 | 83 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 12/23/2020) |
| 02/04/2021 | 84 | NOTICE OF ATTORNEY APPEARANCE Nicholas Sutherland Bradley appearing for USA. (Bradley, Nicholas) (Entered: 02/04/2021) |
| 02/16/2021 | 85 | NOTICE OF ATTORNEY APPEARANCE Lindsey Keenan appearing for USA. (Keenan, Lindsey) (Entered: 02/16/2021) |
| 02/16/2021 | 86 | LETTER MOTION addressed to Judge Vincent L. Briccetti from Lindsey Keenan dated February 16, 2021, re: status conference . Document filed by USA as to Jordan Taylor, Lorenzo McCoy. (Keenan, Lindsey) (Entered: 02/16/2021) |
| 02/16/2021 | 87 | MEMO ENDORSEMENT as to Lorenzo McCoy granting in part 86 LETTER MOTION addressed to Judge Vincent L. Briccetti from Lindsey Keenan dated February 16, 2021, re: status conference. ENDORSEMENT: APPLICATION GRANTED IN PART: The Court will conduct an in-person status conference on 2/24/2021 at 2:30 p.m., to address the issues raised in Mr. Koffsky's letter of 2/15/2021. The defendant shall attend the conference, which shall be held in Courtroom 520 at the White Plains courthouse. Prior to that date, counsel are directed to confer and attempt to agree upon a qualified psychologist or psychiatrist to conduct the examination in the event the Court decides to order an examination pursuant to 18 U.S.C. Section 4241 (a),(b). Because defendant's motion for a competency hearing is apparently based on the two evaluations referred to in Mr. Koffsky's letter, by 2/19/2021 Mr. Koffsky shall either provide copies of the evaluations to the government or show cause in writing why the evaluations should not be provided to the government. SO ORDERED. (Status Conference set for 2/24/2021 at 02:30 PM in Courtroom 520, 300 Quarropas Street, White Plains, NY 10601 before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 2/16/2021) (lnl) (Entered: 02/16/2021) |
| 02/17/2021 | 88 | ORDER as to Lorenzo McCoy: A status conference in this case is scheduled for February 24, 2021, at 2:30 p.m. The Court expects to conduct this proceeding in person at the Hon. Charles L. Brieant, Jr., Courthouse, 300 Quarropas Street, Rm 520, White Plains, NY 10601. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The questionnaire is located on the Courts website at: https://www.nysd.uscourts.gov/sites/default/files/2020-09/SDNY%20COVID% 20ENTRY%20QUESTIONNAIRE%20GUIDE%209-2-2020.pdf. Completing the questionnaire online and ahead of time will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Please contact Chambers if you do not meet the requirements. (Signed by Judge Vincent L. Briccetti on 2/17/2021) (ap) (Entered: 02/17/2021) |
| 02/24/2021 | 89 | INTERNET CITATION NOTE as to Lorenzo McCoy: Material from decision with Internet citation re: 88 Order. (sjo) (Entered: 02/24/2021) |

| 02/24/2021 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti:Status Conference as to Lorenzo McCoy held on 2/24/2021. Court Reporter Pamela Grimaldi. Dft & Atty Bruce Koffsky pres. AUSA Nicholas Bradley pres. US Pretrial Officer Leo Barrios pres. By 3-3-21 the parties shall submit to the Court the proposed order regarding competency. The conference scheduled for 4-5-21 at 2:30 p.m. remains scheduled Bail continued as previously set. (jw) (Entered: 02/25/2021) |
|---|---|---|
| 02/25/2021 | 90 | ORDER as to Lorenzo McCoy: For the reasons set forth on the record during a conference held on February 24, 2021, attended by defendant and all counsel, the Court granted defendant's motion for a hearing to determine the mental competency of the defendant, and further ordered that a psychiatric or psychological examination of the defendant be conducted and that a psychiatric or psychological report be filed with the Court. See 18 U.S.C. § 4241(a), (b). The competency hearing is scheduled for April 5, 2021, at 2:30 p.m. By March 3, 2021, the parties shall jointly submit a proposed scheduling order with respect to the examination, report, and hearing. All other scheduled dates and deadlines set forth in the Order dated November 13, 2020 (Doc. #70) remain in effect. (Competency Hearing set for 4/5/2021 at 02:30 PM before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 2/25/2021) (ap) (Entered: 02/25/2021) |
| 02/25/2021 | | ***DELETED DOCUMENT. Deleted document number 91 SEALED DOCUMENT, as to Jordan Taylor, Lorenzo McCoy. The document was incorrectly filed in this case. (lnl) (Entered: 02/25/2021) |
| 02/25/2021 | 91 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 02/25/2021) |
| 02/25/2021 | 92 | LETTER by USA as to Jordan Taylor, Lorenzo McCoy addressed to Judge Vincent L. Briccetti from Lindsey Keenan dated February 25, 2021, re: competency evaluation of Lorenzo McCoy Document filed by USA. (Attachments: # 1 Text of Proposed Order) (Keenan, Lindsey) (Entered: 02/25/2021) |
| 02/26/2021 | 93 | ORDER as to Lorenzo McCoy: ORDERED, pursuant to Title 18, United States Code, Sections 4241, et seq., that on or before March 15, 2021, a psychological evaluation of the defendant LORENZO McCOY be performed by Dr. Barry Rosenfeld, Ph. D, to assist the Court in determining whether McCOY presently is suffering from a mental illness which renders him unable to comprehend the nature and consequences of the proceeding against him or reasonably assist in his defense. (Signed by Judge Vincent L. Briccetti on 2/26/2021) (See ORDER set forth) (ap) (Entered: 02/26/2021) |
| 03/03/2021 | 94 | LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce Koffsky dated March 3, 2021 re: Schedule a Change of Plea and to Continue Scheduling Order and Trial Date . Document filed by Lorenzo McCoy. (Koffsky, Bruce) (Entered: 03/03/2021) |
| 03/03/2021 | 95 | MEMO ENDORSEMENT as to Lorenzo McCoy (2) granting in part 94 LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce Koffsky dated March 3, 2021 re: Schedule a Change of Plea and to Continue Scheduling Order and Trial Date. ENDORSEMENT: APPLICATION GRANTED IN PARTA change of plea hearing is scheduled for 3/25/2021 at 10:00 a.m. in Courtroom 520. All pretrial deadlines are stayed. Dr. Rosenfeld's report of defendant's psychological evaluation is expected to be received by the Court and the parties by 3/22/2021. At the hearing on 3/25/2021, the Court will first discuss the report with the parties and make a determination as to defendant's competency to proceed. If the Court finds defendant competent, the Court will proceed with the guilty plea. Until then, the scheduled trial date of 4/12/2021 shall remain in effect. (Signed by Judge Vincent L. Briccetti on 3/3/2021) (ap) (Entered: 03/03/2021) |
| 03/03/2021 | | Set/Reset Hearings as to Lorenzo McCoy: (Change of Plea Hearing set for 3/25/2021 at 10:00 AM before Judge Vincent L. Briccetti) (ap) (Entered: 03/03/2021) |

| 03/03/2021 | 96 | ORDER as to Lorenzo McCoy: A change of plea hearing in the above matter is scheduled for March 25, 2021, at 10:00 a.m. The Court expects to conduct this proceeding in person in the Courthouse. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The questionnaire is located on the Court's website at: https://www.nysd.uscomis.gov/sites/default/files/2020-09/SDNY%20COVID%20ENTRY% 20QUESTIONNAIRE%20GUIDE%209-2-2020.pdf. Completing the questionnaire online and ahead of time will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Please contact Chambers if you do not meet the requirements. (Signed by Judge Vincent L. Briccetti on 3/3/2021) (ap) Modified on 3/5/2021 (ap). (Entered: 03/04/2021) |
| 03/25/2021 | 97 | (S2) SUPERSEDING INFORMATION (Felony) filed as to Lorenzo McCoy (2) count(s) 1s,2s. (ap) (Entered: 03/25/2021) |
| 03/25/2021 | 98 | WAIVER OF INDICTMENT by Lorenzo McCoy. (ap) (Entered: 03/25/2021) |
| 03/25/2021 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Change of Plea Hearing as to Lorenzo McCoy held on 3/25/2021. Dft & Atty Bruce Koffsky pres. AUSA Nicholas Bradley and Lindsey Keenan pres. For the reasons stated on the record, the Court finds that the defendant is competent to stand trial. Dft withdraws his previous plea of not guilty and enters a plea of guilty to Cts 1-2 of S2 19 er 549. PSI Ordered. Sentencing is scheduled for 7-16-21 at 2:30 p.m. Defendant's sentencing memo is due on or before 7/2/21, and the Government's by 7-9-21. Bail is continued as previously set. Ct Reporter: Angela O'Donnell. (Sentencing set for 7/16/2021 at 02:30 PM before Judge Vincent L. Briccetti) **Plea entered by Lorenzo McCoy (2) Guilty as to Count 1s,2s.** (lnl) (Entered: 03/25/2021) |
| 05/11/2021 | 99 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Lorenzo McCoy. Notice is hereby given that an official transcript of a Plea proceeding held on 3/25/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (O'Donnell, Angela) (Entered: 05/11/2021) |
| 05/11/2021 | 100 | TRANSCRIPT of Proceedings as to Lorenzo McCoy re: Plea held on 3/25/2021 before Judge Vincent L. Briccetti. Court Reporter/Transcriber: Angela O*Donnell, (914) 390-4025, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/1/2021. Redacted Transcript Deadline set for 6/11/2021. Release of Transcript Restriction set for 8/9/2021. (O'Donnell, Angela) (Entered: 05/11/2021) |
| 06/28/2021 | 102 | LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D Koffsky dated June 28, 2021 re: Modify Conditions of Release . Document filed by Lorenzo McCoy. (Koffsky, Bruce) (Entered: 06/28/2021) |
| 06/28/2021 | 103 | MEMO ENDORSEMENT granting 102 LETTER MOTION filed by Lorenzo McCoy (2), addressed to Judge Vincent L. Briccetti from Attorney Bruce D Koffsky dated June 28, 2021 re: Modify Conditions of Release. ENDORSEMENT: Defendant McCoy is permitted to attend his child's birthday party on 7/3/21. Defense counsel shall immediately notify Pretrial Services of this Order. APPLICATION GRANTED. SO ORDERED: (Signed by Judge Vincent L. Briccetti on 6/28/2021) (bw) (Entered: 06/28/2021) |

| 07/02/2021 | [104](#) | LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D Koffsky dated July 2, 2021 re: Continue Sentencing of Defendant . Document filed by Lorenzo McCoy. (Koffsky, Bruce) (Entered: 07/02/2021) |
| --- | --- | --- |
| 07/06/2021 | [105](#) | MEMO ENDORSEMENT as to Lorenzo McCoy granting 04] LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D Koffsky dated July 2, 2021 re: Continue Sentencing of Defendant. ENDORSEMENT: Application granted. Sentencing re-scheduled to: 8/19/21 at 9:30 a.m. Defendant's sentencing submission due 8/5/21. Government's submission due 8/12/21. SO ORDERED. (Sentencing set for 8/19/2021 at 09:30 AM before Judge Vincent L. Briccetti) (Signed by Judge Vincent L. Briccetti on 7/6/2021) (lnl) (Entered: 07/06/2021) |
| 08/06/2021 | [106](#) | SENTENCING SUBMISSION by Lorenzo McCoy. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D, # [5](#) Exhibit E, # [6](#) Exhibit F, # [7](#) Exhibit G) (Koffsky, Bruce) (Entered: 08/06/2021) |
| 08/12/2021 | [107](#) | SENTENCING SUBMISSION by USA as to Lorenzo McCoy. (Keenan, Lindsey) (Entered: 08/12/2021) |
| 08/19/2021 | [108](#) | ORDER OF RESTITUTION as to Lorenzo McCoy. It is hereby ORDERED that Amount of Restitution Lorenzo McCoy, the Defendant, shall pay restitution in the total amount of $2,300, pursuant to 18 U.S.C. § 3663; 18 U.S.C. § 3663A (MVRA), to the victim of the offenses charged in Counts One and Two. The name, address, and specific amount owed to the victim is set forth in the attached Schedule of Victims, attached hereto as Schedule A. Upon advice by the United States Attorney's Office of a change of address of a victim, the Clerk of the Court is authorized to send payments to the new address without further order of this Court. Restitution is joint and several with the following defendant in the following case: Jordan Taylor, 19 Cr. 549 (VB) (Signed by Judge Vincent L. Briccetti on 8/19/21)(jw) (Entered: 08/19/2021) |
| 08/19/2021 | 109 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 08/19/2021) |
| 08/19/2021 | 110 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 08/19/2021) |
| 08/19/2021 | 111 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 08/19/2021) |
| 08/19/2021 | | Minute Entry for proceedings held before Judge Vincent L. Briccetti: Sentencing held on 8/19/2021 for Lorenzo McCoy (2) Count 1s,2s. Ct Reporter: Sue Ghorayeb. Dft & Atty Bruce Koffsky pres. AUSA Lindsey Keenan pres. Dft is sentenced to 6 Mths Imprisonment on each count to run concurrently, followed by 3 Years Supervised Release to run concurrently. Standard Conditions 1-12 apply. Special Condition: No contact with victim., Outpatient Mental Health Treatment Program., Search Condition., Provide Access to financial information, No new credit charges., Supervised by District of Residence. $200.00 Special Assessment. Restitution in the Amount of $2300.00 to be paid in monthly installments of $50.00 per month to commence over the period of supervision. Restitution is Joint and Several to Jordan Taylor, 19 cr 549-1. All open counts are dismissed. Dft shall surrender by 2pm on 10-4-21. Dft has the right to appeal. Dft is remanded. (jbo) (Entered: 08/19/2021) |
| 08/19/2021 | | DISMISSAL OF COUNTS on Government Motion as to Lorenzo McCoy (2) Count 1,2. (jbo) (Entered: 08/19/2021) |
| 08/20/2021 | [112](#) | FILED JUDGMENT IN A CRIMINAL CASE as to Lorenzo McCoy (2), Count(s) 1, 2, Dismissed. Pleaded guilty to Count(s) 1s, 2s, Imprisonment for a total term of 6 Months. This sentence is imposed on each of Counts One and Two, to run concurrently. Supervised release for a term of 3 Years. This sentence is imposed on each of Counts One and Two, to run concurrently. The court makes the following recommendations to the Bureau of Prisons: That defendant be designated to FCI Otisville Satellite Camp. The |

A20

| | | defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons before 2pm on 10/4/2021. The defendant must not have contact with the victim in this case. This includes any physical, visual, written, or telephonic contact with such person. Additionally, the defendant must not directly cause or encourage anyone else to have such contact with the victim. Special Assessment of $200 which is due immediately. Restitution of $2,300.00. Restitution shall be paid in monthly installments of at least $50 over the period of supervision, to commence 30 days after release from imprisonment (Signed by Judge Vincent L. Briccetti on 8/20/21)(jw) (Entered: 08/20/2021) |
|---|---|---|
| 08/26/2021 | 113 | NOTICE OF APPEAL by Lorenzo McCoy from 112 Judgment. (tp) (Entered: 08/26/2021) |
| 08/26/2021 | | Appeal Remark as to Lorenzo McCoy re: 113 Notice of Appeal - Final Judgment. $505.00 Appeal Fee Waived. Attorney CJA. (tp) (Entered: 08/26/2021) |
| 08/26/2021 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Lorenzo McCoy to US Court of Appeals re: 113 Notice of Appeal - Final Judgment. (tp) (Entered: 08/26/2021) |
| 08/26/2021 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Lorenzo McCoy re: 113 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 08/26/2021) |
| 09/02/2021 | 114 | MEMO ENDORSEMENT as to Lorenzo McCoy on LETTER. ENDORSEMENT: Defendant Lorenzo McCoy's mother, Jill Hodges, has submitted the attached letter, dated August 27, 2021, and "notice of appeal" to the Court. Ms. Hodges says she is "asking for an appeal" on behalf of her son, and also asking that the Court "allow Lorenzo to continue to receive sustainable treatment instead of jail." To the extent this letter seeks any relief, it is DENIED for the following reasons. First, Ms. Hodges is not defendant's attorney, and therefore may not communicate with the Court on defendant's behalf. Second, the request to impose a non-jail sentence is untimely-the Court imposed sentence on August 19, 2021, and entered Judgment on August 20, 2021. (Doc. #112). Third, the Court has already considered all of the matters raised in Ms. Hodges's letter in imposing sentence in this case. And fourth, defendant has already filed a timely notice of appeal. (Doc. #113). The Court is sympathetic to Ms. Hodges's concerns about her son. But the Court has already decided the appropriate sentence in this case, and will not change that decision based on anything in Ms. Hodges's letter. Of course, defendant has the right to pursue an appeal, the merits of which will be determined by the Court of Appeals in due course. Defendant's attorney is directed to provide a copy of this Order and its attachments to his client and to Ms. Hodges. SO ORDERED. (Signed by Judge Vincent L. Briccetti on 9/2/2021) (lnl) (Entered: 09/02/2021) |
| 09/09/2021 | 115 | LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce Koffsky dated September 9, 2021 re: Motion to Withdraw as Counsel . Document filed by Lorenzo McCoy. (Koffsky, Bruce) (Entered: 09/09/2021) |
| 09/10/2021 | 116 | AMENDED LETTER MOTION addressed to Judge Vincent L. Briccetti from Bruce D. Koffsky dated September 10, 2021 re: Motion to Withdraw as Counsel . Document filed by Lorenzo McCoy. (Koffsky, Bruce) (Entered: 09/10/2021) |
| 09/10/2021 | 117 | ORDER taking under advisement 116 LETTER MOTION: The Court reserves decision on Mr. Koffsky's request to be relieved as defendant's attorney. The Court deems defendant to have made an application for bail pending appeal. By 9/17/2021, the government shall file a response to defendant's application.(Signed by Judge Vincent L. Briccetti on 9/10/2021) (Briccetti, Vincent) (Entered: 09/10/2021) |
| | | |

| 09/17/2021 | 118 | LETTER MOTION addressed to Judge Vincent L. Briccetti from Mathew Andrews dated 9/17/21 re: Opposition to Bail Pending Appeal . Document filed by USA as to Lorenzo McCoy. (Andrews, Mathew) (Entered: 09/17/2021) |
| --- | --- | --- |
| 09/20/2021 | 119 | ORDER as to Lorenzo McCoy: Under the circumstances, because the Court does not wish to rule on the motion for bail pending appeal without defendant's being represented by an attorney whom he has not accused of providing ineffective assistance of counsel, it is hereby ORDERED: 1. Mr. Koffsky's application to be relieved is GRANTED. 2. Michael K. Burke, Esq., who is the CJA attorney on duty today, is appointed as defendant's attorney. 3. By October 4, 2021, Mr. Burke shall file either a supplementary motion for bail pending appeal if he believes he is ethically permitted to do so, or a letter advising the Court that he will not file any further submission. Because the government has already stated its position with respect to such motion, the Court may or may not require any further submission from the government. 4. Defendant's direct surrender date is adjourned to October 18, 2021, at 2:00 p.m. Attorney Bruce D. Koffsky terminated in case as to Lorenzo McCoy. (Signed by Judge Vincent L. Briccetti on 9/20/2021) (See ORDER set forth) (ap) (Entered: 09/20/2021) |
| 09/28/2021 | 120 | LETTER by Lorenzo McCoy addressed to Judge Vincent L. Briccetti from Michael K. Burke dated September 27, 2021 re: application for bail pending appeal (Burke, Michael) (Entered: 09/28/2021) |
| 10/05/2021 | 121 | ORDER as to Lorenzo McCoy: Defendant's motion for bail pending appeal is DENIED. Without reviewing the entire procedural history of this case, suffice to say that, at the time of sentencing on defendant's guilty plea to carjacking and conspiracy to commit carjacking, which involved the knifepoint beating and robbery of the victim in this case, the Court was acutely aware of the extent of defendant's mental health and cognitive issues. Indeed, the principal reason why the Court was so aware of these issues was the highly professional and diligent manner in which prior defense counsel, Bruce D. Koffsky, Esq., investigated the relevant facts of his client's mental health history and presented those facts to the Court. Among other things, Mr. Koffsky obtained a psychological evaluation of his client in 2020. He later moved for a hearing to determine his client's mental competency, pursuant to 18 U.S.C. § 4241, which motion the Court granted. Defendant thereafter underwent a thorough forensic psychological examination. A report of that examination was presented to the Court prior to defendant's guilty plea, and re-presented to the Court at the time of sentencing. Mr. Koffsky presented voluminous other relevant mitigating information at sentencing, including several other psychological evaluations, including the report of the evaluation he obtained in 2020. Mr. Koff sky also made a sentencing argument in favor of a noncustodial sentence. The Court carefully considered all of Mr. Koffsky's submissions and arguments, and ultimately imposed a sentence of 6 months' imprisonment, which represented a substantial downward variance from the applicable Sentencing Guidelines range of 51-63 months' imprisonment. For these and other reasons, the Court finds that Mr. Koffsky did an extraordinarily capable job on behalf of his client, and that any claim of ineffective assistance of counsel is simply frivolous. In short, the likelihood of a reversal or remand based on a claim of ineffective assistance of counsel is zero. Put another way, defendant's appeal does not raise a "substantial question of law or fact likely to result in... a sentence that does not include a term of imprisonment." 18 U.S.C. § 3143(b)(l)(B)(3). Defendant shall surrender for the service of his sentence on October 18, 2021, at the institution designated by the Bureau of Prisons. (Signed by Judge Vincent L. Briccetti on 10/5/2021) (ap) Modified on 10/6/2021 (ap). (Entered: 10/05/2021) |
| 10/08/2021 | 122 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Lorenzo McCoy. Notice is hereby given that an official transcript of a Conference proceeding held on 10/23/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties |

| | | |
|---|---|---|
| | | have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Ginsberg, Darby) (Entered: 10/08/2021) |
| 10/08/2021 | 123 | TRANSCRIPT of Proceedings as to Lorenzo McCoy re: Conference held on 10/23/2020 before Judge Vincent L. Briccetti. Court Reporter/Transcriber: Darby Ginsberg, (914) 390-4102, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/29/2021. Redacted Transcript Deadline set for 11/8/2021. Release of Transcript Restriction set for 1/6/2022. (Ginsberg, Darby) (Entered: 10/08/2021) |
| 10/22/2021 | 124 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Lorenzo McCoy. Notice is hereby given that an official transcript of a Conference proceeding held on 11/13/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Grimaldi, Pamela) (Entered: 10/22/2021) |
| 10/22/2021 | 125 | TRANSCRIPT filed as to Lorenzo McCoy re: Conference for dates of 11/13/2020 before Judge Vincent L. Briccetti. re 113 Notice of Appeal - Final Judgment. Court Reporter/Transcriber: Pamela Grimaldi, (914) 390-4053. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/12/2021. Redacted Transcript Deadline set for 11/22/2021. Release of Transcript Restriction set for 1/20/2022. (Grimaldi, Pamela) (Entered: 10/22/2021) |
| 10/22/2021 | 126 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Lorenzo McCoy. Notice is hereby given that an official transcript of a Conference proceeding held on 02/24/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Grimaldi, Pamela) (Entered: 10/22/2021) |
| 10/22/2021 | 127 | TRANSCRIPT filed as to Lorenzo McCoy re: Conference for dates of 02/24/2021 before Judge Vincent L. Briccetti. re 113 Notice of Appeal - Final Judgment. Court Reporter/Transcriber: Pamela Grimaldi, (914) 390-4053. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/12/2021. Redacted Transcript Deadline set for 11/22/2021. Release of Transcript Restriction set for 1/20/2022. (Grimaldi, Pamela) (Entered: 10/22/2021) |
| 11/10/2021 | 128 | ENDORSED LETTER as to Lorenzo McCoy addressed to Judge Vincent L. Briccetti from Peter J. Tomao dated 11/5/21 re: I request that Your Honor provide me with a copy of the Statement of Reasons, Form AO 2458, prepared pursuant to 18 USC 3553(c)(2) in connection with the sentence imposed in this case for use in connection with the appeal.....ENDORSEMENT: Application Granted. Because the Statement of Reasons includes sensitive private information, Chambers will email a copy of the Statement of Reasons to both counsel. SO ORDERED. (Signed by Judge Vincent L. Briccetti on 11/10/21)(jw) (Entered: 11/10/2021) |

Approved: _____
MATHEW S. ANDREWS
Assistant United States Attorney

ORIGINAL

Before:   HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x
                                   :   **COMPLAINT**
UNITED STATES OF AMERICA           :
                                   :   Violations of 18 U.S.C.
        - v. -                     :   §§ 371, 2119, and 2
                                   :
JORDAN TAYLOR and                  :   COUNTY OF OFFENSE:
LORENZO McCOY,                     :   PEEKSKILL
                                   :   19m 3606
              Defendants.          :
                                   X
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

Joseph McGann, being duly sworn, deposes and says that he is a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Carjacking)

1.     From at least in or about April 2019, up to and including on or about April 11, 2019, in the Southern District of New York and elsewhere, JORDAN TAYLOR and LORENZO McCOY, the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, in violation of Title 18, United States Code, Section 2119.

