**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 21-2098                                Caption [use short title]

**Motion for:** Summary affirmance

United States v. McCoy

Set forth below precise, complete statement of relief sought:

For summary affirmance of the conviction and sentence because there are no

non-frivolous issues.

_____

_____

_____

**MOVING PARTY:** United States of America            **OPPOSING PARTY:** Lorenzo McCoy

☐ Plaintiff        ☐ Defendant

☐ Appellant/Petitioner    ☑ Appellee/Respondent

**MOVING ATTORNEY:** Damian Williams, U.S. Attorney, Southern District of N.Y.    **OPPOSING ATTORNEY:** Peter J. Tomao, Esq.

[name of attorney, with firm, address, phone number and e-mail]

| | |
|---|---|
| By: Mathew Andrews, Assistant U.S. Attorney | Peter J. Tomao |
| One St. Andrew's Plaza, New York, New York 10007 | Law Office of Peter J. Tomao |
| (212) 637-6526 | 600 Old Country Road Suite 328 Garden City, NY 11530 |
| mathew.andrews@usdoj.gov | 516-877-7015; ptomao@tomaolaw.com |

Court-Judge/Agency appealed from: The Honorable Vincent L. Briccetti, United States District Judge, SDNY

**Please check appropriate boxes:**                    **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):    Has request for relief been made below?  ☐ Yes ☐ No
☑ Yes ☐ No (explain):_____    Has this relief been previously sought in this Court?  ☐ Yes ☐ No

Requested return date and explanation of emergency:_____

Opposing counsel's position on motion:
☑ Unopposed ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☑ No ☐ Don't Know

Is oral argument on motion requested?        ☐ Yes ☑ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?        ☐ Yes ☑ No  If yes, enter date:_____

**Signature of Moving Attorney:**
MATHEW ANDREWS  Digitally signed by MATHEW ANDREWS Date: 2022.06.08 11:16:31 -04'00'  **Date:** _____    Has service been effected?  ☑ Yes ☐ No [Attach proof of service]

**ORDER**

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED  DENIED**.

**FOR THE COURT:**
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____    By: _____

**Form T-1080**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Appellee, | : | **AFFIRMATION** |
| | : | |
| - v. - | : | No. 21-2098 |
| | : | |
| LORENZO MCCOY, | : | |
| | : | |
| Defendant-Appellant, | : | |
| | : | |
| JORDAN TAYLOR, | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK          )
COUNTY OF NEW YORK       :     ss.:
SOUTHERN DISTRICT OF NEW YORK   )

MATHEW ANDREWS, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty of perjury:

1. I am an Assistant United States Attorney in the Office of Damian Williams, United States Attorney for the Southern District of New York, and I represent the Government in this appeal. I submit this affirmation in support of the

Government's motion for summary affirmance of Lorenzo McCoy's conviction and sentence because there are no non-frivolous issues that can be raised on appeal.

## PRELIMINARY STATEMENT

2. McCoy appeals from a judgment of conviction entered on August 20, 2021, in the United States District Court for the Southern District of New York, by the Honorable Vincent L. Briccetti, United States District Judge, following McCoy's guilty plea.

3. Superseding Indictment S1 19 Cr. 549 (the "Indictment") was returned on October 29, 2019, in two counts. Count One charged McCoy and his codefendant, Jordan Taylor, with carjacking, in violation of 18 U.S.C. §§ 2119 and 2. Count Two charged McCoy and Taylor with conspiracy to commit carjacking, in violation of 18 U.S.C. § 371.

4. On March 25, 2021, McCoy appeared before Judge Briccetti, consented to the filing of two-count Superseding Information S2 19 Cr. 549 (the "Information"), which charged him in Count One with carjacking, in violation of U.S.C. §§ 2119 and 2, and in Count Two with conspiracy to commit carjacking, in violation of 18 U.S.C. § 371. McCoy then pleaded guilty, without a plea agreement, to both counts in the Information.

5. On August 19, 2021, Judge Briccetti sentenced McCoy to six months' imprisonment, to be followed by three years of supervised release. The District Court

also imposed restitution of $2,300, for which McCoy was jointly and severally liable with Taylor, and a mandatory $200 special assessment. The judgment was entered on August 20, 2021.

6. On August 26, 2021, McCoy filed a timely notice of appeal.

7. On March 9, 2022, McCoy's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that after reviewing the record, counsel had concluded that there are no meritorious or non-frivolous issues to be raised on appeal.