2.     It was a part and an object of the conspiracy that JORDAN TAYLOR and LORENZO McCOY, the defendants, and others known and unknown, with the intent to cause death and serious bodily harm, knowingly took a motor vehicle that had been transported, shipped, and received in interstate and foreign commerce from the person and presence of another by force and violence and by intimidation, in violation of Title 18, United States Code, Section 2119.

<u>Overt Acts</u>

3.      In furtherance of said conspiracy and to effect the
illegal objects thereof, the following overt acts, among others,
were committed in the Southern District of New York:

        a.   On or about April 10, 2019, JORDAN TAYLOR, the
defendant, texted the victim of a carjacking (the "Victim") to
request that he pick up TAYLOR from an address located in
Peekskill.

        b.   On or about April 10, 2019, LORENZO McCOY, the
defendant, physically assaulted the Victim and pointed a knife
at the Victim's chest.

        (Title 18, United States Code, Section 371.)

## **COUNT TWO**
(Carjacking)

4.      On or about April 10, 2019, in the Southern District of
New York, JORDAN TAYLOR and LORENZO McCOY, the defendants, with
the intent to cause death and serious bodily harm, knowingly took
a motor vehicle that had been transported, shipped, and received
in interstate and foreign commerce from the person and presence of
another by force and violence and by intimidation.

        (Title 18, United States Code, Sections 2119 and 2.)

     The bases for my knowledge and for the foregoing charges are,
in part, as follows:

5.      I have been a TFO with the FBI for over 4 years. I have
also been an officer with the Peekskill Police Department for over
17 years. I have participated in investigations of motor vehicle
theft and robberies and, among other things, have conducted or
participated in surveillance, the execution of search warrants,
debriefings of informants, and have participated in investigations
that utilized cellphone location information in conjunction with
physical surveillance and other investigative techniques.   This
affidavit is based upon my personal participation in the
investigation of this matter, as well as on my conversations with
other law enforcement officers and my examination of documents,
reports, records, images, and video evidence.   Because this
affidavit is being submitted for the limited purpose of
establishing probable cause, it does not include all the facts I
have learned during the investigation.   Where the contents of

documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Investigation

6.    I know, from discussions with a detective in the Peekskill Police Department ("Detective-1") and my review of Peekskill Police Department ("PPD") reports from on or about April 10, 2019 and April 11, 2019, the following information, in substance and in part:

a.    On April 10, 2019, at approximately 9 p.m., the Victim arrived at PPD headquarters. The Victim was bleeding from the back of his head and had a cut on his lip. The Victim stated that he was assaulted and had his wallet, iPhone, and car keys taken from him. The Victim further stated that he believed his assailants also stole his car ("Vehicle-1"). The Victim was transported to Hudson Valley Hospital for immediate treatment.

b.    A police officer from PPD ("Officer-1") subsequently responded to Hudson Valley Hospital. The Victim spoke with Officer-1 and stated, in sum and substance, that around 8:30 p.m., the Victim received a text from his friend, "Jordan," asking for a ride to the mall. Jordan texted that he wanted to turn in a cell phone for money. The Victim agreed to drive Jordan to the mall, and Jordan texted him an address at which he was located. The Victim drove Vehicle-1 to the address and observed Jordan standing in the driveway. Jordan instructed the Victim to follow him around the corner of the house and down a set of concrete stairs. The Victim complied.

c.    Upon arriving at the bottom of the stairs, the Victim heard another individual ("Co-conspirator-1") say, "Get down." Jordan and Co-conspirator-1 then began punching and kicking the Victim in the head and upper body. Co-conspirator-1 pointed a knife at the Victim's chest. The Victim reported to the police that, at the time Co-conspirator-1 pointed a knife at his chest, he was in fear of his life.

d.    Thereafter, Jordan and Co-conspirator-1 went through the Victim's pockets and removed his car keys, iPhone, and wallet containing his bank card. They then ran up the stairs, and the Victim heard car doors close and an engine start. When the Victim later climbed to the top of the stairs, he saw that Vehicle-1 was gone. The Victim ran to PPD headquarters, where he reported the incident.

3

e.      After arriving at PPD headquarters, the Victim spoke with Detective-1 and reported that he did not know Jordan's last name. The Victim provided a description of Jordan, and Detective-1 showed the Victim a possible photograph of Jordan. The Victim positively identified the individual in the photograph as Jordan. Detective-1 recognized the individual in the photograph as JORDAN TAYLOR, the defendant, based on their prior street interactions.

f.      PPD subsequently put out a "be on lookout" ("BOLO") notice for TAYLOR at approximately 3 a.m. on April 11, 2019. TAYLOR voluntarily surrendered to PPD later that day at approximately 10:30 a.m. TAYLOR was read his *Miranda* rights, after which he waived them and stated, in sum and substance, that he and LORENZO McCOY, the defendant, lured the Victim to the address of one of TAYLOR's family members. They then struck the Victim repeatedly and stole Victim-1's car -- Vehicle-1.

7.      I have reviewed a statement by the Victim to PPD on April 10, 2019. Based on that statement, I know, among other things, that the Victim described Co-conspirator-1, in sum and substance, as a dark skinned black male with short black hair. Based on that description, my post-arrest observations of LORENZO McCOY, the defendant, and my training and experience, I believe that the description given by the Victim is consistent with McCOY's physical features.

8.      Based on my review of manufacturing records, I know that Vehicle-1 had been manufactured in Hermosillo, Mexico and shipped to Peoria, Arizona. It was then purchased and shipped to New York.

WHEREFORE, the deponent respectfully requests that JORDAN TAYLOR and LORENZO McCOY, the defendants, be arrested and

imprisoned, or bailed, as the case may be.

Joseph McGann
Task Force Officer
Federal Bureau of Investigation


Sworn to before me this
11th day of April, 2019

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

20194bmccoyarrgncf

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   --------------------------------x

3   UNITED STATES OF AMERICA

4           v.                              19 CR 549(VB)

5                                           CONFERENCE

6   JORDAN TAYLOR,
    LORENZO McCOY,
7
            Defendants.
8
    --------------------------------x
9
                                        United States Courthouse
10                                      White Plains, N.Y.
                                        April 11, 2019
11

12

13
    Before:  THE HONORABLE PAUL E. DAVISON, Magistrate Judge
14

15                          APPEARANCES
16
    AUDREY STRAUSS
17       United States Attorney for the
         Southern District of New York
18  MATHEW ANDREWS
         Assistant United States Attorney
19

20  FEDERAL DEFENDERS OF NEW YORK, INC.
         Attorneys for Defendant Taylor
21  JASON SER

22
    KERRY LAWRENCE
23       Attorneys for Defendant McCoy

24

25  *Proceeding recorded via digital device.


                CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                          (914)390-4103

20194bm ccoyargncf

```
 1              THE COURT:  Good afternoon.  Please be seated.

 2              THE DEPUTY CLERK:  United States of America against

 3   Jordan Taylor and Lorenzo McCoy.

 4              Would the government please note your appearance for

 5   the record.

 6              MR. ANDREWS:  Good evening, your Honor.  Mathew

 7   Andrews for the government.  Also at counsel table is TFO Joe

 8   McGann of the FBI.

 9              THE COURT:  Good evening.

10              MR. SER:  Good evening, your Honor.  Jason Ser,

11   Federal Defenders, for Mr. Taylor, who's present before the

12   Court, in custody.

13              THE COURT:  Mr. Ser.

14              MR. LAWRENCE:  Good evening, your Honor.  Kerry

15   Lawrence seeking appointment to represent Mr. Lorenzo McCoy,

16   who is seated to my right.

17              THE COURT:  Welcome back, Mr. Lawrence.

18              Mr. Cangelosi, could you swear the agent.

19              (Special agent Joseph McGann sworn)

20              THE COURT:  Thank you.

21              I'm actually acquainted with Officer McGann and will

22   sign off on the original complaint.

23              All right.  Mr. Taylor, Mr. McCoy, would you both

24   stand up, please.

25              This is not a trial.  You're not going to be called
```

 1    upon to answer or plead to any charges this afternoon.  We're

 2    here for what's called an initial appearance.  It's my job to

 3    advise you of your rights, to make certain you understand what

 4    you're accused of and to determine whether bail should be set

 5    and, if so, what that bail should be.

 6           You each have an absolute right to remain silent at

 7    this and every stage of the proceedings.  Any statement you do

 8    make could be used against you.  You have this right to remain

 9    silent even if you've already made statements to the police.

10    You are not required to answer any questions that law

11    enforcement officers ask you from this moment on.

12           I recommend that you each consult with your attorney

13    as necessary before you answer any questions that may be put to

14    you, and that includes questions I will ask you today.

15           Do you understand that, Mr. Taylor?

16           DEFENDANT TAYLOR:  Yes.

17           THE COURT:  Mr. McCoy?

18           DEFENDANT McCOY:  Yes, sir.

19           THE COURT:  All right.  Mr. Cangelosi, would you

20    place each defendant under oath or affirmation.

21           (Defendant Jordan Taylor sworn)

22           (Defendant Lorenzo McCoy sworn)

23           THE COURT:  Addressing both defendants, you are now

24    both under oath.  That means if you knowingly make a false

25    statement during this proceeding, you could be prosecuted for

```
 1    perjury.  You could face up to five years in prison and a
 2    $250,000 fine if convicted for that.
 3              I will also caution you both that any false statement
 4    you make during this proceeding as well as any false statement
 5    you may have made to Pretrial Services could be used against
 6    you at trial.
 7              Do you understand that, Mr. Taylor?
 8              DEFENDANT TAYLOR:  Yes.
 9              THE COURT:  Mr. McCoy?
10              DEFENDANT McCOY:  Mhm.
11              THE COURT:  All right, then, turning first to
12    Mr. Taylor, for the record, what's your full name?
13              DEFENDANT TAYLOR:  Jordan E. Taylor.
14              THE COURT:  How old are you?
15              DEFENDANT TAYLOR:  I'm 18 years old.
16              THE COURT:  Eighteen?
17              DEFENDANT TAYLOR:  Yes.
18              THE COURT:  Do you have any difficulty reading,
19    writing, speaking or understanding English?
20              DEFENDANT TAYLOR:  Writing.
21              THE COURT:  All right.  How far did you go in school?
22              DEFENDANT TAYLOR:  Eleventh grade.
23              THE COURT:  Have you ever been hospitalized or
24    treated for narcotic or alcohol addiction?
25              DEFENDANT TAYLOR:  I have been hospitalized.
```

1          THE COURT:  For substance abuse of some kind?

2          DEFENDANT TAYLOR:  No.

3          THE COURT:  For some other medical procedure?

4          DEFENDANT TAYLOR:  Psychiatric.

5          THE COURT:  I see.

6          Do you have any mental or psychiatric issue today

7     which prevents you from fully understanding what's going on

8     here?

9          DEFENDANT TAYLOR:  Um, no.

10          THE COURT:  Within the past 24 hours, have you used

11     or taken any drugs, marijuana, alcohol, medication or pills of

12     any kind?

13          DEFENDANT TAYLOR:  No.

14          THE COURT:  Are you feeling clear in your head as you

15     stand here?

16          DEFENDANT TAYLOR:  Yes.

17          THE COURT:  Mr. Taylor, if you made any statements to

18     Pretrial Services that you would like to correct or add to in

19     any way, you should notify Mr. Ser now so the record can be

20     corrected.

21          Mr. Ser, anything you want to bring to my attention

22     with regard to the Pretrial Services report?

23          MR. SER:  No, your Honor.

24          THE COURT:  Thank you.

25          Then I will turn to Mr. McCoy.

1              For the record, what's your full name?

2              DEFENDANT McCOY:  Lorenzo D. McCoy.

3              THE COURT:  How old are you?

4              DEFENDANT McCOY:  Nineteen.

5              THE COURT:  Do you have any difficulty reading,

6      writing, speaking or understanding English?

7              DEFENDANT McCOY:  No, sir.

8              THE COURT:  How far did you go in school?

9              DEFENDANT McCOY:  Graduated.

10             THE COURT:  High school?

11             DEFENDANT McCOY:  Yeah.

12             THE COURT:  Have you ever been hospitalized or

13     treated for narcotic or alcohol addiction?

14             DEFENDANT McCOY:  No.  I've been hospitalized for a

15     mental disorder.

16             THE COURT:  For?

17             DEFENDANT McCOY:  A mental disorder.

18             THE COURT:  Is there anything about any mental or

19     psychiatric problem that you may have experienced which is

20     interfering with your ability to fully understand what's going

21     on here this afternoon?

22             DEFENDANT McCOY:  No, sir.

23             THE COURT:  Within the past 24 hours, have you used

24     or taken any drugs, marijuana, alcohol, medication or pills of

25     any kind?

```
 1                    DEFENDANT McCOY:  No.

 2                    THE COURT:  Are you feeling clear in your head this

 3      afternoon?

 4                    DEFENDANT McCOY:  Yes, sir.

 5                    THE COURT:  Mr. McCoy, if you made any statements to

 6      Pretrial Services you would like to correct or add to in any

 7      way, you should notify Mr. Lawrence now so the record can be

 8      corrected.

 9                    Mr. Lawrence, any issues you want to flag with regard

10      to the Pretrial Services report?

11                    MR. LAWRENCE:  No, your Honor.

12                    THE COURT:  Addressing both defendants, you have an

13      absolute right to be represented by counsel at this and every

14      stage of the proceedings against you.  That includes

15      representation during any questioning by the authorities,

16      during any lineup and at all court proceedings, including this

17      one.  And once again, you each have the right to consult with

18      your attorney before you answer any questions.

19                    Do you understand that, Mr. Taylor?

20                    DEFENDANT TAYLOR:  Yes, I do.

21                    THE COURT:  Mr. McCoy?

22                    DEFENDANT McCOY:  Yes.

23                    THE COURT:  Mr. Ser, is Mr. Taylor seeking

24      court-appointed counsel?

25                    MR. SER:  Yes, your Honor.
```

```
 1                THE COURT:  And, Mr. Lawrence, what about Mr. McCoy?
 2                MR. LAWRENCE:  He's seeking court-appointed counsel
 3     as well.
 4                THE COURT:  Thank you.
 5                Addressing both defendants, you each have the right
 6     to retain an attorney of your own choosing; however, if you are
 7     unable to afford an attorney, the Court will appoint an
 8     attorney to represent you without cost to you.
 9                Mr. Taylor, you are seeking court-appointed counsel?
10                DEFENDANT TAYLOR:  Yes.
11                THE COURT:  Do you have the money to hire an attorney
12     privately?
13                DEFENDANT TAYLOR:  No, I don't.
14                THE COURT:  Mr. McCoy, you are also seeking
15     court-appointed counsel?
16                DEFENDANT McCOY:  Yes.
17                THE COURT:  Do you have the money to hire a lawyer?
18                DEFENDANT McCOY:  No.
19                THE COURT:  All right.  Addressing both defendants,
20     in a moment, I will review your financial affidavits.  I first
21     caution you that making a false statement on a financial
22     affidavit could also expose you to prosecution, so it's very
23     important that those financial affidavits be true.
24                You understand that, Mr. Taylor?
25                DEFENDANT TAYLOR:  Yes.
```

```
 1              THE COURT:  Mr. McCoy?

 2              DEFENDANT McCOY:  Yes.

 3              THE COURT:  All right.

 4              Mr. Cangelosi, please arraign each defendant on his

 5     financial affidavit.

 6              THE DEPUTY CLERK:  Mr. McCoy, I show you this

 7     financial affidavit.  Is that your signature affixed to it?

 8              DEFENDANT McCOY:  What happened?

 9              THE DEPUTY CLERK:  Is that your signature there?

10              DEFENDANT McCOY:  Yes.

11              THE DEPUTY CLERK:  Okay.  Before signing this

12     affidavit, did you read it?

13              DEFENDANT McCOY:  Yeah.

14              THE DEPUTY CLERK:  And did you discuss it with your

15     attorney.

16              DEFENDANT McCOY:  Mhm.

17              THE DEPUTY CLERK:  Please raise your right hand.

18              Do you swear to the truth and contents of this

19     financial affidavit?

20              DEFENDANT McCOY:  Yes.

21              THE DEPUTY CLERK:  Thank you.

22              Mr. Taylor, I show you this financial affidavit.  Is

23     that your signature affixed to it?

24              DEFENDANT TAYLOR:  Yes, it is.

25              THE DEPUTY CLERK:  Okay.  Before signing this
```

1   affidavit, did you read it?

2            DEFENDANT TAYLOR:  Yes.

3            THE DEPUTY CLERK:  And did you discuss it with your

4   attorney?

5            DEFENDANT TAYLOR:  Yes.

6            THE DEPUTY CLERK:  Okay.  Please raise your right

7   hand.

8            Do you solemnly swear to the truth and contents of

9   this financial affidavit?

10           DEFENDANT TAYLOR:  Yes.

11           THE COURT:  Mr. Taylor, do you own or possess or have

12  the right to any other money or financial resources beyond

13  what's listed on this form?

14           DEFENDANT TAYLOR:  No.

15           THE COURT:  All right.  I find that Jordan Taylor is

16  financially unable to obtain counsel.  I appoint Jason Ser of

17  Federal Defenders.

18           Thank you, Mr. Ser, for being available.

19           MR. SER:  My pleasure.

20           THE COURT:  Mr. McCoy, do you own or possess or have

21  the right to any other money or financial resources beyond

22  what's listed on this form?

23           DEFENDANT McCOY:  No.

24           THE COURT:  All right.  I find that Lorenzo McCoy is

25  financially unable to obtain counsel.  I appoint Mr. Kerry

 1    Lawrence to represent him.

 2              Mr. Lawrence, thank you.

 3              MR. LAWRENCE:  My pleasure, your Honor.

 4              THE COURT:  Mr. Taylor, are you a United States

 5    citizen?

 6              DEFENDANT TAYLOR:  Yes.

 7              THE COURT:  Are you a citizen of any other country?

 8              DEFENDANT TAYLOR:  No.

 9              THE COURT:  Mr. McCoy, what about you?  Are you a

10    United States citizen?

11              DEFENDANT McCOY:  Yes.

12              THE COURT:  A citizen of any other country?

13              DEFENDANT McCOY:  No.

14              THE COURT:  All right.  Addressing both defendants,

15    you have been charged with a violation of federal law.  The

16    charges are set forth in a complaint entitled United States of

17    America against Jordan Taylor and Lorenzo McCoy.

18              Mr. Taylor, have you and Mr. Ser received a copy of

19    the complaint and gone over the charges together?

20              DEFENDANT TAYLOR:  Yes.

21              THE COURT:  Mr. Ser, you've gone over the complaint

22    with your client?

23              MR. SER:  I have, your Honor.  I've had an

24    opportunity to meet with him in the basement.  I read and

25    explained the complaint to him, which I believe he understands,

1  and he'll waive its public reading.

2           THE COURT:  Thank you.

3           Mr. McCoy, did you and Mr. Lawrence receive a copy of

4  the complaint and go over the charges together?

5           DEFENDANT McCOY:  Yes.

6           THE COURT:  Mr. Lawrence, you've gone over the

7  complaint with your client?

8           MR. LAWRENCE:  I have, your Honor.  I believe he

9  understands the allegations in the complaint, and we waive a

10 public reading.

11          THE COURT:  Public reading is waived.

12          All right.  Thank you, gentlemen.  You can be seated

13 while I address myself to government counsel.

14          Mr. Andrews, first, can you tell me when and where

15 each defendant was arrested.

16          MR. ANDREWS:  Both of the defendants were arrested in

17 Peekskill this morning at approximately 10:30 a.m.

18          THE COURT:  All right.  These defendants are being

19 presented before me at approximately 6 p.m. today, April 11th,

20 2019.

21          What's the government's position with regard to bail?

22          MR. ANDREWS:  The government's not seeking detention,

23 your Honor.  We've had an opportunity to speak with defense

24 counsel for both of the defendants, and we seem to be agreed

25 that we will allow for release on the conditions set forth by

1    Pretrial Services.  Obviously, allowing defense counsel to

2    correct me if I'm wrong, that would include for both of the

3    defendants a $25,000 personal recognizance bond.  Specifically

4    for Mr. Taylor, that bond would be cosigned by his father.

5    Both of the defendants would be placed under Pretrial

6    supervision.  Both of the defendants would receive mental

7    health evaluation treatments.  Both the defendants would

8    receive drug testing and treatment.  Both of the defendants

9    shall enroll in vocation training, school or employment.  Both

10   the defendants would be subject to a curfew with location

11   monitoring from 8 p.m. to 6 a.m.  And specifically Mr. Taylor,

12   he would reside with his father at 1701 Crompond Road,

13   Peekskill, New York.  In addition, I believe both of the

14   defendants would be prohibited from possessing firearms.  And I

15   can feel free to let counsel disagree with this provision, but

16   I request that neither of the defendants have any contact with

17   the victim in the matter.  Oh, and one week to satisfy the

18   bonds, your Honor.