8. McCoy has served his prison sentence; he was released from the custody of the Bureau of Prisons on April 15, 2022.

## STATEMENT OF FACTS

### A. The Offense Conduct

9. The charges against McCoy arose out of a violent carjacking that he and Taylor committed on April 10, 2019. (PSR ¶¶ 15-24.)[1] McCoy and Taylor lured a victim to the basement of a residence in Peekskill, New York, under the pretense of taking him to the mall to sell a cellphone. (PSR ¶¶ 15-16). They then punched and

---

[1] "PSR" and "Presentence Report" refer to the Presentence Investigation Report prepared by the United States Probation Office in connection with McCoy's sentencing; "Br." refers to the *Anders* brief filed by McCoy's appellate counsel; "A." refers to the appendix filed with that brief; and "Dkt." refers to an entry on the District Court's docket for this case. Unless otherwise noted, case text quotations omit internal quotation marks, citations, footnotes, and previous alterations.

3

kicked the victim in the head and upper body, and McCoy pointed a knife at the victim's chest. (PSR ¶ 17). Taylor and McCoy went through the victim's pockets, robbed him of his car keys, iPhone, and wallet, and stole the victim's vehicle, which was parked outside. (PSR ¶¶ 18-19). McCoy was arrested the next day. (PSR ¶ 24).

## B.    The Competency Evaluation

10.    In February 2021—22 months after McCoy's arrest, and two months before the scheduled trial date of April 12, 2021—McCoy's counsel asked the District Court to conduct a competency hearing. (A. 156). Accordingly, on February 24, 2021, Judge Briccetti ordered a competency evaluation of McCoy to be conducted by Dr. Barry Rosenfeld. (A 155-212). The District Court issued a formal order, pursuant to 18 U.S.C. § 4241(a) and (b), scheduling a competency hearing for April 5, 2021, and directing that McCoy undergo a psychiatric or psychological examination. (A. 213).

11.    On March 3, 2021, defense counsel submitted a letter to the District Court stating that "Mr. McCoy has directed the undersigned to notify the Court that he intends to plead guilty to the two-count Indictment currently pending against him," and requesting that the District Court schedule a change-of-plea proceeding "upon the Court's finding the defendant competent." (Dkt. 94).

12.    Later on March 3, 2021, the District Court scheduled the plea proceeding for March 25, 2021. In doing so, the District Court noted that Dr.

Rosenfeld's report of McCoy's psychological evaluation was "expected to be received by the Court and the parties by" March 22, 2021. Judge Briccetti stated that at the March 25 proceeding, "the Court will first discuss the report with the parties and make a determination as to defendant's competency to proceed. If the Court finds defendant competent, the Court will proceed with the guilty plea." (Dkt. 95).

13.     The parties appeared before Judge Briccetti on March 25, 2021. At the outset of the proceeding, Judge Briccetti discussed the results from Dr. Rosenfeld's examination of McCoy. The District Court noted that Dr. Rosenfeld had examined McCoy on March 4, 4021, and had provided a report of that evaluation dated March 8, 2021. Judge Briccetti asked whether the parties had received a copy of Dr. Rosenfeld's report, and both parties confirmed that they had. (A. 225). Judge Briccetti then summarized Dr. Rosenfeld's finding that the defendant was competent:

> The report does say, although unfortunately Mr. McCoy does suffer from a number of mental issues, and I read the report carefully, the conclusion in the report is that despite the possibility that Mr. McCoy does suffer from a major mental disorder that is currently in remission, he demonstrated a relatively simple but accurate understanding of the proceedings against him and appears capable of participating meaningfully in his own defense. Mr. McCoy appears capable of making decisions regarding his case, provided these decisions are explained at a level commensurate with his borderline intellectual functioning. That is, simple explanations with attention to explaining any aspects that he may not already understand. He appears capable of provide—it says provide, I assume it means providing. He appears capable of providing relevant testimony, if necessary, and able to conform his behavior to the demands of the courtroom. In sum, there is

no evidence Mr. McCoy currently suffers from mental disorder that impairs his ability to understand the proceedings against him or to consult with his attorney with a reasonable degree of rational—with a reasonable degree of rational degree of understanding.

The bottom line is that, in accordance with the standard that applies for competency evaluation, Dr. Rosenfeld finds the defendant competent.

(A. 225-26).

14.     Counsel for the Government and for McCoy confirmed their understanding that the report had found that McCoy was competent. (A. 227). Defense counsel stated:

[W]e accept Dr. Rosenfeld's finding, we ask the Court to find that the defendant is competent to assist in his own defense and understand and appreciate what's going on here, and most importantly, that he is capable of entering a guilty plea.