19           THE COURT:  Well, you said that -- you said a $25,000

20   bond.  You said that Mr. Taylor's had to be cosigned by his

21   father.  Are you requesting further co-signature beyond that?

22           MR. ANDREWS:  No, your Honor.

23           THE COURT:  So with respect to Mr. McCoy, what is the

24   contingency that he has a week to satisfy?

25           MR. ANDREWS:  To find a person who can satisfy that

20194bm ccoyangncf

```
 1   $25,000 bond, your Honor.
 2            MR. LAWRENCE:  Your Honor, actually, Mr. --
 3            THE COURT:  I'm confused.
 4            MR. LAWRENCE:  Well, Mr. McCoy's father is present in
 5   court today.  He's an individual -- and Mr. McCoy, if your
 6   Honor releases him on bail, will be living in his parental
 7   residence, which is the same residence he's currently residing
 8   in.  Mr. McCoy, the father, works for Avis Rent a Car.  He's
 9   worked there for 25 years and actually left work at LaGuardia
10   Airport to get here today.  He leaves -- he works five days a
11   week and leaves on the 4:53 a.m. train.  He is present in the
12   courtroom.  I would ask that he be permitted to sign a bond
13   and, therefore, we don't need additional time to perfect that
14   condition.
15            THE COURT:  So you don't want a cosigner on
16   Mr. McCoy's bond?
17            MR. ANDREWS:  Yes, your Honor.
18            THE COURT:  Okay.  So what you're asking for with
19   respect to both defendants is a $25,000 bond cosigned by one
20   financially responsible person.
21            MR. ANDREWS:  That's correct, your Honor.
22            THE COURT:  And it appears that, in each instance,
23   it's going to be the defendant's father.
24            MR. ANDREWS:  It appears so, your Honor.
25            THE COURT:  And you're consenting to them being
```

1    released pending satisfaction of that?

2         MR. ANDREWS:  Yes, but that would have to be done

3    within a week.

4         MR. LAWRENCE:  And I would also ask that the other

5    condition that they be permitted to satisfy is, since they're

6    going to be, subject to your Honor's approval, on a curfew with

7    electronic monitoring, that they have that amount of time to be

8    able to both install the device and set that up.

9         THE COURT:  Can I see the Pretrial Services report.

10         (Pause)

11         THE COURT:  I would ask the defendants to rise.

12         I've got to tell you, you're both getting a break on

13    this bail marking.  You know, this is a crime of violence.  I

14    will tell you, I don't like the look of this.  It's a heck of a

15    way to get started at 18 or 19 years of age.  It seems like a

16    crime of either stupidity or desperation.  And I'm not asking

17    you to address that or drawing any conclusions, and I'm going

18    to go along with what's been recommended by your attorneys, but

19    I want both of you to understand that federal bail is a serious

20    matter.  You're going to be supervised by federal officers, and

21    if you are found to be in violation, you're going to be

22    remanded pending trial.  I'm not going to sit here and yell at

23    you, but I send people to jail every day, and if you come back

24    on violations, that's what's going to happen to you.

25         Do you understand that, Mr. Taylor?

```
 1            DEFENDANT TAYLOR:  Yes.

 2            THE COURT:  Do you understand that, Mr. McCoy?

 3            DEFENDANT McCOY:  Yes.

 4            THE COURT:  All right.  Having considered the

 5   arguments of counsel, the information reported by Pretrial

 6   Services and, frankly, despite the nature of the offense, I'm

 7   going to go along with the government's notably lenient

 8   recommendation here and order each defendant released on a

 9   $25,000 personal recognizance bond, which is to be cosigned by

10   one financially responsible person.  I expect that each

11   defendant's bond will be cosigned by that defendant's father.

12            Each defendant will be subject to Pretrial

13   supervision at a frequency and intensity determined by Pretrial

14   Services.

15            Each defendant shall participate and cooperate with

16   such mental health evaluation and treatment as Pretrial

17   Services deems appropriate.

18            Each defendant shall be subject to such drug testing

19   and treatment as Pretrial determines is appropriate.

20            Each defendant, while at liberty, is directed to make

21   efforts to enroll in vocational training, school or to obtain

22   employment.  Pretrial Services is empowered to take such

23   measures as are necessary to verify good-faith efforts to

24   comply with that condition.

25            Each defendant is specifically directed not to
```

1  possess any type of firearm or other dangerous weapon while at

2  liberty on bail conditions.

3          Each defendant shall be placed on curfew, which will

4  be enforced by location monitoring.  The curfew will extend

5  from 8 p.m. until 6 a.m. the following morning.

6          With regard to Mr. Taylor, it is a specific condition

7  of his release that he shall reside with his father at the

8  Crompond Road address alluded to by Mr. Andrews and that the

9  location monitoring be implemented at that address as opposed

10  to the address that he has been living at.

11          Finally, I direct both defendants not to have any

12  contact, direct or indirect, with the individual identified as

13  the victim in the complaint.

14          Is there any ambiguity about who we're talking about?

15          MR. ANDREWS:  I don't believe so, your Honor.

16          MR. LAWRENCE:  Well --

17          THE COURT:  I'm not going to require it to be placed

18  on the record, but I will require the government to notify

19  defense counsel of who it is that the defendant is prohibited

20  from having any contact -- who each defendant is prohibited

21  from having any contact with.  And I don't want there to be any

22  confusion about implementation of that condition.

23          All right.  Finally, the defendants can be released

24  upon their own signatures.

25          I have conferred with Pretrial Services, and they can

1   implement or assist the defendants in self-implementing the

2   location monitoring so there is no reason to delay the

3   implementation of that particular condition, but the defendants

4   shall each have one week to satisfy the co-signature

5   requirement.

6              Since you're being released on bail, I have to give

7   you some bail warnings.

8              First of all, you're each going to be supervised by

9   Pretrial Services.  You need to understand that your Pretrial

10  Services officer acts as an arm of the Court and if you don't

11  follow their instructions, you're in violation of your bail

12  conditions.  If they tell you to do something, it's the same as

13  if I told you to do it.

14             Do you understand that, Mr. Taylor?

15             DEFENDANT TAYLOR:  Yes.

16             THE COURT:  Mr. McCoy?

17             DEFENDANT McCOY:  Yes.

18             THE COURT:  This is a setting of bail.  Even though

19  you're not posting any cash, that means, upon your release, you

20  must refrain from committing any violations of law whatsoever.

21  That includes federal, state and local crimes.  If you commit a

22  felony while you're on release for this charge, you may be

23  subject to an additional prison term of up to ten years.

24  That's on top of whatever you're facing on this charge and on

25  top of whatever you might be facing on the new charge.  If you

```
 1    commit a misdemeanor while you're on release, the additional
 2    prison term would be up to one year.
 3             I'm directing each of you to notify your Pretrial
 4    Services officer if you're accused of committing a crime.  That
 5    means if you get arrested, if you get questioned by the police
 6    or you otherwise learn that you're implicated in other criminal
 7    activity, you need to tell your Pretrial Services officer.
 8             Do you understand that, Mr. Taylor?
 9             DEFENDANT TAYLOR:  Yes.
10             THE COURT:  Mr. McCoy?
11             DEFENDANT McCOY:  Yes.
12             THE COURT:  Your travel is going to be restricted to
13    the Southern and Eastern Districts of New York.  Your Pretrial
14    Services officer and your attorney can explain to you what the
15    confines of those districts are.  You must obtain the Court's
16    permission in advance before you may travel outside those areas
17    for any reason.
18             Do you understand that, Mr. Taylor?
19             DEFENDANT TAYLOR:  Yes.
20             THE COURT:  Mr. McCoy?
21             DEFENDANT McCOY:  Yeah.
22             THE COURT:  If either of you violate any of the
23    conditions of your release, your bail may be immediately
24    revoked and you may be detained pending trial.  You could also
25    be prosecuted for contempt of court.
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1          If you fail to appear in court when you're required

2     to do so, you may be committing the crime of bail jumping,

3     which would expose you to additional punishment separate and

4     apart from the charges you're facing here.

5          Mr. Andrews, what is the statutory maximum on this

6     conspiracy count?

7          MR. ANDREWS:  It will take me a moment to check, your

8     Honor.

9          THE COURT:  Sure.

10         (Pause)

11         THE COURT:  I should say on the carjacking count.

12    That's going to be the top count.

13         MR. ANDREWS:  Yes.  The maximum for the conspiracy

14    count will be five years.

15         THE COURT:  Yes.

16         MR. ANDREWS:  The statute provides that if there is

17    serious bodily injury that results, the term of imprisonment

18    will be not more than 25 years; if not, the term of

19    imprisonment is no more than 15 years, your Honor.

20         THE COURT:  All right.  The punishment for bail

21    jumping in this case would be up to ten years imprisonment and

22    a $250,000 fine.

23          Do you understand that, Mr. Taylor?

24         DEFENDANT TAYLOR:  Yes.

25         THE COURT:  Mr. McCoy?

1              DEFENDANT McCOY:  Yes.

2              THE COURT:  All right.  You each have a right to a

3  preliminary hearing which must be held within 21 days since

4  you're being released.  At that hearing, the government would

5  be required to present evidence to establish probable cause to

6  believe you committed one or more of the charges brought

7  against you.  That preliminary hearing would not take place if

8  the government presents your case to a grand jury and obtains

9  an indictment on or before the date of the preliminary hearing.

10            In addition, you have a right to waive a preliminary

11  hearing or to consent to an extension of time for that hearing

12  and, by doing so, you would not give up any defenses or any

13  other rights you may have.  However, you should discuss the

14  matter with your attorney before you waive or consent to any

15  adjournments.

16            Do you understand that, Mr. Taylor?

17            DEFENDANT TAYLOR:  Yes.

18            THE COURT:  Mr. McCoy?

19            DEFENDANT McCOY:  Yes.

20            THE COURT:  Counsel, what do you want to do about a

21  preliminary hearing?

22            Mr. Ser?

23            MR. SER:  Your Honor, we'll consent out to the

24  thirtieth day.

25            THE COURT:  Mr. Lawrence?

20194bm ccoyangncf                                                      22

1              MR. LAWRENCE:  As we will.

2              THE COURT:  Thirtieth day, Mr. Cangelosi.

3              THE DEPUTY CLERK:  May 8th.

4              THE COURT:  May 8th, 2019 at 9 a.m. in this courtroom

5    in the unlikely event that a preliminary hearing is required.

6              Mr. McCoy.

7              UNIDENTIFIED SPEAKER:  Yes, Judge.

8              THE COURT:  Mr. McCoy, my heart goes out to you.

9    He's going to be living with you.  I hope you can get him back

10   on track.  And I appreciate your coming in this evening.

11             UNIDENTIFIED SPEAKER:  (INDISCERNIBLE)

12             THE COURT:  All right.  Is there anything else from

13   the government, Mr. Andrews?

14             MR. ANDREWS:  No, your Honor.

15             THE COURT:  Mr. Lawrence.

16             MR. LAWRENCE:  No, your Honor.  Thank you.

17             THE COURT:  Mr. Ser?

18             MR. SER:  No, your Honor.

19             THE COURT:  All right.  We'll stand in recess.  And

20   defendants can be released upon executing the appropriate

21   paperwork whereupon they will each report directly to Pretrial

22   Services across the hall.

23             THE DEPUTY CLERK:  All rise.  Court is in recess.

24

                                      ----

25

                  CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                              (914)390-4103

20218smccoybh

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   --------------------------------x

3   UNITED STATES OF AMERICA

4            v.                          19 CR 549(VB)

5                                        CONFERENCE

6   LORENZO McCOY,

7                Defendant.

8   --------------------------------x

9                                    United States Courthouse
                                     White Plains, N.Y.
10                                   August 28, 2019

11

12

13

14  Before:  THE HONORABLE PAUL E. DAVISON, Magistrate Judge

15

16

17                         APPEARANCES

    AUDREY STRAUSS
18       United States Attorney for the
         Southern District of New York
19  MATHEW ANDREWS
         Assistant United States Attorney
20

21  KERRY LAWRENCE
         Attorneys for Defendant McCoy
22

23

24

25  *Proceeding recorded via digital recording device.

                CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                          (914)390-4103

AS1

```
 1          THE DEPUTY CLERK:  United States of America against
 2   Lorenzo McCoy.
 3          Would the government please stand and note your
 4   appearance for the record.
 5          MR. ANDREWS:  Good afternoon, your Honor.  Mathew
 6   Andrews for the government.
 7          THE COURT:  Good afternoon, Mr. Andrews.
 8          THE DEPUTY CLERK:  Defense counsel, please note your
 9   appearance.
10          MR. LAWRENCE:  Good afternoon, your Honor.  Kerry
11   Lawrence present with Mr. McCoy, who's seated to my right.
12          THE COURT:  Good afternoon, Mr. Lawrence.
13          All right, Mr. Andrews, what have we got here?
14          MR. ANDREWS:  It's a hearing, your Honor, pretrial
15   violations of release.
16          THE COURT:  Okay.  What's the government's position
17   here?
18          MR. ANDREWS:  The government is not seeking remand
19   today.  We've discussed with Pretrial Services and Pretrial
20   Services I believe has a number of recommendations and also
21   specific requests for the Court in order to ensure the
22   defendant's compliance with the conditions of his pretrial
23   release.
24          I believe Pretrial might be able to speak more
25   specifically as to their recommendation
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

20218sm ccoybh

```
 1                THE COURT:  Mr. Pascual.

 2                PRETRIAL SERVICES OFFICER PASCUAL:  Thank you, your

 3    Honor.

 4                Pretrial is requesting that the defendant continue to

 5    to report to Pretrial Services on a consistent basis, that he

 6    stop using marijuana, attend substance abuse and mental health

 7    treatment and make the counselors available for discussions

 8    with Pretrial Services.

 9                THE COURT:  In other words, comply with the

10    conditions which were set when he was originally released.

11                PRETRIAL SERVICES OFFICER PASCUAL:  That's correct,

12    your Honor.

13                THE COURT:  All right.

14                Mr. Lawrence.

15                MR. LAWRENCE:  Your Honor, I and Mr. McCoy and his

16    family -- and his mother is present in the courtroom, and his

17    father, who drove the family down, dropped them off.  They got

18    delayed.  And I know coming to court on time for something like

19    this was important, but Mr. McCoy's parking the car.  I expect

20    he'll be walking in the courtroom momentarily.

21                Obviously, there's a list of conditions that

22    Mr. McCoy has not complied with.  I will note that -- and not

23    that it's an excuse.  At least, thankfully, none of the alleged

24    violations relate to him committing new crimes; although,

25    smoking marijuana is like -- I don't know.  It may or may not
```

1     be criminal, but it certainly is a violation of his conditions

2     of release.

3              Mr. McCoy did give me two letters, which I've given

4     to the Pretrial Services officer just moments ago, that shows

5     he has been recently attending drug treatment regularly as well

6     as mental health counseling.  And it has not been sporadic.

7     It's been somewhat regular over the last several weeks.

8              THE COURT:  Is this the provider arranged by Pretrial

9     Services?

10             MR. LAWRENCE:  No.  Apparently not.

11             And this is information that Pretrial just got today,

12    so they haven't been able to -- I mean, it does look like it's

13    a legitimate -- it is at Westchester --

14             UNIDENTIFIED SPEAKER:  Westchester Jewish Community

15    Services.

16             MR. LAWRENCE:  Westchester Jewish Family Services.

17             So, I mean, it is a real provider, but, obviously, it

18    should have been coordinated with Pretrial Services.

19             THE COURT:  You know, this is a crime of violence.

20    And this was some time ago that I released this defendant, but

21    it's coming back to me as we sit here, and I don't ordinarily

22    release people charged with crimes of violence.  My

23    recollection is I did so in this case because the parties

24    agreed to conditions, and I operate on the assumption that the

25    government is in a position to assess risks sometimes and

1    sometimes has access to information that the Court doesn't

2    have.  But now I'm being asked to do the same thing with the

3    same conditions even though the defendant hasn't been complying

4    with them.  Why should I do that, Mr. Lawrence?

5              MR. LAWRENCE:  Well, your Honor, I remember.  And you

6    were the arraigning judicial officer at the time.  And you were

7    a little queasy, I think, at the time about releasing Mr. McCoy

8    and the co-defendant, but you did agree to release him with

9    fairly strict conditions.

10             Obviously, Mr. McCoy should have recognized that he

11   received a big break by being released on Pretrial release in a

12   case like this and, you know, should have complied with

13   everything to the strict letter of every condition and he's not

14   done so.

15             My sense was that, when your Honor was reluctant to

16   release someone like this in a case like this, it was because

17   it was a crime of violence and there was perceived to be a risk

18   of danger to the community.  I don't think any of the

19   violations to date rise to the level of him being a risk -- you

20   know, a danger to the community, they just show that he's not

21   complying with the Court's orders.

22             THE COURT:  Right, but the other way of looking at

23   this is that this is an individual who got an unusual

24   opportunity and doesn't seem to be complying with conditions

25   which do not seem to me to be overly onerous.

1          MR. LAWRENCE:  Well, they -- in the ordinary course,

2     for some individuals, they may not be.  Certainly, smoking

3     marijuana is something that he should have the fortitude to

4     avoid doing.  That's a conscious decision he's making.  He does

5     have a history of mental health issues.  We have a pending

6     application with Pretrial Services for him to be accepted to

7     the Youthful Offender Diversion program.  That application

8     contained a number of medical records, mental health history.

9     So some of this is not just an individual who is just thumbing

10    his nose at the Court.  He has issues that require attention.

11    And at least I'm happy to see that he's provided documentation

12    that, albeit not with who Pretrial recommended, he is regularly

13    seeing a mental health professional and a drug counselor.

14          I'm going to ask that, since -- and I've talked to

15    Officer barrios at great length over the last several weeks,

16    and I know -- I think he's still the -- is he still the primary

17    supervising officer?  He believes that Mr. McCoy should not be

18    remanded and should be given an opportunity to try to comply

19    with the conditions.  So I'm going to ask that your Honor not

20    remand him and that he remain on bail.

21          I'm guessing that if we were back in front of you or

22    another judicial officer, whether it be a week from now or a

23    month from now or five months from now, and there's a track

24    record like this, that neither the Court nor the government nor

25    Pretrial Services are going to be looking to keep him out of

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1  jail, but I'm going to ask that your Honor allow him to remain

2  at liberty and see if collectively the Court and his family and

3  Mr. McCoy himself can get him to be compliant.

4        THE COURT:  These are the parents?

5        Remind me, how old is Mr. McCoy?

6        MR. LAWRENCE:  I think he's --

7        UNIDENTIFIED SPEAKER:  Twenty.

8        MR. LAWRENCE:  He's 20 now, was 19 at the time of the

9  offense.

10        THE COURT:  Mr. and Mrs. McCoy, if I can address you

11  that way, there is such a thing as giving somebody enough rope

12  to hang themselves.  You are familiar with that concept?

13        You know, Mr. McCoy, there's a list of conditions on

14  which you were released.  You received that in writing and it

15  was explained to you, right?

16        THE DEFENDANT:  Yes.

17        THE COURT:  You need to understand those are not

18  suggestions.  Those are not best practices of some kind.  You

19  have to comply with the conditions of your release; otherwise,

20  you leave the Court with no alternative but to send you to

21  jail.  Do you understand?

22        THE DEFENDANT:  Yes, your Honor.

23        THE COURT:  You know, you're charged with carjacking.

24        Mr. Lawrence, what do you think the incidence of

25  people being released in this court charged with carjacking are

1  on a percentage basis?

2          MR. LAWRENCE:  A very small percentage.

3          THE COURT:  Very small percentage.

4          So, Mr. McCoy, you really have an opportunity here

5  and it's going to be a darn shame if you blow it.  Do you

6  understand what I'm saying to you?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Okay.  If I re-release you on the same

9  conditions that you've been out on that you haven't been

10  complying, are you going to start to comply with them?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Okay.  You understand you need to work

13  with Pretrial Services.  You know, if there's some issue about

14  which treatment program you're going to go to, if there's some

15  convenience factor or something like that, you need to get

16  their approval.  You can't just sort of go off in a parallel

17  direction because that's what you would prefer to do.  Do you

18  understand?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  All right.  With some additional

21  queasiness, to adopt Mr. Lawrence's term, I'm going to release

22  Mr. McCoy on the same conditions he was released on on April

23  11th, 2019 because everybody is urging me to do so and,

24  frankly, I would prefer to enable Mr. McCoy to take advantage

25  of this rare opportunity and avoid the consequences that would

20218sm ccoybh

9

```
 1   flow from remanding him.

 2            So I'm going to order you released on the same

 3   conditions, Mr. McCoy, but this is your wakeup call.  This is

 4   your last chance.  This is your final opportunity.  And I want

 5   to be clear about that.  Do you understand?

 6            THE DEFENDANT:  Yes, your Honor.

 7            THE COURT:  Very well.

 8            Defendant remains at liberty.

 9            Is there anything else from the government?

10            MR. ANDREWS:  No, your Honor.

11            THE COURT:  Anything else from you, Mr. Lawrence?

12            MR. LAWRENCE:  No, your Honor.

13            THE COURT:  We'll stand in recess.

14            MR. LAWRENCE:  Thank you, Judge.

15

16                            - - - -

17

18

19

20

21

22

23

24

25
```

2019AVMCCOYCF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ----------------------------------x

3   UNITED STATES OF AMERICA

4           v.                                    19 CR 549(VB)

5                                                 CONFERENCE

6   LORENZO McCOY,

7                   Defendant.

8   ----------------------------------x

9                                        United States Courthouse
                                         White Plains, N.Y.
10                                       October 31, 2019

11

12

13
    Before:   THE HONORABLE PAUL E. DAVISON, Magistrate Judge
14

15

16
                            APPEARANCES
17
    AUDREY STRAUSS
18        United States Attorney for the
          Southern District of New York
19  MATHEW ANDREWS
          Assistant United States Attorney
20

21  KERRY LAWRENCE
          Attorney for Defendant
22

23  BRUCE KOFFSKY
          Attorney for Defendant
24

25  *Proceeding recorded via digital recording device.