As the Court knows, I never took the position that he was incompetent. I took the position that I was unable to pass judgment on his competency, and that's when I asked the Court to order this evaluation. But I ask the Court, at this point in time, that the client is competent and ready to proceed.

(A. 227).

15.     Judge Briccetti adopted the report's findings as his own, and determined that McCoy was competent. (A. 228-29).

## C.     The Guilty Plea

16.     Next, McCoy made an application to withdraw his previously entered plea of not guilty, consent to the filing of the Information, and enter a plea of guilty to Counts One and Two. (A. 229-30). Judge Briccetti then conducted a careful

allocution that complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure. (A. 230-72).

17.    Before the proceeding, the Government had supplied the defense with a letter (a "*Pimentel* letter") describing the potential penalties McCoy faced and estimating the applicable sentencing range under the United States Sentencing Guidelines (the "Guidelines"), as recommended by *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991). (A. 214-17; PSR ¶ 6). The *Pimentel* letter calculated an offense level of 24, a criminal history category of I, and an applicable Guidelines range of 51 to 63 months' imprisonment. (A. 215-16).

18.    After placing McCoy under oath, Judge Briccetti established that McCoy was competent to plead guilty. (A. 231-37). Judge Briccetti then confirmed that McCoy had discussed the Information and any possible defenses with his attorney, that he was satisfied with his attorney's representation of him, and that he was knowingly and voluntarily waiving his right to be indicted by a grand jury. (A. 237-40).

19.    Judge Briccetti established that McCoy understood the rights he was giving up by pleading guilty, including his rights: (a) to persist in his previously entered plea of not guilty; (b) to a jury trial where he would be presumed innocent and the Government would bear the burden of proving his guilt beyond a reasonable doubt; (c) to the assistance of counsel, including court-appointed counsel if

necessary, at trial and at every other stage of the proceedings; (d) to confront and cross-examine witnesses; (e) to testify, present evidence, and compel the attendance of witnesses; and (f) against compelled self-incrimination. (A. 240-43). McCoy stated that he understood these rights and was willing to waive them by pleading guilty. (A. 243).

20.     Judge Briccetti next reviewed the charges against McCoy, confirmed that McCoy understood the crime to which he was pleading guilty, directed the Government to set forth the elements of the offenses, which it did, and advised McCoy of the maximum and minimum penalties he would face as a result of his guilty plea. (A. 244-46). In discussing the applicable penalties, Judge Briccetti ensured that McCoy understood the District Court's obligation to order restitution, impose a special assessment, and require forfeiture. (A. 247-48).

21.     Judge Briccetti next confirmed that McCoy was a United States citizen. (A. 249).

22.     Judge Briccetti confirmed that McCoy had read the *Pimentel* letter and discussed it with his counsel. (A. 251-54). Judge Briccetti then reviewed portions of the *Pimentel* letter, explained the Government's view of how the Guidelines applied to his case, and described the District Court's obligation to calculate the Guidelines and consider that range, possible departures under the Guidelines, and the sentencing factors set forth in 18 U.S.C. § 3553(a). (A. 251-54).

23.     Next, Judge Briccetti confirmed that nobody had threatened or coerced McCoy to make him plead guilty, or had made him any promises that induced him to plead guilty. (A. 254-55).

24.     Having advised McCoy of the charges against him, the possible penalties he faced, and the rights he would be giving up, Judge Briccetti ensured that an adequate factual basis supported McCoy's plea. Judge Briccetti asked McCoy to "tell me in your own words what you did to make you believe that you're guilty of this offense." (A. 259). McCoy then stated:

> I, Lorenzo McCoy, on April 10th, 2019, in Peekskill, New York, while aiding and abetting another individual, took a car from its owner. I knowingly used force and violence to take the car from its owner, and I knowingly caused serious bodily injuries to the victim. When I took the car, the car that was taken from the victim has been shipped in interstate commerce because it was manufactured outside of the United States.
>
> . . . .
>
> I, Lorenzo McCoy, on April 10 of 2019, in Peekskill, New York, freely and voluntarily joined an agreement with another individual to commit the crime of carjacking which I described above. I committed both the crimes of carjacking and conspiracy to commit carjacking knowingly and voluntarily and of my own free will, even though I knew that all those acts were illegal. I accept full responsibility for my actions.

(A. 259-60).