              CHRISTINA M ARENDS-DIECK, RPR, RMR, CRR
                        (914)390-4103

```
1              THE DEPUTY CLERK:  In the matter of United States of
2    America against Lorenzo McCoy.
3              Would the government please stand and note your
4    appearance for the record.
5              MR. ANDREWS:  Good afternoon, your Honor.  Mathew
6    Andrews for the government.
7              THE COURT:  Good afternoon, Mr. Andrews.
8              THE DEPUTY CLERK:  Counsel, please note your
9    appearance for the record.
10             MR. LAWRENCE:  Good afternoon, your Honor.  Kerry
11   Lawrence.  I have been assigned to represent Mr. McCoy from the
12   day of his arrest and initial arraignment up through today, and
13   I'm asking to be relieved and have new counsel appointed for
14   Mr. McCoy.
15             THE COURT:  Okay.  Are you asking on his behalf or
16   what's the --
17             MR. LAWRENCE:  On his behalf, and I also believe it
18   would be appropriate, your Honor.
19             THE COURT:  All right.  And I will note that there
20   are a couple of recently filed documents on the docket,
21   including a letter from a Ms. Hodges.
22             Is that you, Ms. Hodges?
23             MS. HODGES:  Yes, it is.
24             THE COURT:  Yeah, I thought so.
25             And a document styled application for the Court to
```

```
 1    request pro bono counsel, which is, frankly, a form associated

 2    with civil cases, but I will construe it as an application to

 3    replace counsel in this instance.

 4            Mr. McCoy, you want me to discharge Mr. Lawrence and

 5    appoint Mr. Koffsky to represent you?

 6            THE DEFENDANT:  Yes, your Honor.

 7            THE COURT:  All right.  Let me just explain a couple

 8    of things to you.

 9            First of all, you're free to retain counsel of your

10    own choosing.  And I notice that Ms. Hodges' letter seeks time

11    to seek a "paid lawyer."  Mr. McCoy, you're always free to

12    engage private counsel.  You can do that at any point.  I have

13    no idea whether your family or some other benefactor has the

14    means to retain private counsel.  If you're going to do that, I

15    would encourage you to do so promptly because it's not in your

16    interest to keep switching attorneys.  But in the meanwhile, I

17    am going to grant your request to replace Mr. Lawrence if

18    that's what you really want.  Let me just tell you the way this

19    works.

20            You don't have the right to choose a court-appointed

21    attorney.  The Court will select an attorney to represent you.

22    On the other hand, we understand that there are circumstances

23    in which there are personality conflicts or other types of

24    conflicts that arise between court-appointed counsel and

25    criminal defendants, and my practice, which I think is
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

4

```
 1   consistent with how the situation is handled by many other
 2   judges, is to grant a change of counsel once based on a very
 3   limited showing that it's appropriate.  But I want you to
 4   understand a couple of things.
 5           Number one, Mr. Lawrence is an excellent attorney.
 6   He's very experienced.  He's well known to the Court and highly
 7   regarded in this Court.  I don't know what your issue with him
 8   is, and I'm not asking you to tell me, but you're asking to
 9   replace an excellent attorney with another excellent attorney,
10   Mr. Koffsky, who is also well known to the Court.  I just want
11   to make sure that you understand that if you're not happy with
12   Mr. Koffsky, this is not going to turn into a revolving-door
13   situation where we keep replacing your attorney.  Do you
14   understand that, Mr. McCoy?
15           THE DEFENDANT:  Yes.
16           THE COURT:  All right.  In light of everything I've
17   said, do you still want me to relieve Mr. Lawrence and appoint
18   Mr. Koffsky as your attorney?
19           THE DEFENDANT:  Yes, your Honor.
20           THE COURT:  Very well.
21           Mr. Lawrence, you're relieved.  I'll appoint
22   Mr. Koffsky to represent Mr. McCoy going forward.  Thank you
23   for your assistance.  I'm sure you will cooperate with
24   Mr. Koffsky and transfer him the file.
25           MR. LAWRENCE:  I've already given Mr. Koffsky all
```

 1  relevant file materials, and I'm certainly available to answer

 2  any questions he has going forward.

 3          THE COURT:  Thank you very much.

 4          All right, then, we will turn to the matter at hand.

 5          The grand jury has returned a superseding indictment

 6  in this matter.

 7          This is a superseding indictment?

 8          MR. ANDREWS:  That's correct, your Honor.

 9          THE COURT:  Okay.  It doesn't have the customary S in

10  the caption.  That's why I asked.

11          MR. ANDREWS:  I apologize, your Honor.

12          THE COURT:  Mr. McCoy, for the record, what's your

13  full name?

14          THE DEFENDANT:  Lorenzo Dimitri McCoy.

15          THE COURT:  How old are you?

16          THE DEFENDANT:  Twenty.

17          THE COURT:  How far did you go in school?

18          THE DEFENDANT:  I graduated.

19          THE COURT:  High school?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Okay.  And I can tell that you can speak

22  and understand English.  Is that right?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Within the past 24 hours, have you used

25  or taken any drugs, marijuana, alcohol, medication or pills of

1    any kind?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  You're clear in your head as you stand

4    here this afternoon?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Okay.  And you are represented here now

7    by your newly appointed attorney, Mr. Bruce Koffsky?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Mr. Koffsky, have you received a copy of

10   the superseding indictment --

11             MR. KOFFSKY:  I have, your Honor.

12             THE COURT:  -- and gone over the charges with

13   Mr. McCoy?

14             MR. KOFFSKY:  I have, your Honor.

15             THE COURT:  Are you satisfied he understands what

16   he's accused of?

17             MR. KOFFSKY:  Yes, your Honor.

18             THE COURT:  Does he waive the public reading?

19             MR. KOFFSKY:  We waive the public reading and enter

20   pleas to the two counts of the indictment.

21             THE COURT:  Not guilty pleas are entered.

22             Since this is a superseder, it has previously been

23   assigned to Judge Briccetti.

24             Is there anything else from the government,

25   Mr. Andrews?

```
 1            MR. ANDREWS:  Your Honor, at this time, I think it
 2   would be appropriate to address the defendant's continued bail.
 3   I think your Honor has had the benefit of being the judge at
 4   numerous different proceedings, including the initial
 5   presentment of the defendant as well as the violation hearing
 6   afterwards.  The government has reached out to Pretrial
 7   Services to ask them whether the defendant has started to
 8   comply with conditions of his pretrial release, and I believe
 9   that Pretrial Services stated that the only condition the
10   defendant is abiding by is his curfew; that he has been
11   uncooperative in other aspects and --
12            THE COURT:  Let them come in and file a petition or
13   something.  I mean, you're just sort of making an application
14   on Pretrial's behalf or -- I'm just -- the customary way this
15   comes to the Court's attention is Pretrial comes forward and
16   says somebody's not in compliance with their bail.  They're not
17   even here and you're asking me to take some action based on
18   your proffer of what Pretrial has observed.
19            MR. ANDREWS:  We can set a hearing, your Honor.
20   That's not a problem.
21            THE COURT:  Mr. Koffsky.
22            MR. KOFFSKY:  Well --
23            THE COURT:  You're at something of a disadvantage.  I
24   understand that.
25            MR. KOFFSKY:  Just a little, your Honor.
```

1          I think any discussion of bail conditions or a

2     modification of bail conditions would put me in hot water and

3     violate my client's Sixth Amendment rights because I know

4     absolutely nothing about him.  I wouldn't be in a position to

5     make any representations about whether he's complying or not

6     complying.

7          THE COURT:  You know what?  We're going to put this

8     on -- do you want a bail hearing?

9          MR. ANDREWS:  I will consult with Pretrial to make

10     sure that they would be amenable to a bail hearing.

11          THE COURT:  I mean, I'll schedule something this

12     afternoon, but I want to hear from Pretrial on this and I want

13     to give Mr. Koffsky an opportunity -- yes?

14          (Pause)

15          MR. KOFFSKY:  Your Honor, I have a contested matter

16     at 2 p.m. in a different courthouse in a different state, and

17     I'm requesting that the Court -- I would adopt what the Court

18     says.  If Pretrial thinks that the defendant --

19          THE COURT:  You know, I'm not adopting or not

20     adopting anything.  I just want to do this in regular order.

21          When do you need to leave?

22          MR. KOFFSKY:  I need to -- I think we need to go

23     upstairs to Judge Briccetti right now and report to him, and

24     then I need to be in a court in Bridgeport at 2 p.m.

25          THE COURT:  All right.  Let's schedule a bail hearing

```
 1    in this matter tomorrow.

 2             MR. ANDREWS:  Judge, I have to be in Manhattan

 3    tomorrow.  Would it be possible to schedule it for next week?

 4             THE COURT:  Mr. Cangelosi.

 5             MR. ANDREWS:  Tuesday, if possible.

 6             THE COURT:  I think I should probably do it.

 7             THE DEPUTY CLERK:  Can we do 12 noon on the 6th?

 8             MR. ANDREWS:  I have a takedown the next day, your

 9    Honor, about 27 individuals.  Would it be possible to do it on

10    Tuesday?

11             THE COURT:  That's up to Mr. Cangelosi.

12             How about noon on the 5th?

13             MR. KOFFSKY:  I'm available, your Honor.

14             MR. ANDREWS:  I'm available, your Honor.

15             THE COURT:  All right.

16             Mr. McCoy, I need you back here at 12 noon sharp on

17    November 5th, which is next Tuesday.

18             THE DEPUTY CLERK:  Correct.

19             THE COURT:  Very well.  All right.

20             Mr. Andrews, you should engage with Pretrial Services

21    and have them here and invite them to submit anything they

22    think is relevant in advance of that time.

23             MR. ANDREWS:  Yes, your Honor.

24             THE COURT:  Very good.

25             MR. KOFFSKY:  Thank you, your Honor.
```

**A68**

1

20219ctaylc

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   --------------------------------x

 3   UNITED STATES OF AMERICA

 4              v.                           19 CR 549(VB)

 5                                          CONFERENCE

 6   JORDAN TAYLOR,
     LORENZO McCOY,
 7
                  Defendants.
 8
     --------------------------------x
 9
                                        United States Courthouse
10                                      White Plains, N.Y.
                                        December 9, 2019
11

12

13

     Before:  THE HONORABLE VINCENT L. BRICCETTI, District Judge
14

15

16

                              APPEARANCES
17
     AUDREY STRAUSS
18        United States Attorney for the
          Southern District of New York
19   MATHEW ANDREWS
          Assistant United States Attorney
20

21   FEDERAL DEFENDERS OF NEW YORK, INC.
          Attorneys for Defendant Taylor
22   JASON SER

23

     BRUCE KOFFSKY
24        Attorneys for Defendant McCoy
     BY:  JASON SER
25
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

20219ctaylc

1          THE DEPUTY CLERK:  United States of America against

2     Jordan Taylor and Lorenzo McCoy.

3          Will counsel please note their appearance for the

4     record.

5          MR. ANDREWS:  Good morning, your Honor.  Mathew

6     Andrews for the government.

7          MR. SER:  Good morning, your Honor.  Jason Ser,

8     Federal Defenders, for Mr. Taylor, who is present in custody.

9     I'm also specially appearing on behalf of Mr. Bruce Koffsky

10    with regard to his client, Mr. McCoy, who is also present on

11    bond.

12         THE COURT:  Okay.  Have a seat, everybody.

13         First of all, I did get a letter from Mr. Koffsky

14    today.  It might have been -- actually, it was dated November

15    7th or something, which, obviously, is a typo, but the letter I

16    received today said that he was on trial and that he was unable

17    to be here and that he had spoken to you, Mr. Ser, about

18    covering for him for his client, Mr. McCoy.

19         MR. SER:  That is correct.

20         THE COURT:  And he said that he had spoken to

21    Mr. McCoy's mother, I believe, but it didn't mention that he

22    had spoken to Mr. McCoy.  So have you spoken to Mr. McCoy about

23    this?

24         MR. SER:  I did.  I spoke to his mom as well as with

25    him, and they agreed that I could specially appear today for

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

20219ctaylc

1  the adjournment.

2          UNIDENTIFIED SPEAKER:  That's not true, your Honor.

3          THE COURT:  Keep your hands down, please.

4          Mr. McCoy, the defendant, could you stand, please.

5          Mr. Ser is offering, graciously offering, to cover

6  for his colleague, Mr. Koffsky, who is on trial, solely for

7  scheduling purposes.  He's not your lawyer.  He's just covering

8  for your lawyer for today only.  Is that okay with you, sir?

9          UNIDENTIFIED SPEAKER:  He's not sure.

10          THE COURT:  Mr. Ser, can you help me out here,

11  please.

12          MR. SER:  I can.  Can I have one moment, your Honor?

13          THE COURT:  Sure.

14          Have a seat, sir.

15          (Pause)

16          MR. SER:  Thank you, your Honor.

17          I think, if you ask Mr. McCoy again, I anticipate him

18  consenting.

19          THE COURT:  Mr. McCoy, do you consent to having

20  Mr. Ser cover for your attorney for today's purposes only?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  All right.  Have a seat.

23          Mr. Ser, thank you for doing that, number one.

24          And number two, the matter was scheduled for 2:30

25  today and you've made yourself available three hours earlier,

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

20219ctaylc

1  and I very much appreciate that, but you're doing that because,

2  evidently, Mr. McCoy was here early and his parents were here

3  early.  But the case was definitely scheduled for 2:30 today.

4  So I want to thank you for doing that.

5          MR. SER:  My pleasure, your Honor.

6          THE COURT:  Okay.

7          Mr. Andrews, what's going on in this case?

8          MR. ANDREWS:  Your Honor, this is a case involving a

9  carjacking.  The two defendants beat up the victim and

10  subsequently stole his car.

11          THE COURT:  I'm more interested in what's happening

12  with discovery and are you aware of any motions, is there any

13  plea discussions, that kind of thing, because you have been

14  here before, so I know what the case, generally speaking, is

15  about.

16          MR. ANDREWS:  Understood.

17          Discovery has been turned over.  There are plea

18  negotiations ongoing.  And there's going to be some additional

19  discovery for Mr. Taylor as well.

20          THE COURT:  For?  I'm sorry?

21          MR. ANDREWS:  For Mr. Taylor.

22          But all the discovery for Mr. McCoy has been turned

23  over.

24          THE COURT:  Okay.

25          Mr. Ser, what do you want to do?

20219ctaylc

1      MR. SER:  Your Honor, I think an adjournment is

2  required for a couple reasons.  One, with regard to Mr. Taylor,

3  there is outstanding discovery that we anticipate being made

4  available probably in the next week or so.  And then, on

5  Mr. Koffsky's behalf, he's fairly new to the case.  He said he

6  received discovery on Friday and he needs approximately six

7  weeks to be able to review it all given his trial schedule.

8      THE COURT:  Is that true?  He only received discovery

9  on Friday?  I mean, he was appointed in this case on October

10 31st.  That's about six weeks ago.

11     MR. ANDREWS:  Your Honor, because of the size of the

12 discovery, we requested that Mr. Koffsky provide us with an

13 external hard drive.  The fact that it was only produced on

14 Friday is because there was a delay in us getting that external

15 hard drive.  Within I believe a day or so of receiving it, we

16 turned over discovery.

17     THE COURT:  All right.  Fair enough.  It's not

18 because the government was not ready, willing and able to do

19 so.  You just didn't have the hard drive on which to put it.

20     MR. ANDREWS:  Absolutely.

21     THE COURT:  I get that.  All right.

22     So it looks like you've agreed on another date,

23 January 22nd, 11 a.m.

24     Does that date work for Mr. Koffsky?  Well, it's

25 going to have to work because he's not here today, so --

**A73**

6

20219ctaylc

1          MR. SER:  He said six weeks.  That's approximately
2   six weeks.
3          THE COURT:  You tell him that I'm not going to give
4   him an adjournment.  He needs to be here that day no matter
5   what.
6          MR. SER:  I'll let him know.
7          THE COURT:  Okay.
8          Now, on that date, which is January 22nd, you need to
9   let me know on that date, Mr. Ser, and you can communicate this
10  to Mr. Koffsky, as well, whether your respective clients intend
11  to make any motions or whether we should just schedule the case
12  for trial.  By then, the case will have been pending since
13  April.
14         The case was -- defendants were arrested in April, it
15  looks like.  Is that right?  Of this year.
16         MR. ANDREWS:  That's correct, your Honor.
17         THE COURT:  So that will be nine months into the
18  case.  That's plenty of time to know which direction this case
19  is going.  And so you're going to need to tell me, both of you,
20  you and Mr. Koffsky, and I'll rely on you to communicate that
21  message to Mr. Koffsky, which direction this case is going when
22  you come back on January 22nd.
23         MR. SER:  We'll be prepared to let the Court know
24  exactly what is going on and what we prefer.
25         THE COURT:  Okay.  So I'm going to adjourn the matter

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

7

20219ctaylc

1  until January 22nd at 11 a.m.

2          Mr. McCoy is out on bail.  That status will continue.

3  Mr. Taylor has been detained.

4          What exactly is the status for Mr. Taylor; bail

5  status, that is?

6          MR. SER:  Your Honor, we consented to detention.  He

7  had been released at the initial appearance, but, based upon

8  events while on pretrial supervision, we consented to him

9  returning to custody.

10          THE COURT:  All right.  So, at least for now, he's

11  detained pending the outcome of the case.  Of course, you know

12  that you can always make another application.  That's up to

13  you.  And if you want to do so, ordinarily I would want you to

14  make it to the magistrate judge in the first instance.  If

15  there are new facts or new circumstances that would warrant

16  bail, you should make that application to the magistrate judge

17  in the first instance.

18          MR. SER:  I will.  Thank you, your Honor.

19          THE COURT:  So you have the right to do that.  I just

20  want to make sure you know that.  I know you know that, but I

21  want to put that on the record.  Of course you know that.

22  You've been before me 500 times.

23          Okay.  Anything else we need to do today, other than

24  address an application for an exclusion of time under the other

25  Speedy Trial Act?

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

20219ctaylc

1          MR. ANDREWS:  Nothing from the government.

2          MR. SER:  Nothing, your Honor.

3          THE COURT:  Okay.

4          Mr. Andrews.

5          MR. ANDREWS:  Your Honor, we would seek an exclusion

6     under the Speedy Trial Act so that defense counsel can review

7     discovery and that the parties can engage in ongoing

8     discussions that would obviate a need for a trial.

9          MR. SER:  No objection.

10          THE COURT:  All right.  The Court excludes time.  The

11     Court grants that application and excludes time under the

12     Speedy Trial Act from today through and including January 22nd,

13     2020.  I find that the ends of justice served by granting the

14     requested continuance outweigh the best interests of the public

15     and the defendants in a speedy trial for the reasons stated on

16     the record by Mr. Andrews.

17          Have a good holiday, everybody, and I'll see you on

18     January 22nd at 11 a.m.

19          MR. SER:  Thank you, your Honor.

20

21                              ----

22

23

24

25

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

**A76**

1

200122taylorC                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4           v.                              19 Cr. 0549 VB

5   JORDAN TAYLOR;

6   LORENZO MCCOY,

7               Defendants.

8   ------------------------------x
                                    United States Courthouse
9                                   White Plains, N.Y.
                                    January 22, 2020

10

11  Before:

12              THE HONORABLE VINCENT L. BRICCETTI,

13                                          District Judge

14
                            APPEARANCES
15

16  GEOFFREY S. BERMAN
         United States Attorney for the
17       Southern District of New York
    MATHEW ANDREWS
18       Assistant United States Attorney

19  BRUCE KOFFSKY
         Attorney for Defendant Lorenzo McCoy
20

    Federal Defenders
21       Attorney for Defendant Jordan Taylor
    JASON I. SER
22

23

24

25

            SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
                        (914)390-4053

200122taylorC               Conference

1                (In open court)

2                THE DEPUTY CLERK:  In the matter of the United States

3   v. Jordan Taylor and Lorenzo McCoy.

4                Would counsel please state your appearances,

5   beginning with the government.

6                MR. ANDREWS:  Good morning, your Honor.  Mathew

7   Andrews for government.

8                MR. SER:  Jason Ser for the Federal Defenders for

9   Mr. Taylor and he is present in custody.

10               MR. KOFFSKY:  Good morning, your Honor.  Attorney

11  Bruce Koffsky for Mr. Lorenzo McCoy, who stands with me at

12  counsel table.

13               THE COURT:  Okay.  Have a seat, everybody.

14               Let's see.  When you were last here on December 9,

15  actually, I think Mr. Ser was covering for Mr. Koffsky who was

16  on trial I believe at that time, but in any event, we

17  conferenced the case on December 9.  The government advised me

18  that discovery had been turned over, although there was some

19  additional discovery from Mr. Ser's client.  We adjourned the

20  matter until today.

21               Where do we stand, Mr. Andrews?  What's going on with

22  this case?

23               MR. ANDREWS:  Discovery has been turned over.  From

24  speaking to Mr. Ser and Mr. Koffsky, I understand Mr. Koffsky

25  is going to be requesting a brief adjournment so additional

                    SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
                                (914)390-4053

**A78**

200122taylorC                    Conference

1    evaluations can be done on his client, to make sure that if a

2    disposition happens before trial, that all necessary

3    evaluations are done so that disposition can meet the Court's

4    standards for a potential plea.

5            THE COURT:  Well, Mr. Koffsky, that hands the ball

6    off to you.  What do you want to do?

7            MR. KOFFSKY:  I'm going to request a two-month

8    adjournment and the reasons are as follows.

9            First of all, I did receive the discovery passel of

10   material from the government, that included cell phone

11   extractions, video information, local police department

12   information, and I received it just as I was starting a trial

13   in front of Judge Scofield downtown.  It was a racketeering

14   murder trial that went on most of December.  I've just begun to

15   review that information with my client.

16           In addition, I've reviewed other information that was

17   given to me by prior counsel, which causes me to believe that

18   in order to adequately communicate with my client and

19   communicate with the Court and communicate with the government

20   about what is in my client's best interests, that I need a full

21   evaluation about some traumas he had in the past and to make

22   sure that if and when we stand in front of the Court and make

23   an application, either for trial or to enter a plea, that it's

24   knowing, voluntarily and of his own free will.

25           And I think in order to do that, I'm going to need to

200122taylorC                    Conference

 1   get records, records that may take a little bit of time to

 2   collect, and also apply to the Court for permission to get

 3   authorization to get somebody who does a competent evaluation

 4   that the Court will believe in and trust and allow us to go

 5   forward.  And in order to do all of that, I think at least 60

 6   days is appropriate.  I'm making that application.

 7             THE COURT:  Well, I think that's reasonable.  The

 8   only question I have is how does that affect Mr. Ser's client

 9   situation.

10             Mr. Ser, are you in agreement with this 60-day

11   adjournment?

12             MR. SER:  I am.  I spoke with my client and explained

13   to him the ramifications about obviously being in the same case

14   with the adjournment request.  We will join in that.  We have

15   our own reasons for additional time, whether it's negotiations

16   with the government, which are ongoing, but we had also made

17   application for Mr. Taylor in the, I guess what I call the

18   diversion program downtown with Judge Netburn, which is the

19   Young Adult Opportunity Program.  I'm still pushing on that.

20   So I think additional time will be helpful for me in that

21   regard as well, so I'm certainly not going to object to it.  I

22   think it will give us additional time to do some other things

23   as well.  And I'll simply defer at this point to the needs of

24   Mr. Koffsky.

25             THE COURT:  Okay.  That's fine.  I'm just wondering

200122taylorC                    Conference

1  whether two months is enough time because, first of all, you do

2  have to make that application.  It's on you to make that

3  application for authorization to hire a mental health

4  professional.  I'm sure I'll grant it.  I'm sure you'll have

5  reasons why it makes sense, and I'm highly likely to grant that

6  application, but you've got to do it.  And then you have to get

7  somebody and you've got to get the records and you have to

8  arrange for your client to meet with whoever it is who is going

9  to evaluate him.  That takes some time.  And there's got to be

10  a report.  You're going to want to make a report, presumably, I

11  would think, in writing.

12          MR. KOFFSKY:  That's correct.

13          THE COURT:  So I'll give you -- the date you've

14  agreed upon apparently is March 23rd at 2:30 p.m.  I'm

15  willing to give you that date, but I'm just wondering whether

16  we should make it longer, maybe make it 90 days.

17          MR. KOFFSKY:  May I have a moment with counsel, your

18  Honor.

19          THE COURT:  Okay.

20          (Pause)

21          MR. KOFFSKY:  We'll take -- I've actually had this

22  very situation in front of the Court on another matter, the

23  Court recalls Meki Davis.  And it did take a couple of court

24  dates to actually get the evaluation done.  So if the Court

25  would give us a date 90 days down the road, I'll either have it

200122taylorC                    Conference

1    or I'll certainly be closer to having it then.

2            THE COURT:  Well, you need to get going on this.  I

3    know you're busy.  You had another trial; that's fine.  But

4    this case has been pending for a while now.

5            Let's see.  Your client is Mr. McCoy.  He was

6    arrested in April of 2019, so it's already been nine months.

7            Anyway, let's see if we can give them a date in the

8    later part of April, Donna, or the latter part of April, I

9    should say.  I know we have a couple of trials.

10            THE DEPUTY CLERK:  We're going to be on trial the

11    last week --

12            THE COURT:  The week of April 20th, perhaps?

13            THE DEPUTY CLERK:  How about Friday, April 24th,

14    2020 at 2:30 p.m.?

15            THE COURT:  How does that work for everybody?

16            MR. ANDREWS:  That works for the government.

17            MR. KOFFSKY:  That works.

18            THE COURT:  Mr. Ser.

19            MR. SER:  I may be away, but I can get Ms. Brody to

20    stand in for me so I don't hold this up.

21            THE COURT:  What we'll do is adjourn it to

22    April 24th.  I just feel like two months would not be enough

23    time; that's all, Mr. Koffsky.  I know you're doing your job as

24    best you can, but it takes time to do this, and you want to do

25    it right.

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

7

200122taylorC                Conference

1          At this point, you're not making any kind of a formal

2     motion for a competency evaluation or anything like that.

3     You're just saying that you want to have -- in your

4     professional judgment, you believe it's appropriate for your

5     client to receive a meaningful mental health evaluation by a

6     psychologist or psychiatrist who is qualified to do that in

7     order to assist you going forward in whatever way you feel the

8     case is going to go forward.

9          Is that a fair statement?

10         MR. KOFFSKY:  Yes, that's correct.

11         THE COURT:  Because an actual motion for a competency

12    hearing is a whole different kettle of fish.  You're not doing

13    that.

14         MR. KOFFSKY:  I am not.  I'm aware of people being

15    sent to Butner for evaluations.  That is not what this is, your

16    Honor.

17         THE COURT:  Okay.  Got it.  Well, then, I'll adjourn

18    the matter until April 24th at 2:30 p.m.

19         Other than an application for an exclusion of time

20    under the Speedy Trial Act, is there anything else we need to

21    do today?

22         MR. SER:  No, your Honor.

23         MR. ANDREWS:  No your Honor.

24         MR. KOFFSKY:  No, your Honor.

25         THE COURT:  Mr. Andrews.

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

200122taylorC                    Conference

1          MR. ANDREWS:  Your Honor, we would seek an exclusion

2   of time so that defense counsel can seek the agreed-upon mental

3   health evaluation of his client, as well engage in pretrial

4   discussions with Mr. Ser's client with the hope of having a

5   pretrial disposition.

6          THE COURT:  Any objection?

7          MR. KOFFSKY:  No, your Honor.

8          MR. SER:  No objection.

9          THE COURT:  The Court grants that application and

10  excludes time under the Speedy Trial Act from today through and

11  including April 24th, 2020.  I find that the ends of justice

12  served by granting the requested continuance outweigh the best

13  interests of the public and the defendants in a speedy trial

14  for the reasons stated on the record by Mr. Andrews.

15         Thank you all very much.

16         The defendant McCoy's bail is continued.  I just

17  want to remind myself of what that is.  It looks like he was

18  released on a personal recognizance bond, and I'm not aware of

19  any problems that have come up.  So in any event, that bail is

20  continued.  And Mr. Taylor's detention status is continued as

21  well.

22         I'll see you April 24th.

23         THE DEPUTY CLERK:  All rise.

24         (Adjourned)

25              - - -

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────x

UNITED STATES OF AMERICA

            v.               19 CR 549 (VB)

JORDAN TAYLOR,
LORENZO McCOY,

               Defendants.
───────────────────────────────x
               U.S. Courthouse
               White Plains, N.Y.
               April 24, 2020
               2:30 p.m.


Before:  HON. VINCENT L. BRICCETTI,
          United States District Judge


APPEARANCES

UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF NEW YORK
300 Quarropas Street
White Plains, N.Y. 10601
BY: MATHEW ANDREWS
Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK, INC.
BY: JASON I. SER, Esq.
52 Duane Street, 10th Floor
New York, N.Y. 10007
Attorney for Defendant

KOFFSKY & FELSEN, LLC
BY: BRUCE D. KOFFSKY, Esq.
1150 Bedford Street
Stamford, CT 06905
Attorney for Defendant

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter

```
 1              THE COURT:  Good afternoon.  This is Judge
 2   Briccetti.
 3              THE CLERK:  United States of America against Jordan
 4   Taylor and Lorenzo McCoy, 19 CR. 549.  On the phone, Judge, we
 5   have Lorenzo McCoy and his counsel Bruce Koffsky.  We have
 6   Attorney Jason Ser for Defendant Taylor, who is not on the
 7   phone, and we have A.U.S.A. Mathew Andrews for the Government,
 8   and our court reporter Sue Ghorayeb.  And also on the phone we
 9   have Lorenzo McCoy's mother and father.  That's Lorenzo McCoy
10   and Jill Hodges.
11              THE COURT:  Okay.  Good afternoon everybody.
12              Before we start, Mr. Andrews, you're on the phone?
13              MR. ANDREWS:  That's correct, Your Honor.
14              THE COURT:  Why didn't you order Mr. Taylor?
15              MR. ANDREWS:  I thought that the -- I thought that
16   the marshals had been made aware about a court order.
17   Frankly, that was not the case.
18              THE COURT:  We never -- Mr. Andrews, Mr. Andrews,
19   that's never our responsibility.  We issue orders all the
20   time, but it's the U.S. Attorney's Office responsibility to
21   order defendants for conferences whether it's in person or by
22   telephone or otherwise.  That's always been the case, nothing
23   new about that.  Anyway --
24              MR. ANDREWS:  Understood, Your Honor.
25              THE COURT:  -- Mr. Ser -- Mr. Ser, what do you want
```

1   to do about this?

2           MR. SER:  Well, I'm going to waive my client's

3   presence on the phone.  I've been in constant contact with

4   him.  He was aware of the conference today, and I gave him an

5   idea about what might happen.  So, I think he's -- I can

6   consent to his presence being waived.

7           THE COURT:  All right.  Well, I'll accept that.

8           You know, unlike certain kinds of proceedings,

9   under the Federal Rules of Criminal Procedure, a routine

10  status conference like this does not actually require the

11  Defendant's appearance.  But, of course, it will be different

12  for a trial or even for sentencing or for a guilty plea, but

13  for a status conference like this, it's not required.  So, in

14  other words, I can hold it even without him, even if I wanted

15  to do that on my own.  Of course, that's generally a bad

16  idea.  The defendants ought to be present for their own

17  criminal proceedings.

18          So, the bottom line is that he doesn't actually

19  have a right to be here under the law, but I appreciate the

20  fact, Mr. Ser, that you're willing to waive his appearance.

21  He would like to be here, but he's not.  Of course, the law

22  does not obligate him to be here and you're waiving him.  So,

23  I appreciate that.  Thank you.

24          All right.  You had also submitted a written

25  consent form to proceed by telephone conference, which I'm

1   not going to use, because it includes a line for the

2   Defendant's signature, his name, and of course he is not

3   appearing by teleconference.  So, I'm just going to ignore

4   that for this purpose.  Is that okay with you?

5          MR. SER:  Yes, Your Honor.

6          THE COURT:  All right.  And as far as Mr. McCoy is

7   concerned, I received a written consent to proceed by video or

8   telephone conference from Mr. Koffsky.  The law permits me

9   to -- well, a couple of things.  First of all, a written

10  consent is not, strictly speaking, required, but it's also not

11  a bad idea, so I'm all in favor of it.  It does permit me to

12  sign, after obtaining verbal consent from the Defendant, Mr.

13  McCoy, it does permit me to sign his name.

14         So, first of all, Mr. Koffsky, have you spoken to

15  Mr. McCoy about the fact that we are not conducting

16  proceedings in person at the present because of -- because of

17  the public health crisis, and have you also spoken to him

18  about his consent to proceed by telephone conference under

19  the circumstances?

20         MR. KOFFSKY:  I have, Your Honor.  I've explained it

21  to him.  I've explained it to him in the presence of his

22  parents.  He understands the situation as it is right now and

23  he agrees -- he agreed that I should file the consent form,

24  and that Your Honor would allocute him as to his knowledge and

25  his agreement with having this proceeding take place over the

```
 1    telephone, and that Your Honor would then sign Lorenzo McCoy's
 2    signature to that document as if he had signed it himself.
 3               THE COURT:  Thank you.  Mr. McCoy, have you
 4    discussed consenting to appear by telephone conference at
 5    today's conference?
 6               THE DEFENDANT:  Yes, Your Honor.
 7               THE COURT:  And have you discussed that with Mr.
 8    Koffsky?
 9               THE DEFENDANT:  Yes, Your Honor.
10               THE COURT:  And do you consent to participate by
11    telephone conference today?
12               THE DEFENDANT:  Yes, Your Honor.
13               THE COURT:  Okay.  I'm going to sign your name, as
14    the law permits me to do, and then we'll docket that order
15    with respect to that consent.  We'll docket that, that form, I
16    should say.
17               All right.  Well, the last time I saw you on this
18    case was in January.  It feels like it was a really long time
19    ago, because a lot has happened in the last three months.
20    But, at that time, I was told that all discovery had been
21    provided.  Mr. Ser told me that he was trying to work out a
22    disposition.  Mr. Koffsky told me that he wanted to have a
23    mental health evaluation done, and I know that I approved his
24    request for CJA funds to pay for a qualified forensic
25    psychologist or psychiatrist, and I think I even did that
```

1    before that conference, but I do very clearly recall

2    approving that.  But that's it.  I haven't heard a word from

3    you since then.

4              So, where do we stand on the case as of now?

5              Let me ask Mr. Ser first.  What's going on with

6    your case, Mr. Ser?

7              MR. SER:  Right now, as far as negotiations go, I've

8    made an application to the Young Adult Opportunity Program in

9    Manhattan for Mr. Taylor.  A few weeks ago, the Magistrate and

10   District Judge overseeing the program had me down for a

11   conference to discuss Mr. Taylor's case.  Mr. Taylor has not

12   been accepted into the program, unfortunately, and so I've

13   been discussing a potential alternative with both Mr. Andrews

14   and Mr. Koffsky, because I think we're going to try to do

15   something as a group.

16             So, the initial plan for the program in the City

17   has not come to fruition, and so we have to explore avenue

18   two, and I anticipate having a written submission to the

19   Government either today or Monday pushing that alternative,

20   which I've discussed with the Government.

21             This is a very -- it's a different case because of

22   my client's background, which is why I wanted to exhaust the

23   program in the City as opposed to do these concurrently,

24   because I felt that the program in the City offered him the

25   best options by way of succeeding in the future.  So, I

Sue Ghorayeb,  Official Court Reporter

1    ordinarily would have done these concurrently, but I figured

2    let's do that out of discretion based upon the priority over

3    the Young Adult Opportunity Program first.

4           THE COURT:  All right.  Well, that's fine.

5    Obviously, I'll give you an adjournment to see whether you can

6    work something out with the Government, but you also said that

7    you're trying to do this jointly with the co-defendant; is

8    that right?

9           MR. SER:  Well, yes, because it's a co-defendant

10    case, I think, you know, that disposition probably would have

11    to be a joint disposition to some degree.  So, we are trying

12    to work together to reach an agreement.  That's correct, Your

13    Honor.

14           THE COURT:  Okay.  Well, you don't really have to

15    tell me exactly what you're proposing, because that's really

16    none of my business, at least, at this point.  But what you do

17    need to tell me, both of you, Mr. Ser and Mr. Koffsky, is how

18    much time do you reasonably need in order to continue your

19    discussions with the Government in this regard?

20           MR. KOFFSKY:  Your Honor, this is Attorney Koffsky.

21           I'm going to be asking for a lengthy continuance

22    and I'm going to explain to the Court why, and I'll also give

23    the Court a little bit of the background on why I need a

24    continuance.

25           Your Honor is absolutely correct.  We were in front

1    of the Court at the last week in January, and at that court

2    appearance, I indicated that prior to being able to resolve

3    the case or counsel my client as to whether a trial or an

4    alternative disposition was appropriate, I needed to get some

5    background information on his education and his mental

6    health, because there had been issues as to his mental health

7    raised in prior pleadings by his prior attorney.

8           The Court indicated that I should file an

9    application for funds and I did.  A week later, I've sent in

10   an application, but first I found a psychiatrist who was in

11   the Peekskill area and affiliated with a facility that had

12   already engaged in treatment with Mr. McCoy, and this doctor

13   indicated that she was willing to go forward if her -- if she

14   was approved by the Court.

15          On February 7th, I submitted an application for

16   approval of funds to chambers and was told by chambers that I

17   should -- I needed to file it through the ECF program.

18          On February 11th, I drafted the application and

19   filed it via ECF through the e-voucher program and didn't

20   receive a response approval until March 2nd.

21          On March 2nd, I got in touch with the doctor that

22   we had engaged and indicated that she -- that she now had

23   authorization to go forward.  In the interim, we had

24   requested medical records from -- one, two, three, four,

25   five, six -- seven facilities, in addition to educational

1    records, and we were all ready to go forward and send the

2    records and schedule interviews with this doctor when the

3    Coronavirus pandemic shut everything down.

4         The doctor we have engaged has not been able to

5    interview Lorenzo.  Lorenzo's treatment at his outpatient

6    facility has stopped, both his individual and his group

7    counseling have stopped as a result, and as the Court might

8    imagine, the evaluation and examination that I hoped to have

9    at this point has barely even gotten off the ground.

10        As a result of that, I'm going to request at least

11   another 90 days, because as far as I can tell, the doctor we

12   have engaged is not going to engage in telemedicine with Mr.

13   Lorenzo McCoy, and I might -- I'm going to have to wait until

14   she's able to have a face-to-face meeting with him and get

15   all the records that we have collected, or I'm going to have

16   to make alternate arrangements, and that's where we are.

17        THE COURT:  Okay.  Well, first of all, I don't

18   recall exactly when you filed your application to me, but I'm

19   sure that I granted it the same day, because that's the way I

20   normally do it.  So, I'm not sure what you mean by filing it

21   and then waiting weeks for it to be approved.  Certainly it

22   wasn't -- it didn't take weeks for me to approve it.  I would

23   have approved it that day.  But that's sort of neither here at

24   this point -- that's neither here nor there at this point,

25   because you're telling me it wasn't approved until, I think

1   you said, March 2nd.

2          MR. KOFFSKY:  March 2nd.  That's my e-mail approval,

3   Your Honor, March 2nd.  And, Your Honor, I'm not indicating in

4   any way that chambers -- it might have been something that I

5   did.  I'm just taking a look at my e-mails and just -- you

6   know, it was probably my fault in failing to file something,

7   Your Honor.

8          I'm just indicating to the Court, when I filed

9   this, I had no expectation that, you know, the system as we

10  knew it was going to come to a halt.  I had every expectation

11  that we were going to be either finished with an evaluation

12  or, you know, well along the way of having it resolved.

13         THE COURT:  Well, you know, I am aware that these

14  kinds of evaluations are generally being done remotely, either

15  through some videoconferencing device, like Zoom or Facetime

16  or Skype, or any, any, any number of other ways to do it, or

17  by telephone.  So, I'm a little bit perplexed by what you say

18  regarding this particular doctor.  He or she just refuses to

19  do it except in person.  That's really not going to work for

20  us.  You're going to have to make other arrangements, is the

21  bottom line.  You're going to have to find someone who can do

22  it either by video or -- by videoconference or telephone

23  conference, because, you know, this gotta get done.  This is a

24  criminal case.  The matter has got to move forward.

25         Your doctor won't do it even if there is social

1    distancing?  I mean, I need a little more detail here, Mr.

2    Koffsky.  I just feel like -- I'm not, I'm not satisfied, to

3    be brutally honest.

4            MR. KOFFSKY:  Well, some other information -- I

5    don't have any other information to give to the Court right

6    now.  I can indicate to the Court that me and my office have

7    been in contact or attempted to contact this doctor on March

8    2nd, when it was approved.  On March 6th, on March 9th, we

9    reached out again regarding a capacity eval for Lorenzo on

10   March 15th.  I apologize, but that's what I have in front of

11   me, Your Honor.

12           THE COURT:  When did you find out that this doctor

13   would not do it except in person?

14           MR. KOFFSKY:  That's the information I have from my

15   office, Your Honor.

16           THE COURT:  Mr. Koffsky.

17           MR. KOFFSKY:  Yes, Your Honor.

18           THE COURT:  You're going to have to proceed with a

19   little bit more speed, okay?  That's, that's simple as that.

20           I mean, we're not just going to put this thing on

21   hold because your doctor is giving you the runaround and then

22   you not pursuing an alternative doctor.  I mean, you gotta do

23   one or the other.  You gotta have this person do what you say

24   he or she has been hired to do or you gotta get somebody

25   else.  You can't just do nothing.

1          It feels like you're doing nothing.  It feels like

2    you've done nothing since mid-March.  Now we're in late

3    April, and that's at least six weeks later or it's

4    approximately six weeks later, and nothing has happened.  And

5    I'm not, I'm not really -- you're not giving me any details

6    as to what you've been doing in the meantime to move this

7    matter along.

8          All right.  Well --

9          MR. KOFFSKY:  I will, I will reach back out to the

10   doctor, Your Honor, and find out if there's any way that she

11   can make some headway to evaluate Mr. McCoy and, if not, I

12   will find somebody else who can.

13         THE COURT:  It seems to me like you should have done

14   that at least a month ago or maybe six weeks ago.  You said,

15   "Well, I'll reach out to the doctor."  What are you waiting

16   for?

17         Mr. Andrews, what do you have to say about all

18   this?

19         MR. ANDREWS:  Well, in connection with the -- in

20   connection with the discussions about the type of disposition

21   for Mr. Taylor, certainly what's going on is accurate.  The

22   sort of latest proposal, I mean, I only found out about today.

23   However, I understand that Mr. Ser is going to be filing an

24   application certainly this Monday.

25         And in terms of Mr. Koffsky's application for an

1    adjournment of time, we would consent to that, particularly

2    given the current circumstances.  But, of course, discovery

3    has been turned over, and if the Court wants to set a motion

4    schedule or a trial date or anything like that, we are fully

5    prepared and ready to go.

6              THE COURT:  Well, I suspect that the defense lawyers

7    do not want me to set either a motion schedule or a trial

8    date.  Is that right, Mr. Koffsky?

9              MR. KOFFSKY:  That's correct, Your Honor.

10             THE COURT:  Mr. Ser.

11             MR. SER:  That's correct, Your Honor.

12             THE COURT:  Mr. Ser, you didn't tell me how much of

13   an adjournment you think was appropriate -- you think is

14   appropriate?

15             MR. SER:  I'll defer to Mr. Koffsky.  I know he has

16   more of a need than I do at this point.  It all depends on how

17   quickly, you know, Mr. Koffsky feels he can get what he needs

18   to do, do done.  So, rather than my proposing time, I'll defer

19   to, to Your Honor and Mr. Koffsky on the length of any

20   adjournment.

21             THE COURT:  Well, that's fine, except your client is

22   the one in jail, right?

23             MR. SER:  Yes, Your Honor.

24             THE COURT:  He's got more of an interest in moving

25   this matter along more quickly than does Mr. McCoy.  Mr.

1   McCoy --

2          MR. SER:  I don't want -- I'm fine with the 90 days.

3   I think, you know, depending on how quickly the Government

4   obviously can review my submission, but if it's a group, you

5   know, effort.  Obviously, Mr. Koffsky, you know, requires

6   things to be done.  So, I just don't want to ask for a date

7   that would end up shortcutting Mr. Koffsky's client on what he

8   needs.  But I understand Your Honor's concerns, but I would

9   defer to the Court and Mr. Koffsky.

10          THE COURT:  All right.  Well, I'll adjourn the

11  matter for approximately 90 days.  We'll give you a date the

12  last week in July.

13          Donna, see if you can find something.

14          THE CLERK:  Yes.

15          THE COURT:  Mr. Koffsky, that is plenty of time to

16  do what you need to do.  You've already had plenty of time in

17  my opinion.  You've had three months to do this and you need

18  to move more quickly, it is simple as that.  If your doctor

19  can't do it, then get somebody else to do it.  There's

20  probably -- I don't know -- several thousand qualified

21  forensic psychologists around who will be perfectly willing to

22  do this, and I don't know this for sure, but I'm reasonably

23  confident that many of them would be willing to do it

24  remotely.

25          MR. KOFFSKY:  I apologize to the Court --

Sue Ghorayeb,  Official Court Reporter

```
1              THE COURT:  Mr. Andrews --

2              MR. KOFFSKY:  -- and I will, I will begin the

3   process immediately, Your Honor.

4              THE COURT:  Yes.  See, that's -- when you say stuff

5   like that, that's what really irks me the most.  "I will begin

6   the process immediately."  We had this conversation three

7   months ago, so the beginning of the process part should have

8   been taken three months ago or six weeks ago, not today.  But,

9   anyway, I'll give you, I'll give you the adjournment that you

10  asked for.

11             Also -- see, now, I'm not sure exactly what

12  disposition you're looking for, but I'm not sure that that

13  necessarily depends on what you get back from a forensic

14  psychologist.  I mean, I'm not saying it's not relevant, but

15  there has been no claim here that your client is not

16  competent.  So, anyway, I'll give you 90 days.  We need to

17  get going on this, okay?