25.     Judge Briccetti accepted the plea, finding that McCoy understood the charge against him and the consequences of the plea, that the plea was made voluntarily and knowingly, and that there was a factual basis for it. (A. 262-63).

**D.    The Sentencing Proceeding**

26.    The Government and defense counsel submitted lengthy submissions prior to sentencing. (Dkt. 106 (defense submission); Dkt. 107 (Government submission)).

27.    On August 19, 2021, McCoy appeared before Judge Briccetti for sentencing. (A. 272-319). The sentencing proceeding complied in all respects with Rule 32 of the Federal Rules of Criminal Procedure.

28.    Judge Briccetti acknowledged that he had reviewed the Presentence Report, the parties' sentencing submissions and materials attached to those submissions, and a statement from the victim of the carjacking. (A. 274-75). He also confirmed that McCoy and his counsel had received and reviewed the Presentence Report and had discussed it with one another, that the Government had reviewed it as well, and that neither party had any objections to the Report's factual statements, which Judge Briccetti then adopted as the District Court's own findings of fact. (A. 275-76).

29.    Judge Briccetti summarized the Guidelines calculation set forth in the Presentence Report, which was consistent with the calculation set forth in the Government's *Pimentel* letter, and confirmed that McCoy had no objection to that calculation. (A. 276-77). Then Judge Briccetti adopted that Guidelines calculation,

which yielded an offense level of 24, a criminal history category of I, and a recommended Guidelines range of 51 to 63 months' imprisonment. (A. 277).

30.     Judge Briccetti heard from the parties about the appropriate sentence. The Government argued that the District Court should impose a substantial sentence, albeit not necessarily within the Guidelines range of 51 to 63 months' imprisonment. (A. 277-84). Defense counsel requested a sentence of time served, arguing that such a sentence would be appropriate given the below-Guidelines sentence McCoy's codefendant received (A. 289-94), McCoy's youth at the time of the offense (A. 298), and McCoy's "limited intellectual functioning" (A. 298-300). Those arguments were consistent with those in defense counsel's written sentencing submission. (Dkt. 106).

31.     Judge Briccetti also invited McCoy to speak on his own behalf, which he did. (A. 300-02).

32.     Judge Briccetti gave a detailed explanation of the reasons for the sentence he would impose. (A. 302-10). He made clear that he had considered the Guidelines range and the sentencing factors in 18 U.S.C. § 3553(a). (A. 302, 305). With regard to the seriousness of the offense, Judge Briccetti found that McCoy had committed what "was, to say the least, a very serious crime." (A. 303). Judge Briccetti highlighted numerous aspects of the offense that increased its seriousness, including that it had been "pre-planned," had been carried out at "knife-point," had

involved McCoy and his codefendant "kick[ing] and punch[ing] the victim," had "result[ed] in multiple lacerations to the victim's head which required staples and hospitalization," and, "for good measure," had involved stealing the victim's "cellphone and his car." (A. 303). All of those factors, Judge Briccetti explained, made it "a serious crime that requires a serious punishment, really to ensure that a just sentence is imposed." (A. 304).

33. Judge Briccetti further found that "[t]here are, however, clearly mitigating factors which warrant a significant downward variance from the guideline range of 51 to 63 months." (A. 304). In particular, Judge Briccetti found that "McCoy had "a lifelong history of mental health issues and also, unfortunately, . . . only borderline intellectual functioning." (A. 305). Judge Briccetti also noted McCoy's youth, observing that McCoy had been "19 at the time of the offense," which was "old enough to know what you're doing and know that you're doing something that's wrong and illegal and just plain old bad," but also "an age at which people make stupid choices and don't really take into account the consequences of their acts." (A. 305-06). In addition, Judge Briccetti noted that McCoy had been "restricted to his home for nearly two years now" on pretrial release," which could be viewed "as a form of punishment" that weighed in favor of a lighter sentence. (A. 307-08).

34.     In sum, Judge Briccetti concluded, "all those factors to me warrant a significant downward variance," but because "the crime itself was just so serious" and "the impact on the victim was so great . . . [,] I just believe that justice requires some level of punishment that is meaningfully greater than either continued home confinement or community service." (A. 308). Judge Briccetti also found "a need for deterrence here, particularly since" McCoy had a previous conviction. (A. 309).

35.     Judge Briccetti imposed concurrent terms of six months' imprisonment on each count of conviction, to be followed by three years' supervised release. (A. 310). He also imposed a mandatory $200 special assessment and restitution of $2,300, for which McCoy was jointly and severally liable with Taylor. (A. 312-13). The restitution amount was based on medical bills the victim paid as a result of injuries sustained during the carjacking, plus the value of the cellphone McCoy and Taylor stole from the victim. (PSR ¶ 28).