18             We -- the court has been working.  When I say the

19  court, I don't just mean me.  I mean my staff, I mean other

20  people who support the court.  The Clerk's Office have been

21  working extremely hard to keep, keep the courts open, because

22  we kinda think that is important, an understatement.  And it

23  frustrates me when I sense that someone is not sharing that,

24  that same desire to move things along, as opposed to just

25  say, "oh, well, I'll throw my hands up in the air because
```

1    nothing has happened."  That's not true that nothing has

2    happened.  The court is open every single day.  Things are

3    happening.  Cases are coming in.  Cases are getting disposed

4    of.  Motions are made.  Motions are resolved.  Basically, the

5    only thing that we're not doing right now are trials.

6    Everything else is going forward, so you need to -- you need

7    to get on board with that, okay?

8              MR. KOFFSKY:  Yes, Your Honor.

9              THE COURT:  Donna, can we get a date in late July.

10             THE CLERK:  Wednesday, July 29th, at 11:00 o'clock

11   in the morning.

12             THE COURT:  Does that work for everybody?

13             MR. SER:  Yes, Your Honor.

14             MR. KOFFSKY:  Yes, Your Honor.

15             MR. ANDREWS:  Yes, Your Honor.

16             THE COURT:  All right.  And if Mr. -- for now anyway

17   that will -- you should assume that that's going to be in

18   person, because I am confident that by three months from now,

19   that while we might not be doing trials, we will be doing in

20   person conferences, particularly in criminal cases.  I can't

21   say that definitively, but I know that there is a lot of work

22   going on right now to figure out how to get back into regular

23   business in the courthouse -- courthouses.  If that changes,

24   then it has to be by phone.  Of course, we'll let you know,

25   but for now you can assume that it will be in person.

1          And, Mr. Andrews, it's your responsibility to order

2    the Defendants either in person or by telephone.  That's your

3    job, okay?

4          MR. ANDREWS:  Understood.

5          THE COURT:  All right.  Other than an application

6    for exclusion of time under the Speedy Trial Act, is there

7    anything else we need to do today?

8          MR. SER:  No, Your Honor.

9          THE COURT:  Anybody?  Okay.  Mr. Andrews, can you

10   make an application, if you'd like.

11         MR. ANDREWS:  Yes, Your Honor.  We seek an exclusion

12   of time for the reasons set forth on the record by both

13   defense counsel, and we are currently engaging in discussion

14   to obviate the need for a trial, as well as the broader

15   circumstances involving COVID.

16         THE COURT:  Any objection?

17         MR. SER:  No objection.

18         MR. KOFFSKY:  No, Your Honor.

19         THE COURT:  Okay.  Both Defendants do not object.

20         All right.  The Court excludes time under the

21   Speedy Trial Act from today through and including July 29th,

22   2020.  I find that the ends of justice served by granting the

23   requested continuance outweigh the best interests of the

24   public and the Defendants in a speedy trial for the reasons

25   stated on the record by Mr. Andrews.

Sue Ghorayeb,  Official Court Reporter

1               All right.  I'll see you on July 29th.

2               Before you go, I just want to remind Mr. Koffsky

3    and Mr. McCoy that we have another conference, a bail review

4    conference scheduled for 10:00 a.m., on Monday, April 27th.

5               Mr. McCoy is not in custody, so, Mr. Andrews, you

6    don't have to order him, but that will be by telephone.

7               And I assume that you're available for that, Mr.

8    Koffsky?

9               MR. KOFFSKY:  I am, Your Honor.

10              THE COURT:  And Mr. McCoy.

11              THE DEFENDANT:  Yes.

12              THE COURT:  Yes, you are?

13              THE DEFENDANT:  Yes, Your Honor.

14              THE COURT:  Okay.  We'll -- we'll convene another

15   telephone conference April 27th, at 10:00 a.m., that's Monday

16   at 10:00 a.m., with respect to Mr. McCoy's bail review.

17              All right.  Thank you very much.  Have a nice day.

18              MR. SER:  Thank you, Your Honor.

19              (Case adjourned)

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

UNITED STATES OF AMERICA

                    v.                    19 CR 549 (VB)

JORDAN TAYLOR,
LORENZO McCOY,

                         Defendants.
————————————————————————x
                         U.S. Courthouse
                         White Plains, N.Y.
                         September 10, 2020
                         9:00 a.m.


Before:  HON. VINCENT L. BRICCETTI,
              United States District Judge


APPEARANCES

UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF NEW YORK
300 Quarropas Street
White Plains, N.Y.  10601
BY:  MATHEW ANDREWS
Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK, INC.
BY:  JASON I. SER, Esq.
52 Duane Street, 10th Floor
New York, N.Y.  10007
Attorney for Defendant

KOFFSKY & FELSEN, LLC
BY:  BRUCE D. KOFFSKY, Esq.
1150 Bedford Street
Stamford, CT  06905
Attorney for Defendant


Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter

```
 1              THE COURT:  Good morning.  This is Judge Briccetti.
 2              THE CLERK:  United States of America against Jordan
 3    Taylor and Lorenzo McCoy, 19 CR. 549.  On the phone is
 4    Assistant U.S. Attorney Mat Andrews for the Government.  For
 5    Mr. McCoy, we have his counsel, Bruce Koffsky, along with Mr.
 6    McCoy and his mother, Ms. Hodges, and we have Jordan Taylor
 7    and his attorney, Jason Ser, your court reporter and your
 8    staff.
 9              THE COURT:  Okay.  Good morning everybody.
10              First of all, we are proceeding by telephone
11    conference, of course.  As to Mr. McCoy, I received a consent
12    to proceed by video or teleconference form signed by Mr.
13    Koffsky.  It's dated -- actually, it doesn't have a date, but
14    we can fix that, but it was submitted on September 8th and it
15    states that:  "Mr. McCoy, having been informed by undersigned
16    counsel of his right to be physically present in court for
17    the matter identified below, hereby voluntarily consents to
18    participate in the following proceedings via tele-
19    conferencing," and specifically the box for conference before
20    judicial officer is checked and it's electronically signed by
21    Mr. Koffsky.
22              Mr. Koffsky, did you discuss this matter with your
23    client, Mr. McCoy?
24              MR. KOFFSKY:  Yes, I did, Your Honor.
25              THE COURT:  And, Mr. McCoy, can you just confirm
```

1    that Mr. Koffsky discussed this matter with you?

2              Mr. McCoy.

3              DEFENDANT McCOY:  Yeah, he did.

4              THE COURT:  Okay.  You're there, right?

5              You can hear me okay?

6              Mr. McCoy, can you hear me okay?

7              DEFENDANT McCOY:  Yes.  I'm sorry.  Can you repeat

8    yourself, Your Honor?

9              THE COURT:  I guess the answer is no then.  Can you

10   hear me okay?

11             Mr. McCoy, are you there?

12             DEFENDANT McCOY:  Yes, I'm here, Your Honor.

13             THE COURT:  Can you hear me?

14             DEFENDANT McCOY:  Yes, I can hear you.

15             THE COURT:  Okay.  So, are you voluntarily

16   consenting to appear today by telephone after discussing your

17   right to appear in person with your attorney?  Yes or no?

18             DEFENDANT McCOY:  Yes.

19             THE COURT:  All right.  I'm going to -- if you give

20   me permission, I'll sign your name on the form.  Do you give

21   me that permission?

22             DEFENDANT McCOY:  Yes.

23             THE COURT:  All right.  I'm doing that right now.

24   I'm adding my signature to the form.  Today's date is

25   September 10th, 2020, and we will docket that.

Sue Ghorayeb,  Official Court Reporter

1          Okay.  Moving on to Mr. Taylor, I received a

2   similar consent form from Mr. Ser.  Let's see.  I'm not sure

3   when I got it.  I think I got it yesterday.  I got it

4   yesterday.  And, Mr. Taylor, can you hear me?

5          DEFENDANT TAYLOR:  Yes, sir.  Yes, Your Honor.

6          THE COURT:  And did you discuss with Mr. Ser your

7   right to appear in person at today's proceeding and also

8   discuss whether you should voluntarily consent to participate

9   by telephone?

10         Did you discuss all that with your attorney?

11         DEFENDANT TAYLOR:  Yes, Your Honor.

12         THE COURT:  And do you voluntarily consent to

13  participate by telephone conferencing today?

14         DEFENDANT TAYLOR:  Yes, Your Honor.

15         THE COURT:  All right.  Mr. Ser, can you just also

16  confirm that you had that discussion with your client?

17         MR. SER:  Yes, Your Honor, I can confirm I had that

18  discussion.

19         THE COURT:  All right.  Okay.  So, again, Mr.

20  Taylor, with your permission, I'm going to sign your name on

21  the form.  Do I have your permission to do that?

22         DEFENDANT TAYLOR:  Yes, Your Honor.

23         THE COURT:  Okay.  And I've signed the form as well,

24  so that will also get docketed.

25         All right.  I was informed in the last few days

Sue Ghorayeb,  Official Court Reporter

1    that Mr. Taylor is prepared to enter a guilty plea in this

2    case, so we will do that in a moment, but I have not been

3    told that by Mr. McCoy, so we need to have a status

4    conference with respect to Mr. McCoy.

5          So, Mr. Koffsky, what's happening in this case and

6    what would you like me to do at this point?

7          MR. KOFFSKY:  Thank you, Your Honor, and good

8    morning.  If the Court will recall, in April, the Court gave

9    me both authorization and sufficient time to have a

10   psychological evaluation done on Mr. McCoy; that was

11   completed, and as a result of that, I submitted a lengthy

12   request to have a resolution considered by the Government.

13         Mr. Andrews and I are still in the process of

14   trying to resolve the case and get a firm offer from the

15   Government.  I know there has been a question of my client's

16   juvenile record, and we're in the process of trying to get a

17   copy of that from the Pretrial Office.

18         So, I would make one of two recommendations or two

19   requests from the Court:  Either to continue the matter for

20   30 days, so that Mr. Andrews and I can have an opportunity to

21   iron out a disposition in this case, and then I can have

22   fruitful discussions with my client, or if the Court wants to

23   calendar the matter for motions, then I would ask for a six-

24   or eight-week date for the filing of motions, and I would

25   notify the Court within four weeks whether we have a

1    disposition or whether we -- you know, whether I'll be filing

2    motions.

3          THE COURT:  Well, I think we can do both.  I mean,

4    if we're going to put it over for 30 days in the hope but

5    not -- obviously, it's not a certainty, but in the hope that

6    you will reach a disposition, then the fact that we have a

7    motion schedule for some time after that, obviously, that

8    would become moot if there was a disposition in 30 days, and

9    if there isn't a disposition in 30 days, well, then, you

10    already have your schedule for motions.  So, why can't we just

11    do both?

12          MR. KOFFSKY:  That, that would work fine with, with

13    Mr. McCoy, Your Honor.

14          THE COURT:  All right.  Okay.  Mr. McCoy is not in

15    custody as I recall; is that right?

16          MR. KOFFSKY:  That is correct, Your Honor.

17          THE COURT:  Well, it's just so complicated to

18    schedule things nowadays.  I would like to -- you know what,

19    I'm just going to schedule the next conference to be in

20    person.

21          What I've -- what I've been -- the practice that

22    I'm following is -- there have been a couple of exceptions.

23    But the practice that I've been following is that if it's a

24    routine status conference in a criminal matter, I've been

25    doing those remotely, just to minimize the number of people

1    coming in and out of the courthouse, and, you know, if we can

2    do it remotely and there is consent to do so, then why not.

3    However, I have been doing pleas and sentences in person

4    unless I can make the appropriate findings under the CARES

5    Act, and we will address that in a moment with Mr. Taylor.

6         But what I would prefer to do is schedule it for an

7    in-person conference, which if there's going to be a

8    disposition, we'll do it in person on that day, and if there

9    is not a disposition, we'll still -- we'll still do it in

10   person, or maybe we'll just convert it to a telephone

11   conference.  You know, we'll see.  But for now I'm going to

12   schedule the next conference for Mr. McCoy in person, okay?

13        Is that all right with you, Mr. Koffsky?

14        MR. KOFFSKY:  Yes, it is, Your Honor.

15        THE COURT:  So, I just want to give you a realistic

16   date, however.  You said 30 days.  Is that realistic?

17        MR. KOFFSKY:  Well, you know, I think -- you know,

18   again, we are waiting for some paperwork from Pretrial.  If it

19   gets here tomorrow, 30 days would be great.  If it takes two

20   weeks to get, then it might not.  So --

21        THE COURT:  Well, that's the problem, of course.

22        MR. KOFFSKY:  Yeah.

23        THE COURT:  Why don't we go 45 days, in other words,

24   to sort of mid-October.  And, actually, the week of October

25   5th, which would be 30 days, I'm actually on trial that week,

1   jury trial.  So that's not a great week for me, although I

2   could squeeze it in, of course.

3          Why don't we say sometime the week of October 19th,

4   maybe toward the end of that week.  Forty-five days would be

5   October 23rd or 24th by my quick count.

6          Donna, can we accommodate them for an in-person

7   proceeding on or about October 23rd?

8          THE CLERK:  Yes.  How about Friday, October 23rd;

9   how about 2:30 in the afternoon?

10          THE COURT:  Okay.  Does that work for you, Mr.

11   Koffsky?

12          MR. KOFFSKY:  It does, Your Honor, and -- yes, it

13   does, Your Honor.

14          THE COURT:  Mr. Andrews, does that also work for

15   you?

16          MR. ANDREWS:  Your Honor, I'll be on trial, but I

17   will have it covered.

18          THE COURT:  Okay.  Thank you for that.

19          Now, in terms of a motion schedule, what sort of

20   motions -- if you're not able to reach a resolution, what

21   sort of motions do you anticipate making, Mr. Koffsky?

22          MR. KOFFSKY:  Your Honor, my focus has been on --

23   well, maybe I can -- if the Court can set a date, I can report

24   to the Court on the 23rd what, if any, motions are going to be

25   made in the case.  So --

Sue Ghorayeb,  Official Court Reporter

```
 1              THE COURT:  Okay.  I usually ask the question
 2   because it gives me some information that helps in deciding
 3   what the date is.  But you said -- we've already pushed it out
 4   more than six weeks.  So, how about if I give you a date about
 5   two months from now to file motions, which will be November
 6   9th?
 7              MR. KOFFSKY:  That will be more than enough time,
 8   Your Honor.
 9              THE COURT:  All right.  And it also informs how much
10   time the Government will need to respond, because it depends
11   on what the motions are.  But you know what, I'm going to go
12   with November 9th for the Defendants -- for Defendant McCoy's
13   motions and November 23rd for any response from the Government
14   and -- no, strike that.  I'm going to say November 30th, three
15   weeks for the Government, and then two weeks after that for
16   any reply.  All right.  So, November 9th, November 30th and
17   December 14th.
18              But the only date that I'm going to set right now
19   is October 23rd, at 2:30 p.m.  The only, only conference date
20   is October 23rd, at 2:30 p.m.  Is that satisfactory, Mr.
21   Koffsky, all of those dates?
22              MR. KOFFSKY:  They are, Your Honor.  Thank you very
23   much.
24              THE COURT:  And Mr. Andrews?
25              MR. ANDREWS:  Yes, Your Honor.
```

1      THE COURT:  Okay.  All right.  I'm going to release
2   Mr. McCoy from the phone call and Mr. Koffsky as well, unless
3   there's something else that either Mr. Andrews or Mr. Koffsky
4   want to raise.  Is there anything else you want to raise, Mr.
5   Koffsky or Mr. Andrews?
6      MR. ANDREWS:  No, Your Honor.
7      THE CLERK:  Speedy trial, Judge.
8      THE COURT:  I will get to that.
9      Mr. Koffsky?
10      MR. KOFFSKY:  No, nothing, Your Honor.  Thank you.
11      THE COURT:  Mr. Andrews, can you make an application
12   under the Speedy Trial Act?
13      MR. ANDREWS:  Yes, Your Honor.  We seek an exclusion
14   of time so we can continue discussions to potentially reach a
15   disposition without the need for trial, as well to give Mr.
16   Koffsky sufficient time to prepare his motions he wants to
17   file in this case.
18      THE COURT:  Any objection, Mr. Koffsky?
19      MR. KOFFSKY:  No, Your Honor.
20      THE COURT:  All right.  The Court excludes time
21   under the Speedy Trial Act from today through and including
22   October 23rd, 2020.  I find that the ends of justice served by
23   granting the requested continuance outweigh the best interests
24   of the public and the Defendant in a speedy trial for the
25   reasons stated by Mr. Andrews.

Sue Ghorayeb,  Official Court Reporter

1        You may or may not have heard about the scheduling

2   protocol that we are now operating under for trials, a trial

3   scheduling protocol.  There is a lot of details, but one very

4   important detail is, because of the need to maintain -- in

5   light of the limitation on the availability of courtrooms and

6   jurors themselves, we are doing this, at least for now, on a

7   quarterly basis.  So, all of the trials for the fourth

8   quarter of 2020 have already been set.  We can't add anything

9   to that schedule.

10        It's important that we have this conference on

11  October 23rd no matter what, whether there's a plea or not,

12  because if there's not a plea, I need to talk to you on that

13  date about a trial date in the first quarter of 2021, since I

14  need to put in that request by no later than November 15th.

15  All right.  Just be aware of that and come prepared for that

16  on October 23rd, if that's what we need to do.

17        All right.  Mr. McCoy and Mr. Koffsky, you're

18  welcome to stay on the phone, of course, but you don't have

19  to and you can hang up if you want.

20        MR. KOFFSKY:  Thank you, Your Honor.

21        THE COURT:  Both of you, have a good day and stay

22  safe.

23        MR. KOFFSKY:  Thank you, Your Honor.

24        DEFENDANT McCOY:  Thank you, Your Honor.

25        (Case adjourned USA v. McCoy)

              Sue Ghorayeb,  Official Court Reporter

**A113**

1

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ---------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                                  Case No. 19-cr-0549
 5      -vs-

 6  LORENZO McCOY,

 7                          Defendant.

 8  ---------------------------------------x

 9                              United States Courthouse
                                White Plains, New York
10
                                October 23, 2020
11                              2:37 p.m.

12
    B e f o r e:
13
                                HONORABLE VINCENT L. BRICCETTI
14
                                District Judge
15

16  A P P E A R A N C E S:

17  AUDREY STRAUSS
         United States Attorney for the
18       Southern District of New York
    KEVIN SULLIVAN
19       Assistant United States Attorney

20
    KOFFSKY & FELSEN, LLC
21  BRUCE D. KOFFSKY
         Attorney for Defendant

22

23

24

25
```

```
 1              THE COURT:  Good afternoon, everybody.

 2              THE DEPUTY CLERK:  United States of America versus

 3  Lorenzo McCoy.  Would counsel please note their appearance for

 4  the record?

 5              MR. SULLIVAN:  Good afternoon, Your Honor.  Kevin

 6  Sullivan on behalf of the government.

 7              THE COURT:  Welcome.

 8              MR. KOFFSKY:  Good afternoon, Your Honor.  Attorney

 9  Bruce Koffsky.  I am appointed counsel for Mr. Lorenzo McCoy.

10              THE COURT:  And what's up with Mr. McCoy?

11              MR. KOFFSKY:  Your Honor, it's my understanding that

12  Mr. McCoy arrived here with his father and notified court staff

13  that he was not feeling well.  I'm not sure of the particulars,

14  but he said he was feeling nauseous and possibly running a

15  fever.  He was outside sitting on the cement steps in front of

16  the courthouse.  His father was with him.

17              I indicated that -- I think it was agreed by all that

18  he shouldn't come into the court and into the courtroom, so I

19  indicated to him that I would let him know what happened today

20  and advise him of the Court's actions.

21              THE COURT:  All right.  Is it fair to say that he

22  authorized you to appear today in his absence?

23              MR. KOFFSKY:  Yes, Your Honor.

24              THE COURT:  What was going to happen today if he had

25  managed to get inside the courthouse or inside the courtroom?
```

1          MR. KOFFSKY:  The last time we were on, Your Honor,

2     there was some discussion with Mr. Ser and the co-defendant

3     about resolving his case.  The Court put this matter down to

4     find out whether that was, in fact, going to happen.

5          THE COURT:  It did happen.

6          MR. KOFFSKY:  And it did happen.

7          THE COURT:  Taylor's case is resolved.

8          MR. KOFFSKY:  Yes.  Mr. Taylor's case.  And the Court

9     put this matter down to see if it was going to happen for

10    Mr. McCoy, and if it didn't happen, I believe the Court set a

11    motions date for defense motions for November 9th.

12         THE COURT:  All right.  Well, are you saying that you

13    did not anticipate there to be a plea today, or you did, or what

14    did you expect was going to happen today?

15         MR. KOFFSKY:  I expected to let the Court know that my

16    client had not authorized me to notify the Court that he was

17    going to change his plea from not guilty to guilty.

18         THE COURT:  Okay.  I am just trying to figure out

19    where we go from here, Mr. Koffsky.  I mean, I have set a motion

20    schedule, and we have that.  I could give you another date to

21    come back and see me, but I'm not going to set a trial date.  It

22    seems premature to set a trial date in this case.

23         Have there been plea discussions?

24         MR. KOFFSKY:  I have not been authorized by my client

25    to --

102320.3                        PROCEEDINGS                        4

```
 1              THE COURT:  No.  That's not the question.  Have there

 2    been plea discussions between you and Mr. Sullivan?

 3              MR. KOFFSKY:  I have received a Pimentel letter from

 4    the government, Your Honor.  Just so the Court knows --

 5              THE COURT:  Go ahead.

 6              MR. KOFFSKY:  When I first replaced prior counsel,

 7    Mr. Kerry Lawrence, as a result of the breakdown in

 8    communication -- mostly between Mr. Lawrence and my client's

 9    mother -- I began working on this matter; and the first thing we

10    did was my client and I approached the government with an eye

11    towards sending this matter back to the state for prosecution

12    because we thought that it was -- needless to say, we -- that

13    didn't happen.

14              Thereafter, I presented the government with a very

15    large package of medical records, psychiatric records, school

16    records with an eye towards trying to convince the government to

17    defer the prosecution, and so there has been a lot of work that

18    went into the case to try to resolve it in that way.

19              When that didn't happen, we discussed what the

20    sentencing possibilities of my client, and that resulted in my

21    getting a Pimentel.

22              I have had many conversations with my client.  In

23    fact, earlier this week I put on a very lengthy Zoom PowerPoint

24    presentation for my client, his mother, and his father so that

25    they were aware of the evidence, the elements of the crime, and
```

102320.3                              PROCEEDINGS                              5

1   how the elements of the crime might be satisfied by the

2   government in reaching proof beyond a reasonable doubt on each

3   and every element of the case.

4        It's my understanding that after that presentation,

5   chambers got a call from my client's mother.  So --

6        THE COURT:  Yeah, we don't really -- I mean, this does

7   happen sometimes.  Usually it's a defendant who reaches out to

8   me directly because they would like to have like a little

9   private conversation with me.  They definitely don't want the

10  government involved, and they don't want their own lawyer

11  involved, either.  It's unusual for someone other than the

12  client to reach out to me, in this case the client -- the

13  defendant's mother.

14       It's completely inappropriate.  She tried to extract

15  information from us and provide information from us, primarily

16  about you, and we told her, no.  That's not how you do things.

17  Talk to Mr. Koffsky.  And, you know, if you want to make an

18  application, you can make it through Mr. Koffsky.

19       So I would appreciate if you would tell her, don't

20  call the judge.  It does not help you or your son.  Could you

21  convey that message, please?

22       MR. KOFFSKY:  I did.

23       THE COURT:  I am sure you already have but --

24       MR. KOFFSKY:  I did.

25       THE COURT:  -- tell her what I just told you.

**A118**

1           MR. KOFFSKY:  I did immediately, Your Honor, and I

2    will do so again.

3           And subsequent to my conversation, I have received no

4    word from my client or his family on my making an application to

5    the Court, so -- and I will not unless I am directed to.  I

6    don't believe any communication has -- I believe I can still

7    communicate with my client.  So --

8           THE COURT:  You know, the case is a year and a half

9    old.  My notes say that -- well, actually Mr. Taylor was

10   arrested first, so I think Mr. McCoy came in later; but anyway,

11   certainly about a year -- no.  I take that back.  McCoy was

12   arrested also in April.