36.     Judge Briccetti advised McCoy of his right to appeal. (A. 314-15).

## A R G U M E N T

### McCoy's Conviction and Sentence Should Be Summarily Affirmed Because There Are No Non-Frivolous Issues to Be Raised on Appeal

37.     Summary affirmance is warranted because McCoy has no non-frivolous arguments to raise on appeal. McCoy's appellate counsel makes clear, in a submission pursuant to *Anders v. California*, 386 U.S. 738 (1967), that "[a]fter a thorough review of the record and diligent legal research, counsel has found no

meritorious or non-frivolous issues to raise on appeal." (Br. 3). The Government agrees.

### A. The District Court Properly Found McCoy Competent to Stand Trial

38.    There are no meritorious issues that McCoy could raise in connection with the District Court's finding that McCoy was competent to stand trial. This Court will "uphold a district court's finding that a defendant is competent to stand trial unless that finding is clearly erroneous." *United States v. Nichols,* 56 F.3d 403, 411 (2d Cir. 1995). Where the record on competency may plausibly be read to indicate the defendant may not have been competent, the Court will still "defer to the judgment of the district court, which had the benefit of examining [the defendant] and hearing from the fact and expert witnesses in person." *Id.* at 412. For a defendant to be considered competent to stand trial, the defendant must have "(1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *Id.* at 410 (quoting *Dusky v. United States,* 362 U.S. 402 (1960)); *see United States v. Hemsi,* 901 F.2d 293, 295 (2d Cir. 1990).

39.    Judge Briccetti properly found that McCoy was competent. At defense counsel's request, the District Court appointed a neutral, third-party physician—Dr. Rosenfeld—to examine McCoy. (A. 155-212). Dr. Rosenfeld subsequently examined McCoy, prepared a thorough report for the District Court and the parties,

and concluded that the defendant "demonstrated a relatively simple but accurate understanding of the proceedings against him and appears capable of participating meaningfully in his own defense." (A. 225-26). Defense counsel raised no objection to that finding. Moreover, defense counsel expressly asked the Court to "find that the defendant is competent to assist in his own defense and understand and appreciate what's going on here, and most importantly, that he is capable of entering a guilty plea." (A. 227).

**B.    McCoy's Guilty Plea Was Knowing and Voluntary**

40.    There are no meritorious or non-frivolous issues McCoy could raise in connection with his guilty plea. McCoy's plea proceeding before Judge Briccetti complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure. Judge Briccetti ensured that McCoy was competent to enter a guilty plea (A. 231-37); informed McCoy of the nature of the charges pending against him and of the maximum penalties he faced upon conviction (A. 244-46); ensured that McCoy was aware of all the rights he was giving up by pleading guilty (A. 240-43); confirmed that McCoy understood the District Court's obligation to calculate the Guidelines and consider the Section 3553(a) factors at sentence (A. 251-54); confirmed that McCoy is a United States citizen (A. 249); determined that an adequate factual basis supported McCoy's guilty plea (A. 256-62); and confirmed that McCoy entered the

15

guilty plea of his own volition (A. 262-63). On this record, McCoy cannot validly claim that his plea was not knowing and voluntary.

## C. McCoy's Sentence Was Procedurally and Substantively Reasonable

41. There are no meritorious or non-frivolous issues that McCoy could raise in connection with sentencing. Appellate review of a district court's sentence "encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). A district court "commits procedural error where it fails to calculate the Guidelines range (unless the omission of the calculation is justified), makes a mistake in its Guidelines calculation, . . . treats the Guidelines as mandatory[,] . . . does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact." *Id.* at 190; *see also Gall v. United States*, 552 U.S. 38, 51 (2007).

42. If the Court determines that there was no procedural error, it "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. The Court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190. The substantive unreasonableness standard "provide[s] a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was

16

shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

43.     McCoy's sentence was procedurally reasonable. The sentencing proceeding complied in all respects with Rule 32 of the Federal Rules of Criminal Procedure, so the sentence was not imposed in violation of law. Counsel for McCoy advocated for a sentence of time served, and McCoy addressed the Court. Before imposing sentence, Judge Briccetti confirmed that McCoy and his counsel had read and discussed the Presentence Report, and he adopted its findings of fact after confirming that there were no objections. (A. 274-76). Judge Briccetti correctly calculated an applicable Guidelines range of 51 to 63 months' imprisonment—the same calculation in the Presentence Report and the Government's *Pimentel* letter— without objection from the parties. (A. 276-77). Judge Briccetti gave defense counsel and McCoy an opportunity to speak. (A. 289-301). And Judge Briccetti gave a detailed statement of the reasons for the sentence he imposed. (A. 302-10).