13          That's right.  They were both arrested, but only one

14   of them was initially indicted, and then eventually the second

15   one was indicted.

16          MR. KOFFSKY:  If the Court will remember, the Court

17   gave me authorization to get a psychologist to conduct an

18   investigation.  It took some months to both get a psychiatrist

19   on board and then have that psychiatrist, psychologist engage in

20   virtual conversations with the client and the mother and the

21   receipt of medical records, school records, psychiatric records.

22   So that is in some way some reason why it's taken so long to get

23   to this point, Your Honor.

24          THE COURT:  Well, look, you've got a motion schedule.

25   We are going to stick to that, but here is the problem:  If your

**A119**

1 client doesn't want to plead guilty, that's fine.  Of course, he

2 doesn't have to plead guilty, but the only alternative to that

3 is a trial.  There is no middle ground.  It's either you go to

4 trial or you plead guilty.

5          So if he doesn't want to plead guilty, that's fine.

6 At some point I've got to set a trial date.  I am not going to

7 do it now just because I just -- I feel it's still a little

8 premature.  I'm going to give another conference date in mid

9 December because the briefing schedule for the motions runs

10 through December 14th.

11          First of all, do you anticipate filing any motions?

12 Are there any motions to be made in this case?

13          MR. KOFFSKY:  You know what, I don't believe so, Your

14 Honor.  Nothing of substance jumps out at me.  No statements.

15 Nothing was seized.  So I'm not sure there will be any

16 substantive motions, and it's a relatively short period of time,

17 the crime alleged, and so I wouldn't think that a Bill of

18 Particulars is appropriate.  So I will review again, and if

19 there is motions, I will file them.  If not, I will notify the

20 Court that I won't be filing motions.

21          THE COURT:  Yes.  If you don't file them on

22 November 9th, that would be notice that you are not filing them.

23 I mean, that's the date to file.

24          I mean, why don't we do this?  Why don't I give you a

25 date in -- well, let me just back up.  You know that we have a

 1  whole protocol for scheduling of trials.  I don't really have

 2  control over my own docket in that regard.  What I can do is

 3  request a trial date from a master calendar.  The deadline for

 4  requesting a trial date for the first quarter of 2021 is

 5  November 15th.  That's the deadline.  So if I don't request a

 6  trial date by November 15th for the first quarter of 2021, it's

 7  not happening in the first quarter of 2021, which means the

 8  earliest it would be would be the second quarter of 2021.  So --

 9          MR. KOFFSKY:  The only thing I would add to that, Your

10  Honor, is that my client is out, and if the Court was looking to

11  move cases where defendants have speedy trial claims and had

12  been in, this would not rise to the top of the --

13          THE COURT:  Well, I understand that, but of course

14  it's not just me.  It's the government, too.  I mean, they

15  brought the case, and presumably, they want to resolve the case.

16          In other words, everybody has different interests

17  here.  Your client has certain interests.  I have certain docket

18  control interests, and the government has -- you know, they are

19  representing the United States, so they have certain interests

20  as well.

21          What do you suggest I do, Mr. Sullivan?  You have been

22  very patient.  The options are:  I don't want to set a trial

23  date right now.  It just feels premature to me, but what I could

24  do is I could have everybody back in before November 15th, which

25  is only a few weeks from now, and if there are no motions, and

102320.3                          PROCEEDINGS                          9

```
 1  he is -- Mr. Koffsky said at this point he doesn't anticipate

 2  filing motions, but he is not quite ready to say definitively --

 3  I think that's the gist of what you just told me.

 4          MR. KOFFSKY:  That is correct, Your Honor.

 5          THE COURT:  I mean, I could schedule a conference for,

 6  you know, November 14th or something, and if there are no

 7  motions, and there is no plea, then I could set a tentative

 8  trial date at that time.  Or alternatively, I could continue the

 9  case to a somewhat later date, maybe mid December, in which case

10  no way would there be a trial in the first quarter; but I could

11  still set a trial at that point -- or a tentative trial

12  anyway -- but it would be the second quarter of 2021.

13          So with that sort of landscape, what do you think is

14  the best way to go?

15          MR. SULLIVAN:  Your Honor, I think it makes sense,

16  respectfully, to set a conference date for November 14th so we

17  can assess whether there is a potential trial date to be had in

18  the first quarter.

19          THE COURT:  All right.  Is it the government's view

20  that the case should be tried one way or the other?

21          MR. SULLIVAN:  Yes, Your Honor.

22          THE COURT:  That's the thing --

23          MR. SULLIVAN:  Resolved one way or the other, of

24  course.

25          THE COURT:  What's that?
```

102320.3                              PROCEEDINGS                              10

```
 1              MR. SULLIVAN:  Resolved one way or the other.

 2              THE COURT:  Well, resolved --

 3              MR. SULLIVAN:  Yes.

 4              THE COURT:  -- but trial dates have a way of focusing

 5     people's attention --

 6              MR. SULLIVAN:  Yes.

 7              THE COURT:  -- I have learned.  I mean, that's an

 8     understatement, but that's certainly the case.

 9              Let's do this:  Let's give you a date before

10     November 15th.  Well, November 15th is a Sunday.  So it would

11     have to be by November 13th.  It's only a couple of weeks from

12     now.  That's only three weeks from now, but I think that's the

13     best way to go because either Mr. McCoy will decide that he does

14     want to take a plea pursuant to the Pimentel or not; and if the

15     answer is not, and there are no motions, then I don't really see

16     anything left to do other than setting a trial date, and I think

17     that's the way to go, and we will set a trial date in --

18     probably in March at that point.

19              So let's do that, Donna.  Can we give them a date on

20     November 13th?

21              THE DEPUTY CLERK:  Yes.  How about 11:00 on Friday,

22     November 13th?

23              MR. SULLIVAN:  That's fine for the government, Your

24     Honor.

25              MR. KOFFSKY:  The time is?  I am sorry.
```

 1          THE DEPUTY CLERK:  11:00 a.m.

 2          MR. KOFFSKY:  Thank you.

 3          THE COURT:  Now, see, here is the other thing, we --

 4  you know, it's unfortunate what happened today, but if we are

 5  not doing the plea or a sentence, I generally try to do regular

 6  scheduling conferences by telephone.  So, you know, I am not

 7  sure what's going to happen here.  I mean, I suppose we could

 8  do -- why don't way say this?  Why don't we say in person

 9  because at least there is a possibility that there is going to

10  be a disposition.

11          Would you agree with that, Mr. Koffsky?  There is a

12  possibility of a disposition?

13          MR. KOFFSKY:  There is always a possibility of a

14  disposition, Your Honor.  I would also want to make sure -- I'm

15  less concerned about my client -- although I am concerned about

16  him as well -- who might take the position that coughing on the

17  steps of the courthouse results in a lengthy continuance, and so

18  why not try that yet again?  And I think having an in-person

19  court appearance in not too long a time will also focus the

20  client's and his family's consideration.

21          THE COURT:  Well, for now, we are going to make it in

22  person.  He is out, so we don't have the other issues that we

23  often have with the marshals and the number of detained

24  defendants that can be in the building at one time.  We don't

25  have those issues.  So we will schedule it for an in-person

102320.3                    PROCEEDINGS                    12

 1 | appearance on November 13th at 11:00.  Possible plea.  And if
 2 | it's not a plea, and if there's been no motions filed, then I am
 3 | going to set a trial date.
 4 |         Even if there are motions filed, I might set a trial
 5 | date, but certainly if there aren't motions filed, I will set a
 6 | trial date.
 7 |         How is that?
 8 |         MR. SULLIVAN:  Thank you, Your Honor.
 9 |         THE COURT:  Okay.  So November 13th at 11:00.
10 |         All right.  Is there anything else we need to do other
11 | than an application for a speedy trial exclusion?
12 |         MR. SULLIVAN:  Other than the application, no, Your
13 | Honor.
14 |         THE COURT:  Anything else besides that?  Go ahead and
15 | make your application, Mr. Sullivan.
16 |         MR. SULLIVAN:  Your Honor, we would respectfully
17 | request that time be excluded under 18 U.S.C. 3161(h)(7)(A) so
18 | that the motions can be prepared, if they are to be prepared,
19 | pursuant to the schedule set by the Court, and so that the
20 | parties can continue to discuss if there is going to be a
21 | resolution in this case, and if not, prepare for trial.
22 |         THE COURT:  Any objection?
23 |         MR. KOFFSKY:  No, Your Honor.
24 |         THE COURT:  Okay.  The Court excludes time under the
25 | Speedy Trial Act from today through and including November 13th,

**A125**

1   2020.  I find that the ends of justice served by granting the

2   requested continuance outweigh the best interests of the public

3   and the defendant in the speedy trial reasons stated on the

4   record.

5            Mr. Koffsky, or Mr. Sullivan, for that matter, I'd

6   really appreciate it, if it is going to be a plea on that day,

7   please let us know ahead of time.  Okay?

8            MR. SULLIVAN:  Certainly.

9            THE COURT:  If there isn't, there isn't.  That's okay,

10  but if there is, let us know ahead of time because it tends to

11  take a little bit longer than a routine scheduling conference.

12  Plus, of course, there is going to be some paperwork associated

13  with it.  Not much if it's a Pimentel.  It's basically the

14  Pimentel, that's the paperwork.

15           But anyway, we will adjourn it until November 13th at

16  11:00.  Okay?  Have a nice day.  Stay safe, everybody.

17           THE DEPUTY CLERK:  All rise.  This court will be in

18  recess.

19           (Time noted:  2:54 p.m.)

20

21

22

23

24

25

1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

3   UNITED STATES of AMERICA,

4           -against-                        19cr549
                                             Conference
5
    LORENZO McCOY,
6
                           Defendant.
7
    ------------------------------------x
8
9                                   United States Courthouse
                                      White Plains, New York
10
                                      November 13, 2020
11

12
    B e f o r e :
13

14          THE HONORABLE VINCENT BRICCETTI,
                                      District Court Judge
15

16

17  A P P E A R A N C E S :

18
    AUDREY STRAUSS
19       United States Attorney for
         the Southern District of New York
20  BY:  JENNIFER ONG
         NICHOLAS BRADLEY
21       Assistant United States Attorneys

22
    KOFFSKY & FELSEN, LLC
23          Attorneys for Defendant
    BY:  BRUCE D. KOFFSKY
24

25

                    PAMELA GRIMALDI, RPR, CRR, CLR
                         914.390.4053

**A127**

1          THE CLERK:  United States versus Lorenzo McCoy.

2          Will counsel please note their appearance for the

3     record.

4          MS. ONG:  Good morning, your Honor.  Jennifer Ong for

5     the government.  With me is my colleague Nicholas Bradley.

6          MR. BRADLEY:  Good morning, your Honor.

7          THE COURT:  Good morning.

8          MR. KOFFSKY:  Good morning.  Bruce Koffsky, appointed

9     counsel for Mr. Lorenzo McCoy.  Mr. McCoy sits with me at

10    counsel table.

11         THE COURT:  Okay.  Have a seat.

12         First of all, we had scheduled a conference in this

13    case for October 23 and Mr. McCoy showed up at that time and

14    claimed to be sick and maybe have a fever and maybe being

15    nauseous.  His father was with him at that time.  The CSOs were

16    reluctant to allow him into the building under the

17    circumstances.  We did go ahead with the conference with

18    Mr. Koffsky, but we really didn't accomplish anything.  We put

19    the matter over until today.  I said that today's proceeding

20    was either for a possible guilty plea or, if not, then we would

21    set a trial date.

22         Today the defendant showed up again at the courthouse

23    and again claimed to have these symptoms which I think he

24    thought would result in him being barred from the courthouse.

25    That was reported to me by the CSOs.  I immediately reacted by

**A128**

1    believing that he's lying.  I think he was lying.

2              In the meantime, I reached out to the pretrial

3    services officer, Mr. Barrios, who's been supervising Mr. McCoy

4    for a long time, and at my suggestion Mr. Barrios went down to

5    have a chat with Mr. McCoy and, lo and behold, Mr. McCoy

6    decided to show up, which in my view proves that he was lying

7    and he realized -- I don't know what Mr. Barrios told him.

8    Maybe it was something along the lines of, If the judge thinks

9    you're lying, he may just lock you up and then that will solve

10   the problem of you pretending to be sick so as not to come to

11   court.

12             I don't really know.  It doesn't really matter.  The

13   bottom line is he's here and so we're going to go forward.

14             Here's another question.  Where's Mr. Andrews?  This

15   is his case.  He never seems to show up for anything.  And this

16   is a complicated matter with a lot of moving parts.  And

17   ordinarily I'm of the view that Assistant U.S. Attorneys are

18   fungible.  But there are times when AUSAs need to step up and

19   show up in order to do their job.  So either one, Mr. Bradley

20   or Ms. Ong, anybody want to answer that question?  Where is he?

21   He should be here, as far as I'm concerned.  Although you're

22   here, so it's not like you're defaulting.  But, you know, why

23   isn't he here?

24             Is this your case, Ms. Ong?

25             MS. ONG:  No, your Honor.

PAMELA GRIMALDI, RPR, CRR, CLR
914.390.4053

```
 1            THE COURT:  Is this your case, Mr. Bradley?

 2            MR. BRADLEY:  No, your Honor.  And I do understand

 3   from Mr. Andrews that he does have a court conflict downtown

 4   and that was why --

 5            THE COURT:  There's a barnyard term for that.

 6            I scheduled this conference weeks ago.  I didn't hear

 7   about any conflict.  You can let Mr. Andrews know that I'm

 8   going to be reaching out to the supervisor to get to the bottom

 9   of this, because I don't think it's appropriate, and it's not

10   appropriate.  And, you know, you guys are doing the best you

11   can and that's fine, but that's not good enough for me.

12            MR. BRADLEY:  Understood, your Honor.

13            MS. ONG:  Thank you, your Honor.

14            THE COURT:  Have a seat.

15            All right.  So I think I can reasonably infer from

16   the letter I received ex parte, which at least for now is still

17   ex parte -- I might ultimately give it to the government.  But

18   I received a letter from Mr. Koffsky dated November 9, which

19   was just this Monday, the gist of which is that he wants to be

20   relieved, not because he is not capable of representing the

21   defendant, but because he believes that his, meaning

22   Mr. Koffsky's, attempts to communicate with his client have

23   been, quote, sabotaged by both the defendant and the

24   defendant's parents at every turn, end quote.

25            That's a problem.  Because, again, it relates to, not
```

PAMELA GRIMALDI, RPR, CRR, CLR
914.390.4053

1    Mr. Koffsky's job, but whether the defendant is -- you know, is

2    entitled to release on bail.  I'm telling you, I'm just this

3    close (indicating) to revoking his bail and -- because I think

4    if I did that, I would ensure that this matter would proceed in

5    a more efficient way.

6         But in any event, the point is I got a letter from

7    Mr. Koffsky.  He wants to be relieved.  That would suggest to

8    me that Mr. McCoy is not prepared to plead guilty today, which

9    was one of the possibilities.

10        So Mr. Koffsky, where do we stand on that?  I mean,

11   I'm not going to make him plead guilty, but I just want to know

12   what the story is.

13        MR. KOFFSKY:  Your Honor, if I may.  The letter does

14   not speak as if I want to be relieved, because I am fully

15   capable of either resolving this case with a cooperative and

16   communicative client, or I'm certainly capable, after 35 years

17   of experience, in trying this case.  The problem I have is

18   communicating with the client so I can approach the Court and

19   indicate to the Court -- when the Court asks me what the

20   client's decision is, in fact, telling the Court what the

21   client's decision is.

22        I know that a client who is unable to make a decision

23   generally is forced by court calendaring to try a case, and

24   then whatever happens, happens.  In this case I have attempted

25   to do two or three things.  One is to find out whether my

1   client is competent enough to proceed.

2          With the Court's best wishes, I engaged the services

3   of a psychiatrist, psychologist.  That psychologist was

4   provided thousands of pages of medical records that I received,

5   school records that I received.  They were all provided to her

6   in either hard copy or put on Dropbox so that she could review

7   them.  She then, as far as I'm concerned, conducted an

8   interview of my client's mother and him.  I have an 11-page

9   report from this therapist which indicates that she's reviewed

10  all the records, she makes references to the records that she

11  reviewed.  Then there is a section that she indicates she

12  interviews the mother and she interviews my client, all for the

13  purposes of providing me with a psychological evaluation.

14         When I attempted to discuss that with my client and

15  with his mother, they indicated to me that there was no such

16  evaluation, there was no such interview, it never happened, I'm

17  wrong, and the document that I have is a forgery, or fake.

18         I mean, I say this not to put my client in any more

19  difficult situation than he already is in.  What I'm doing is

20  trying to answer the Court with regard to the question of where

21  we are right now.

22         I've also attempted to discuss with my client the

23  evidence.  I prepared a PowerPoint presentation for my client

24  so that he understands the evidence.  And they were

25  uninterested in reviewing that.  So I'm left with the client

1   and a client's mother who claims that he's impaired, that they

2   are conducting their own psychological evaluation in the next

3   week or two, that I'm somehow supposed to wait to discuss the

4   case with him.  And so out of frustration, I wrote to the Court

5   so that when we appeared in front of the Court on this

6   scheduled status conference and the Court asked me, Are we

7   pleading or going to trial, at least the Court knows the

8   background of when I say I don't have a -- I don't have a

9   client who's willing to accept the plea and I don't have an

10  alternative resolution other than, with all that information,

11  the Court should probably consider questioning the defendant

12  whether he's going to continue to communicate and cooperate

13  with his lawyer as we get ready for trial, which is what the

14  Court said it was going to do if we didn't have a plea.

15          In addition, the Court had set motion dates.  One of

16  my questions of my client -- one of the attempts to communicate

17  with my client was to communicate with the client about maybe a

18  factual background so that I would be able to file an affidavit

19  if there were substantive motions.  Since that wasn't able to

20  happen, what I did is, based upon the Court's order, filed sort

21  of pro forma motion so that I could mark the Court's date, or

22  follow up on the Court's order of filing motions on November 9,

23  and indicate to the Court that I'm ready for trial.  The

24  question, of course, is whether I have a communicative and

25  cooperative client to go forward.

1          THE COURT:  Well, look, I don't see that -- first of

2     all, the defendant has not asked for a new lawyer.  By the way,

3     even if he did ask for a new lawyer, it wouldn't necessarily

4     mean -- it doesn't necessarily mean that I would grant that

5     request.  He did do that in the past; he had a different lawyer

6     early on in the case, a terrific lawyer, and he did ask for a

7     new lawyer, and that's -- you got appointed as

8          But he hasn't asked for a new lawyer.  You're just

9     telling me that he's not being cooperative with you.  That's

10    sort of on him.  You know, if he doesn't want to assist in his

11    defense, I guess that's a choice.  You know, people -- you

12    know, this is a free country.  You can make decisions.  You can

13    make a stupid decision.  It's not illegal to make a stupid

14    decision.  It's just a stupid decision.  So I really know -- I

15    don't see any reason to replace you.  To what end?  Is somebody

16    else going to do a better job?

17         You've been on this case since, gee, I don't know.  A

18    long time.  I'm looking for a note as to when you entered the

19    case.  I don't really know this for sure.  I'm going to say

20    well over a year ago.  Is that more or less accurate, as far as

21    you're concerned?

22         MR. KOFFSKY:  It is, your Honor.

23         THE COURT:  It's very troubling to me when I hear

24    from a member of the bar who, not only do I trust, but also has

25    an obligation to be honest with the Court, under pain of things

1  like disbarment -- it's a pretty good incentive most of the

2  time for lawyers to be straight with the Court.  So when a

3  lawyer like that who I know is an honorable lawyer and a

4  trustworthy lawyer, and who also has a great incentive to be

5  honorable and trustworthy, says things to me like you've just

6  said today and said in your letter along the lines of your

7  attempts to communicate with the defendant have been sabotaged

8  by both the defendant and his parents, that the defendant says

9  that he was never interviewed by the -- I don't know if it was

10  a psychologist or psychiatrist, Dr. Casarella.  I think it was

11  a psychiatrist, right?  Doctor of psychiatry?  Or is it

12  psychology?  I'm not sure.  It doesn't really matter.  The

13  point is the person that was retained -- at the government's

14  expense, by the way.  The court's paying for this -- when you

15  know that, in fact, Dr. Casarella did speak to the defendant

16  and to his parents, or at least to his mother, and at the same

17  time they are telling you that they never did and that this

18  report is a fabrication, honestly, I believe you.  I don't

19  believe your client.  I'm not going to accept your client's

20  word.  I'm going to accept your word.  Dr. Casarella did speak

21  to your client; is that correct?

22          MR. KOFFSKY:  That is correct.  I have both her

23  emails to me and the report that indicates that she did.

24          THE COURT:  So Mr. McCoy, what do you want to do?  Do

25  you want a new lawyer?  Do you want to stick with Mr. Koffsky,

1    who is an excellent lawyer, knows what he's doing?

2              And by the way, if you decide you want a new lawyer,

3    it doesn't mean I'm going to give you a new lawyer.  But I just

4    want to know what you want to do.  What do you want to do?

5              You've got to give me an answer, sir.

6              MAN IN GALLERY:  Can I say something?

7              THE COURT:  Keep your hand down, sir.

8              Mr. McCoy, what do you want to do?  I can't hear you,

9    sir.  Pull that microphone a little closer to you, all right?

10             I can't hear you, sir, speak up.

11             THE DEFENDANT:  I didn't ask for a new lawyer, your

12   Honor.

13             THE COURT:  Okay.  Good.  Have a seat.

14             Mr. Koffsky, you're still in this case.  We're going

15   to go forward.  We're going to set a trial date.  And we're

16   going to try the case.  It's a binary thing, right?  Either

17   there's going to be a guilty plea -- which he doesn't have to

18   do.  He has an absolute right to a trial.  Or there's going to

19   be a trial.  It's going to be one of those two options, either

20   A or B.  There is no option C.

21             Now, you do say in your letter -- and I'm going to

22   keep it under seal other than what I've already alluded to.

23   But you say in your letter that you're considering making an

24   application for a competency evaluation.  You've got to make

25   that application.  I'm just not going to do it *sua sponte*.  If

1    you want to do it, you've got to make an application to me as

2    to why it should be done, and then I'll consider doing it.  But

3    there's nothing -- I'm not aware of anything that would suggest

4    that your client is not competent.  You know, the pretrial

5    services officer works for the court.  He has no dog in this

6    fight.  He has communicated with Mr. McCoy from time to time.

7    There's absolutely no reason for me to believe, based on

8    anything I've heard from Mr. Barrios, that your client is not

9    competent.

10            And, by the way, I take it that Dr. Casarella also

11    did not tell you he was not competent, or told you he is

12    competent.  Is that the gist of what you were told by

13    Dr. Casarella?

14            MR. KOFFSKY:  Yes, your Honor.

15            THE COURT:  It doesn't mean I'm going to preclude you

16    from making an application.  If you want to make an

17    application, go ahead and make it.