44.     McCoy's sentence—a six-month term well below the bottom of the Guidelines range—was also substantively reasonable. As Judge Briccetti explained, McCoy committed an undeniably serious offense—a violent carjacking that left a victim hospitalized—that required some term of imprisonment given the need to provide just punishment and, given McCoy's previous conviction, afford specific deterrence. (A. 303-04). Against those considerations, Judge Briccetti weighed

factors favorable to McCoy, including his youth, his mental health issues, and the strict conditions of release he faced between his arrest and his sentencing. (A. 304-10).

45.     In these circumstances, the below-Guidelines sentence of six months' imprisonment was not substantively unreasonable. *See United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (explaining that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances").

46.     Additionally, any challenge to the substantive reasonableness of McCoy's prison sentence is now moot. An appellate challenge to a criminal sentence is "rendered moot" when the defendant has been "release[d] from prison" and when there is either "no possibility" or only a "remote and speculative" possibility that "the district court could [or would] impose a reduced term of supervised release were we to remand for resentencing." *United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007). McCoy served his six-month term of imprisonment and has been released from prison. He is now serving a three-year term of supervised release. There is no reasonable possibility that the district court would reduce McCoy's term of supervised release given his participation the pre-planned, violent conduct for which he was convicted.

47.    Lastly, Judge Briccetti properly ordered restitution of $2,300, for which McCoy was held jointly and severally liable with Taylor, under the Mandatory Victim Restitution Act of 1996. (A. 312-13). As set forth in the Presentence Report, the restitution amount reflected the $1,500 in medical bills for injuries the victim sustained during the carjacking, as well as the $800 value of the victim's stolen iPhone XR. (PSR ¶ 28). Defense counsel raised no objection to the Presentence Report's calculation of the restitution amount or to the restitution order itself. (A. 312-13).

**D.    McCoy Received Effective Assistance of Counsel**

48.    Finally, McCoy cannot make a non-frivolous claim of ineffective assistance of counsel on direct appeal. As shown in the record, defense counsel effectively and vigorously represented McCoy's interests at every stage of the proceedings. Defense counsel's performance cannot be said to have fallen below "an objective standard of reasonableness" under "prevailing professional norms," and McCoy cannot demonstrate prejudice from the representation he received. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

49.    McCoy stated at the time of his plea that he was satisfied with his attorney's representation. (A. 236-37). That satisfaction was well earned. Had McCoy proceeded to trial, the Government would have offered overwhelming evidence of his guilt, including text messages recovered from McCoy's phone in

19

which McCoy and Taylor planned the carjacking. (A. 257). McCoy would then have faced an even higher Guidelines range because he would not have been eligible to reductions to his offense conduct for acceptance of responsibility under Section 3E1.1 of the Guidelines.

50.    In addition, counsel for McCoy advocated vigorously on his behalf throughout the case, which included advocacy in a sentencing submission and at sentencing itself, during which counsel demonstrated familiarity with the facts of the case and McCoy's personal background. Ultimately, McCoy's counsel achieved an extremely favorable result: a sentence of six months' imprisonment, far below the Guidelines range of 51 to 63 months.

51.    Furthermore, McCoy cannot establish prejudice. Not only did McCoy receive substantial benefits as part of his plea, but there is no suggestion in the record that, but for any purported ineffectiveness, he would have proceeded to a trial. *See Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) ("To satisfy the second prong of *Strickland* in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial.").

52.    In these circumstances, there is no non-frivolous claim that McCoy's counsel rendered ineffective assistance. Moreover, to the extent a claim could be

raised, it should be done through a motion under 28 U.S.C. § 2255, not direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.").

## CONCLUSION

53.    McCoy's conviction and sentence should be summarily affirmed because there are no meritorious and non-frivolous issues on appeal.

Dated:         New York, New York
               June 8, 2022

                              /s/ Mathew Andrews
                              Mathew Andrews
                              Assistant United States Attorney
                              Telephone: (212) 637-2591

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this motion, there are 4,611 words in this motion.

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

/s/ Mathew Andrews
By:   MATHEW ANDREWS
Assistant United States Attorney
(212) 637-2591