18            What do you want, Donna?  I'm sorry.

19            THE CLERK:  He wants to say something.

20            THE COURT:  Who does?

21            THE CLERK:  The defendant.

22            THE DEFENDANT:  Your Honor, I wasn't evaluated.  The

23    doctor only spoke to my mother.  And I'm going through a lot of

24    things that I normally don't really share because I'm

25    embarrassed of it, but I had a mental issue that my mom had

**A137**

1   provided the lawyer and the lawyer hasn't never gave you --

2   hasn't ever gave you the paperwork and what my mental health

3   is.  And I'm off my meds, and I can't really decide if I'm

4   going to plead guilty or go to trial because I'm not in my

5   right mind.  And Mr. Koffsky hasn't been doing his job.  And we

6   wasn't bashing him, we wasn't disrespecting him.  We was just

7   trying to get him to understand that I wasn't evaluated, and

8   that I had a therapist --

9           THE COURT:  You're saying Dr. Casarella never spoke

10  to you?

11          THE DEFENDANT:  No.  She only said, like, two words

12  to me, and my mother --

13          THE COURT:  Wait, wait, wait.  Are you saying

14  Dr. Casarella never spoke to you?

15          THE DEFENDANT:  She only spoke --

16          THE COURT:  So in other words, she did speak to you?

17          THE DEFENDANT:  She only spoke to me for a second.

18  We didn't even get into, like, what's my diagnosis and what I'm

19  going through.  And my mother had provided Mr. Koffsky the

20  paperwork, and I gave him some of the paperwork, the same as

21  the last lawyer, and they haven't gave that paperwork to the

22  judge downstairs nor you.  And the reason why my mother was

23  calling the courthouse to speak to you was to tell you that

24  Mr. Koffsky --

25          THE COURT:  I'm not going to speak to your mother.

1    That's ridiculous.

2            THE DEFENDANT:  No.  I understand.  That's why I said

3    that --

4            THE COURT:  Tell her, please, and your father should

5    tell your mother, she shall never call here again, period.

6    That's clear, right?  That's pretty clear.  There's no

7    ambiguity in that.  It shall not happen ever again.

8            THE DEFENDANT:  I understand, and I told her that.

9    And she was just -- you know, she was just trying to, like, let

10   you know that I have, like, issues that I have to, like, work

11   out and that I have to be evaluated.  My evaluation is next

12   week on Tuesday.  And Mr. Koffsky hasn't --

13           THE COURT:  Okay.  Have a seat, sir.  You're

14   repeating yourself.  I don't really believe you.  So just sit

15   down.  In my view, every word that you say tells me over and

16   over again that you're totally competent to proceed.  Lots of

17   people have mental health issues.  That doesn't make you

18   incompetent.  Have a seat, please.

19           I'm not relieving Mr. Koffsky.  There's been no

20   application for that.  In fact, the defendant specifically said

21   he's not asking for that.  So we're not doing that.

22           If the defendant wants to get evaluated by somebody

23   on his own, he's welcome to do it.  But you're going to

24   cooperate with Mr. Koffsky, and if Mr. Koffsky wants to make

25   some kind of an application to me about that, about competency

1  or about evaluations specifically for that purpose, you'll make

2  that application.  There is no application in front of me at

3  this point.  The only thing that's in front of me at this point

4  is the motions that you made the other day.  I got a letter

5  yesterday from the government opposing those motions.  I'm

6  going to resolve those motions right now.

7           That's the only thing that's in front of me.  Am I

8  right about that, Mr. Koffsky?

9           MR. KOFFSKY:  That's correct, your Honor.

10          THE COURT:  The defendant made a motion or submitted

11  a notice of motion along with an affidavit from Mr. Koffsky and

12  a Memorandum of Law on November 9.  And the first part of that

13  motion is a request for an order under Rule 16 directing the

14  government to disclose oral or written statements which

15  inculpate Mr. McCoy or any item or exhibit intended for use

16  during its case in chief at trial or which is material to the

17  defense, including any expert witness summary or examination

18  and for further necessary disclosure.  So basically it's an

19  application for discovery under Rule 16.

20          The government says that it recognizes its

21  obligations under Rule 16 and has fully disclosed all such

22  materials in its possession at the time of this filing.  And it

23  also says that the government has contacted defense counsel

24  after the filing of the motion and defense counsel did not

25  identify any deficiencies in the government's productions.

```
 1              Let me just confirm that.  Is that correct, you have
 2    not identified any deficiencies in the government's
 3    productions?
 4              MR. KOFFSKY:  That's correct.
 5              THE COURT:  All right.  So that motion is denied.
 6    The government says that it's produced everything it's required
 7    to produce under Rule 16, and there's no reason for me to think
 8    otherwise.
 9              Can the government -- who's going to speak for the
10    government?
11              Ms. Ong, can you confirm that the government has
12    fully complied with its Rule 16 obligations?
13              MS. ONG:  Yes, your Honor.
14              THE COURT:  Have a seat.
15              All right.  So the next thing on your motion,
16    Mr. Koffsky, is an application for an order directing the
17    government to disclose any evidence of any exculpatory or
18    mitigating nature under *Brady v. Maryland*, *Giglio*, and other
19    related cases.  And, again, the government says that it both
20    recognizes its obligations under Brady and has fully complied
21    therewith.
22              And, again, the defense has not identified any
23    deficiencies in the government's production to date; is that
24    correct, Mr. Koffsky?
25              MR. KOFFSKY:  That's correct, your Honor.
```

1          THE COURT:  All right.  So to the extent that's an

2     application, the application is denied.  However, of course the

3     government's *Brady* obligations are continuing.  Indeed,

4     congress saw fit recently to amend the Federal Rules of

5     Criminal Procedure to include a new obligation on the Court to

6     advise government counsel of their *Brady* obligations.  The

7     government counsel already know about their *Brady* obligations,

8     but there are reasons why congress acted, and I issued an order

9     in this case, as I did in every single case that I have,

10    telling the government that they have to comply with  *Brady*.

11          Have you seen that order in the docket, Ms. Ong?

12          MS. ONG:  Yes.

13          THE COURT:  All right.  So you have to comply with

14    *Brady*.

15          MS. ONG:  Yes, your Honor.

16          THE COURT:  And *Giglio*, and all the other cases that

17    relate thereto.

18          Let's see.  Number three in Mr. Koffsky's motion is

19    for an order directing the government to disclose its

20    witnesses's statements pursuant to Fed. R. Crim. P. 26.2, and I

21    think you also mean § 3500 of Title 18.  You asked for me to

22    order that at least 30 days prior to trial in this matter.

23          Well, first of all, I can't order the government to

24    produce witness statements before government witnesses testify

25    on direct.  It is, however, my experience that the government

1    routinely consents to provide 3500 material prior to trial and

2    we set a date and we pick a date for that and so forth.

3            So let me just ask you, Ms. Ong, would the government

4    consent to provide 3500 material two weeks before trial?

5            MS. ONG:  Yes, your Honor.

6            THE COURT:  All right.  Thank you.  So that takes

7    care of that.

8            Fourth -- or the number four is an application for an

9    order directing the government to disclose any intention to

10   offer evidence at trial pursuant to Rule 404(b), which is prior

11   similar crimes evidence against the defendant, and to do so at

12   least 30 days prior to trial.  And that application is granted.

13   It is my standard practice to require the government to make

14   that disclosure at least 30 days in advance of trial, or let's

15   put it another way, no later than 30 days prior to trial, and

16   to do so in the form of a motion in limine seeking to introduce

17   404(b) evidence.  Now, we haven't set a trial date yet, so

18   therefore there's no -- I can't set a specific date for that,

19   but it's going to be at least 30 days before trial.  And if you

20   want to try to offer 404(b) evidence, you're going to have to

21   do it -- you're going to have to procedurally do that by making

22   a motion in limine at least 30 days before trial.  So I guess

23   that application is granted.  It is granted.

24           Mr. Andrews says in his letter that the government

25   has conferred with defense counsel regarding a prospective

**A143**

1    trial date and request that the Court set a trial date at the

2    conference scheduled for October 13.  Of course, it's November

3    13, but whatever.  That's a typo.

4            The government stands ready to proceed to trial on

5    any date that the Court deems appropriate.  However, the

6    government respectfully requests that the Court consider a date

7    in April 2020 or later to accommodate the parties' trial

8    schedules.

9            And do you concur with that, Mr. Koffsky?

10           MR. KOFFSKY:  I do, your Honor.

11           THE COURT:  You'd rather it be April 2020 or later?

12           MR. KOFFSKY:  Well, I think it should be April 2021.

13           THE COURT:  I'm sorry.  You're right.  It's certainly

14   going to be later than April 2020.  That's for sure.  That's

15   another typo.  It's sloppiness, and I don't like sloppiness, in

16   fact, I hate sloppiness, especially from the government.

17   Anyway, I have to have a conversation with Mr. Andrews'

18   supervisor about other things, I might mention this as well.

19   It's not your fault, Ms. Ong.  It's certainly not your fault,

20   neither of you.  But this is going to be straightened out, and

21   the government is going to stand up and take on its

22   responsibility to pursue this case.  And when it submits

23   written -- when it submits anything in writing to me, it's

24   going to pay attention to the details rather than be lazy and

25   sloppy.  I don't appreciate it.  And it creates -- potentially,

1    at least, it creates credibility problems.  And it's never in

2    the government's interests to have a credibility problem with

3    the Court.  Ever.

4             So April 2021, just to be clear, or later?

5             MR. KOFFSKY:  That's correct, your Honor.

6             THE COURT:  Okay.  Application granted.

7             I've got seven trials scheduled in -- well, they are

8    not really scheduled -- tentatively scheduled in the first

9    three months of 2021, five of which are criminal trials.

10   Because as you-all know, we can't actually set a definite trial

11   date.  All we can do is set a tentative trial date.  We have

12   exactly two courtrooms in this building, not three, not four.

13   We have seven courtrooms, but we have two courtrooms in this

14   building that are capable of accommodating a socially distanced

15   criminal trial.  But we have five district judges and, you

16   know, the -- we have to schedule things on a master calendar

17   basis and try to fit things in based on a scheduling priority

18   protocol that the Court has established.  So for all those

19   reasons I can't give you a definite date.  But I can give you a

20   tentative date.  That I can do.

21            By the way, one of the protocols is that cases in

22   which defendants are detained take precedence over cases in

23   which defendants are not detained.  Mr. McCoy is not detained,

24   although he keeps edging up right against getting detained.

25   And as I recall, there was a -- we had a whole discussion about

```
 1   that early on in this case.  In any event, he's not detained.
 2   So the point is that I could give you a date -- I'm speaking
 3   hypothetically now.  Let's say I give you a tentative date.
 4   And then it turns out that one of my colleagues also schedules
 5   a criminal trial for the same date in which the defendant is
 6   detained.  That other case is going to take precedence over
 7   this case.  For obvious reasons.  That's why it's very
 8   difficult to give you -- that's why it's impossible to give you
 9   a definite date.
10           But we can give you a tentative date.  So let's do
11   that.  Let's say April 13.  How does that sound as a tentative
12   date?  I'm sorry.  That's 2020.  I apologize.  April 12.  April
13   12.  I just made the same mistake that the government made.
14   Anyway, April 12.
15           How does that work for you, Mr. Koffsky?
16           MR. KOFFSKY:  I'm free, your Honor.
17           THE COURT:  Ms. Ong?
18           MS. ONG:  That works for us, your Honor.
19           THE COURT:  Okay.  So that's the trial date.  I'm
20   going to -- I keep saying that because, you know, after -- how
21   many years you've been practicing?  You said 35?
22           MR. KOFFSKY:  36 now.
23           THE COURT:  Okay.  That's like a rookie in my book.
24   But I've been doing this for 40 years, so -- and until
25   recently, you know, when a judge said, This is the trial date,
```

1   that meant this is the trial date.  It didn't mean maybe it's

2   the trial date.  It meant this is the trial date.  But now we

3   can't do that anymore.  We recognize the realities of the

4   situation.  But this case is going to go forward.

5         So tentatively we have a trial date of April 12.  30

6   days before that, which would be March 12, would be -- and by

7   the way, I'll issue an order with all these pretrial submission

8   dates in there so there'll be no mystery whatsoever about it.

9   But March 12 will be motion in limine and 404(b) evidence.

10         Hold on just one second.

11         And any opposition to motion in limine would be March

12   26.  You know what?  I'm going to advance those dates a little

13   bit.  I'm going to make the motion in limine date March 5,

14   which is a little bit more than 30 days.  It's five weeks

15   before trial, before the tentative trial date.  March 5.

16         I know this is not your case, Ms. Ong, but I'm going

17   to -- this is the problem, you see.  If it was your case, the

18   next question I'm about to ask, you would be able to answer.

19   But if you're not able to answer, that's okay.  I understand.

20   But that's why I want the lawyer here who's going to try the

21   case.  The next time we're in court on this case, whoever is

22   going to try the case will be here in the courtroom.  Period.

23         MS. ONG:  Yes, your Honor.

24         THE COURT:  So here's the question:  Does the

25   government intend to offer 404(b) evidence in this case?

1        MS. ONG:  I'm not sure, your Honor.

2        THE COURT:  That's what I thought your answer would

3   be.  And it's okay that you answer it that way.  That's why the

4   lawyer trying the case needs to be here the next time, okay?

5        So March 5 is going to be the motion in limine and

6   404(b) disclosure date.  March 12, one week later, is going to

7   be opposition to any motions in limine.  Proposed voir dire and

8   requested charge are going to be filed by March 29.  And,

9   again, don't worry, I'll put this all in an order.

10        Will the government agree to produce 3500 material

11   and *Giglio* material no later than March 29?

12        MS. ONG:  Yes, your Honor.

13        THE COURT:  Thank you for doing that.

14        You know, congress acts in very mysterious ways

15   sometimes.  Out of the blue they amend the Federal Rules of

16   Criminal Procedure skipping over the whole process that

17   normally applies for amendment of rules, which is a really good

18   process, because people review the proposed new language and

19   they talk about it, they try to understand the implications of

20   it, they get the input of the Department of Justice, the

21   defense bar, the court, judges, and then they thoughtfully come

22   up with a proposed new rule.  Or not.  Which is the not; that's

23   what congress did in this instance.  They didn't do any of

24   that.  They just said, We're going to create a new rule, and

25   here it is.  And it turns out that there's about five or six

1    ambiguities in the language of the rule, the new Rule 5(f).

2    It's just such a bad process.

3         Meanwhile, they haven't amended section 3500, which

4    still says to this day -- unless they did it last night when I

5    wasn't watching -- still says to this day that prior statements

6    of government witnesses are to be turned over after the witness

7    testifies on direct.  It's ridiculous.  It's been ridiculous

8    for 40 or 50 years.  It's still ridiculous.

9         So Mr. Koffsky, why don't you call your friends in

10   the senate or in the house and tell them that they really -- if

11   they are going to make these kinds of amendments, they should

12   look holistically at these rules and think about how they all

13   fit in with other rules and how they might consider appropriate

14   amendments rather than just doing it for political gain, which

15   is obviously what happened here with Rule 5(f).

16        MR. KOFFSKY:  Your Honor, I'll call January 22.

17        THE COURT:  All right.  There you go.

18        Anyway, March 29, because the government consents,

19   3500 material and *Giglio*, et cetera.  Same date for marked

20   government exhibits, which is, again, two weeks before trial.

21        And we'll schedule a final pretrial conference in

22   this case I would say not before April 1, Donna, but pretty

23   much any time after that, maybe sometime during the week of

24   April 5.

25        THE CLERK:  Yes.

PAMELA GRIMALDI, RPR, CRR, CLR
914.390.4053

1          How about Friday, April 9?

2          THE COURT:  No, I've got -- if we're going to try the

3   case on April 12, we have to do it before that.  Can we do it

4   earlier in the week, like Monday the 5th?  Again, I don't know

5   if I am going to try it on the April 12.

6          THE CLERK:  We can do it on the 5th.

7          THE COURT:  Okay.  Let's do it April 5.

8          THE CLERK:  In the afternoon?

9          THE COURT:  In the afternoon, yeah.

10         THE CLERK:  2:30.

11         THE COURT:  Okay.  April 5 is the final pretrial

12  conference.

13         Again, all these dates will be put in an order.

14         And Mr. Koffsky, you are not precluded from making an

15  appropriate application under § 4241 or anything else.  You can

16  do that.  But until you do, there's nothing in front of me for

17  me to resolve, so I just don't know what else to say other than

18  you want to make an application, go ahead and make the

19  application.

20         MR. KOFFSKY:  Thank you, your Honor.

21         THE COURT:  I would advise Mr. McCoy that it's in his

22  interest to cooperate with his lawyer, who is a very competent,

23  very experienced, very well-respected criminal defense

24  attorney.  Knows what he's doing.  This is not his first rodeo.

25  The Court relies -- the Court relies, honestly, in many

PAMELA GRIMALDI, RPR, CRR, CLR
914.390.4053

1    respects more on competent defense counsel than it relies on

2    prosecutors because prosecutors have a very important job to

3    do, but judges know that without competent defense counsel,

4    they cannot be confident that the process is fair.  That's why

5    the founders put the right to counsel right in the Sixth

6    Amendment to the Constitution.  Can you believe that?  There's

7    no other profession that's mentioned in the Constitution.  They

8    don't talk about doctors or accountants.  But -- they talk

9    about elected officials, of course.  But the one profession

10   that's mentioned in the Constitution is criminal defense

11   lawyers.  That's how important it was 250 years ago and how

12   important it is today.

13          If I were you, Mr. McCoy, I would work with

14   Mr. Koffsky and cooperate with him and communicate with him and

15   tell your parents to be cooperative, even though they are not

16   his client.  But, of course, they can interfere with your

17   ability to -- interfere with Mr. Koffsky's ability to

18   communicate with you.  That's a strong suggestion on my part.

19          Hopefully you know the answer to this question,

20   Ms. Ong.  Do you have a sense of how long a trial this would

21   be?

22          MS. ONG:  Yes, your Honor.  The government estimates

23   it would take two days max.

24          THE COURT:  So we're going to assume that this is a

25   one-week trial.

1          Does that sound about right to you, Mr. Koffsky,

2     based on what you know about the case?

3          MR. KOFFSKY:  Yes, your Honor.

4          THE COURT:  I mean, it could be less than a week.

5     But for my scheduling purposes, I just have to have a general

6     sense of --

7          MR. KOFFSKY:  It will not go past five trial days.

8          THE COURT:  Okay.  Fair enough.

9          Just so you know, the way the court is now handling

10    this master calendaring system -- and I assume you all know

11    this -- by November 15, which, of course, is Sunday, but

12    basically by today, we have to -- all the judges have to submit

13    a form that's been prepared to the clerk's office asking for a

14    particular date for trial, for jury trials -- not for non-jury

15    trials; for jury trials -- for the first quarter of 2021.  The

16    clerk's office will sort of gather all that data, and then

17    according to the scheduling protocols that the court has

18    adopted, will schedule cases accordingly.  And judges can ask

19    for firm trial dates, but they are not guaranteed.

20          Anyway, that deadline is effectively today for the

21    first quarter of 2021.  The good news is we're talking about

22    the second quarterly of 2021 for this trial.  The deadline for

23    that is January 15.  In other words, we're moving the deadline

24    up even earlier because scheduling is so complicated.

25          Anyway, we are well in advance of January 15, so

1　that's not going to be a problem.  I'll be able to put in this

2　request by then, of course.

3　　　　　　All right.  What else do we need to do today?

4　　　　　　Ms. Ong, is there anything else on your agenda?

5　　　　　　MS. ONG:  Yes, your Honor.  The government would ask

6　that we exclude time --

7　　　　　　THE COURT:  Hold on.  Let's put that aside for a

8　moment.

9　　　　　　MS. ONG:  Yes, your Honor.

10　　　　　　THE COURT:  Other than that, is there anything else

11　you want to do today?

12　　　　　　MS. ONG:  No, your Honor.

13　　　　　　THE COURT:  Mr. Koffsky, other than dealing with

14　speedy trial, is there anything else you want to do today?

15　　　　　　MR. KOFFSKY:  No, Your Honor.

16　　　　　　THE COURT:  Now you can do that, Ms. Ong.  Sorry to

17　interrupt you.

18　　　　　　MS. ONG:  The government would ask that we exclude

19　time between now and the next scheduled conference to allow the

20　parties to review and prepare discovery and to discuss any

21　pretrial resolution.  The government believes that such an

22　exclusion would be in the interests of justice.

23　　　　　　THE COURT:  Any objection?

24　　　　　　MR. KOFFSKY:  No objection.

25　　　　　　THE COURT:  All right.  The Court excludes time under

**A153**

1   the Speedy Trial Act from today through and including April 5,

2   2021.  I find that the ends of justice served by granting the

3   requested continuance outweigh the best interests of the public

4   and the defendant in the speedy trial for the reasons stated on

5   the record by the prosecutor.

6          Now, if the parties are able to come to some kind of

7   an agreement on a disposition, on a pretrial disposition, you

8   don't have to wait until April.  Obviously, you let me know and

9   we'll schedule it promptly.

10          That's really all I have at this point.

11          And I should tell Mr. McCoy also, right now he's

12   represented by an appointed attorney, in other words, an

13   attorney who is qualified by experience and training to handle

14   these very complicated federal criminal cases, and he will do

15   so at no cost whatsoever to the defendant.  The cost will be

16   borne entirely by the court.  Which is fine.  We do it all the

17   time.  It's perfectly appropriate.  But that doesn't mean that

18   Mr. McCoy can't hire his own lawyer.  If Mr. McCoy and his

19   family go out and hire their own lawyer that they pay for, then

20   they certainly have the right to do that.  But unless and until

21   they do that, Mr. Koffsky is going to remain as Mr. McCoy's

22   lawyer, unless there's -- again, I'm not --

23          Mr. McCoy, to be totally fair, if you tell me -- and

24   you'd have to do it in writing and disclose it to the

25   government.  If you tell me that Mr. Koffsky is ignoring your

**A154**

29

1    phone calls or providing you with misinformation, or otherwise

2    not performing his job in a professional and responsible way,

3    then I might consider giving you a new lawyer.

4           However, I'm not going to give you a new trial date.

5    The trial date, at least for now, is the one that I just set,

6    April 12, 2021.  So if you really do want a new lawyer and you

7    want to retain one, you're welcome to do that.  But if I were

8    you, I'd do it sooner rather than later.

9           All right.  That's all I have.  Have a nice day.

10   I'll see you on April 5, I guess, April 5 at 2:30 p.m.

11          THE CLERK:  All rise.  The Court will be in recess.

12

13   CERTIFICATE:  I hereby certify that the foregoing is a true and
     accurate transcript, to the best of my skill and ability, from
14   my stenographic notes of this proceeding.

15

16                Pamela L. Grimaldi, RPR, CRR, CLR
                  Official Court Reporter, USDC, SDNY
17

18

19

20

21

22

23

24

25

PAMELA GRIMALDI, RPR, CRR, CLR
914.390.4053